**<u>Exhibit 1</u>**

# REPORTERS COMMITTEE

## FOR FREEDOM OF THE PRESS

1156 15th St. NW, Suite 1020
Washington, D.C. 20005
(202) 795-9300 • www.rcfp.org

Bruce D. Brown, Executive Director
bbrown@rcfp.org • (202) 795-9301

**STEERING COMMITTEE CHAIRMAN**
STEPHEN J. ADLER

**STEERING COMMITTEE MEMBERS**
WOLF BLITZER
*CNN*

DAVID BOARDMAN
*Temple University*

THEODORE J. BOUTROUS, JR.
*Gibson, Dunn & Crutcher LLP*

MASSIMO CALABRESI
*Time Magazine*

MANNY GARCIA
*Austin American-Statesman*

EMILIO GARCIA-RUIZ
*San Francisco Chronicle*

JOSH GERSTEIN
*POLITICO*

ALEX GIBNEY
*Jigsaw Productions*

SUSAN GOLDBERG
*National Geographic*

JAMES GRIMALDI
*The Wall Street Journal*

LAURA HANDMAN
*Davis Wright Tremaine*

DIEGO IBARGÜEN
*Hearst*

JEREMY JOJOLA
*9NEWS Colorado*

KAREN KAISER
*Associated Press*

DAVID LAUTER
*The Los Angeles Times*

MARGARET LOW
*WBUR*

COLLEEN MCCAIN NELSON
*The McClatchy Company*

MAGGIE MULVIHILL
*Boston University*

JAMES NEFF
*The Philadelphia Inquirer*

NORMAN PEARLSTINE
*New York, New York*

THOMAS C. RUBIN
*Stanford Law School*

BRUCE W. SANFORD
*BakerHostetler, ret.*

CHARLIE SAVAGE
*The New York Times*

JENNIFER SONDAG
*Bloomberg News*

NABIHA SYED
*The Markup*

ADAM SYMSON
*The E.W. Scripps Company*

PIERRE THOMAS
*ABC News*

MATT THOMPSON
*The New York Times*

VICKIE WALTON-JAMES
*NPR*

JUDY WOODRUFF
*PBS/The NewsHour*

SUSAN ZIRINSKY
*CBS News*

**HONORARY LEADERSHIP COUNCIL**
J. SCOTT APPLEWHITE, *Associated Press*
CHIP BOK, *Creators Syndicate*
DAHLIA LITHWICK, *Slate*
TONY MAURO, *American Lawyer Media, ret.*
JANE MAYER, *The New Yorker*
ANDREA MITCHELL, *NBC News*
CAROL ROSENBERG, *The New York Times*
PAUL STEIGER, *ProPublica*
SAUNDRA TORRY, *Freelance*

*Affiliations appear only
for purposes of identification.*

November 15, 2021

**BY EMAIL**

The Honorable Analisa Torres
The Honorable Sarah L. Cave
United States District Court for the
Southern District of New York
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, New York 10007

Re: *In re Search Warrant dated November 5, 2021*, 21 MAG 10685

Dear Judge Torres and Judge Cave,

The Reporters Committee for Freedom of the Press (the "Reporters Committee") respectfully requests that the Court unseal the search warrant application, supporting affidavit, return, and any other related judicial documents filed in connection with the November 5, 2021 search warrant executed at the residence of James O'Keefe ("O'Keefe"), founder of Project Veritas, on or about November 6, 2021 (collectively, the "Search Warrant Materials"). In addition, the Reporters Committee respectfully requests that this letter be publicly docketed in the above-referenced matter.

The press and public have a presumptive right to inspect the Search Warrant Materials under both the First Amendment and common law. Because no countervailing interests require their continued sealing, they should be immediately unsealed pursuant to common law.[1] Alternatively, to the extent the

---

[1] "To determine whether there is [a right of access]," courts in the Second Circuit "first look to the common law, for [they] need not, and should not, reach the First Amendment issue if judgment can be rendered on some other basis." *In re Newsday, Inc.*, 895 F.2d 74, 78 (2d Cir. 1990). Here, because the common law presumption of public access clearly applies to the Search Warrant Materials, and requires the relief requested by the Reporters Committee herein, the Court need not reach the First Amendment issue. By asserting its right to inspect the sealed Search Warrant

Court finds, based on specific facts, that a countervailing interest necessitates the continued

sealing of some information in the Search Warrant Materials at the present time, the Reporters

Committee respectfully requests that the Court (1) order that redacted versions of the Search

Warrant Materials be placed on the public docket immediately, and (2) order the parties to

inform the Court when such redactions are no longer necessary.  *See, e.g.*, *United States v.

Cohen*, 366 F. Supp. 3d 612, 633 (S.D.N.Y. 2019) (ordering the unsealing of search warrant

materials with redactions and directing the Government to submit a future status report

explaining "any need for continued redaction[,]" and requiring the Government to advise the

Court immediately if "any intervening event obviates the need for continued redactions[.]")

### RELEVANT FACTUAL BACKGROUND

On November 5, 2021, Judge Cave issued a search warrant permitting the government to

seize and extract information from cellular phones found in O'Keefe's home.  A redacted copy

of the warrant is attached hereto as Exhibit A.  On or about November 6, 2021, federal

authorities executed the warrant.  As reported by *The New York Times*, the search occurred one

day after O'Keefe "acknowledged that [Project Veritas] was under investigation by the Justice

Department in connection with a diary reported to have been stolen from Ashley Biden,

President Biden's daughter."  Michael S. Schmidt, William K. Rashbaum, Adam Goldman &

Ben Protess, *F.B.I. Searches James O'Keefe's Home in Ashley Biden Diary Theft Inquiry*, N.Y.

Times (Nov. 6, 2021), https://www.nytimes.com/2021/11/06/us/politics/james-okeefe-project-

veritas-ashley-biden.html.  According to the *Times*' reporting, on or about November 4, 2021,

federal authorities also searched the Manhattan residence of Spencer Meads, "a longtime Project

Materials under the common law, the Reporters Committee does not concede that the First Amendment right of
access does not also apply; indeed, the First Amendment provides an additional, independent basis for unsealing the
Search Warrant Materials.  *See, e.g.*, *In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d
569, 573 (8th Cir. 1988).

Veritas operative and confidant of Mr. O'Keefe," and an apartment linked to Eric Cochran.  *Id.*;

Adam Goldman and Mark Mazzetti, *Project Veritas and the Line Between Journalism and*

*Political Spying*, N.Y. Times (Nov. 12, 2021),

https://www.nytimes.com/2021/11/11/us/politics/project-veritas-journalism-political-

spying.html.

On November 10, O'Keefe, through his counsel, submitted by email a letter-motion to

Judge Torres requesting that the Court (1) order the government not to examine the contents of the

seized phones and (2) appoint a special master to review the phones' contents.  On November 11,

Judge Torres entered an order requiring the government to confirm that it had paused its review of

the phones' contents and setting a briefing schedule on O'Keefe's motion.

## ARGUMENT

**I.      The Search Warrant Materials are judicial documents that the press and public have a presumptive right to inspect under the common law.**

The presumption of public access to judicial documents "is based on the need for federal

courts, although independent—indeed, particularly because they are independent—to have a

measure of accountability and for the public to have confidence in the administration of

justice[,]" *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995) ("*Amodeo II*").  A

"[f]inding that a document is a 'judicial document' triggers" the "presumption of public access,

and requires a court to make specific, rigorous findings before sealing the document or otherwise

denying public access."  *Newsday LLC v. Cty. of Nassau*, 730 F.3d 156, 167 n.15 (2d Cir. 2013).

A judicial document is any "filed item that is 'relevant to the performance of the judicial

function and useful in the judicial process.'"  *Bernstein v. Bernstein Litowitz Berger &*

*Grossmann LLP*, 814 F.3d 132, 139 (2d Cir. 2016) (quoting *Lugosch v. Pyramid Co. of*

*Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006)).  To determine whether a document meets this

definition, courts "evaluate the relevance of the document's specific contents to the nature of the proceeding and the degree to which access to the document would materially assist the public in understanding the issues before court, and in evaluating the fairness and integrity of the court's proceeding." *Id.* (cleaned up).  The Search Warrant Materials readily satisfy this test.

Under Federal Rule of Criminal Procedure 41, before a district court issues a search warrant, it must determine that there is probable cause—a determination made by evaluating the showing made by the government in its application and supporting documents, including any supporting affidavit.  *See* Fed. R. Crim. P. 41(d)(1).  A search warrant application and its supporting documents thus play a decisive role in a district court's determination to issue a search warrant and are unquestionably "relevant to the performance of the judicial function and useful in the judicial process."  *Lugosch*, 435 F.3d at 119; *see also In re Search Warrant*, No. 16-MAG-7063, 2016 WL 7339113, at *2 (S.D.N.Y. Dec. 19, 2016) ("Search or seizure warrant applications and supporting affidavits are critical to judicial determinations of whether the Fourth Amendment's probable cause standards are met.").  Indeed, courts in this District have repeatedly concluded that search warrant applications and supporting affidavits, like the Search Warrant Materials at issue, are judicial documents.  *See, e.g.*, *Cohen*, 366 F. Supp. 3d at 621 ("Because a court necessarily relies upon search warrant applications and supporting affidavits in assessing whether there is probable cause to issue a search warrant, they are certainly relevant to the performance of that judicial function."); *In re Search Warrant*, 2016 WL 7339113, at *2 ("Search warrant applications require the close and careful scrutiny of a judicial officer, and are thus judicial documents[.]"); *United States v. All Funds on Deposit at Wells Fargo Bank*, 643 F. Supp. 2d 577, 583–84 (S.D.N.Y. 2009) ("Affidavits in support of seizure or search warrants are central to a court's probable cause determination. These documents clearly fall within the

4

definition of 'judicial documents' and public access to them facilitates public monitoring of the various government agencies and branches.").

Because the Search Warrant Materials are judicial documents, a common law presumption of public access applies to them. *Cohen*, 366 F. Supp. 3d at 620–21; *All Funds on Deposit*, 643 F. Supp. 2d at 583–84; *In re Search Warrant*, 2016 WL 7339113, at *3; *In re Sealed Search Warrants Issued June 4 and 5, 2008*, 2008 WL 5667021, at *2 (N.D.N.Y. Jul. 14, 2008); *see also In re Newsday, Inc.*, 895 F.2d at 79 (explaining that "the fact that search warrants are commonly filed under seal until the warrant is executed does not change their status as public documents").

II.     **The common law presumption of public access applicable to the Search Warrant Materials is weighty and no countervailing interests overcome it.**

Once a court determines that a document is a judicial document to which the common law presumption of public access applies, the court then "must 'determine the weight'" of that presumption. *United States v. Erie Cty.*, 763 F.3d 235, 239 (2d Cir. 2014) (quoting *Lugosch*, 435 F.3d at 119). The "weight" to be accorded the presumption is "governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Id.* (quoting *Amodeo II*, 71 F.3d at 1049). Applying this standard, the "common law presumption of access to [a] search warrant and related materials" is generally "entitled to great weight." *In re Search Warrant*, 2016 WL 7339113, at *3.

As explained above, a court's decision to issue a search warrant is based on the application and supporting materials submitted by the government. Such materials are thus central to the exercise of Article III judicial power, and the value of public access to such materials cannot be understated. *See id.* ("Search warrants and associated documents go to the

heart of the judicial function . . .").  Simply put, with respect to judicial documents like the

Search Warrant Materials that "directly affect an adjudication" and are used to determine

"substantive legal rights," the strength of the common law presumption of access is "at its

zenith" and may be overcome "only by extraordinary circumstances."  *Bernstein*, 814 F.3d at

142 (cleaned up).

       The fact that the Search Warrant Materials relate to a law enforcement investigation does

not weaken the public's interest in access under the common law analysis.  To the contrary, it

strengthens it.  *See In re Application and Affidavit for a Search Warrant*, 923 F.2d 324, 331 (4th

Cir. 1991) ("Society has an understandable interest . . . in law enforcement systems and how well

they work," and the "public has legitimate concerns about methods and techniques of police

investigation . . . .").  Indeed, as the Second Circuit has concluded, "courts must impede scrutiny

of the exercise of [judicial] judgment only in the rarest of circumstances," *especially* "when a

judicial decision accedes to the requests of a coordinate branch."  *United States v. Aref*, 533 F.3d

72, 83 (2d Cir. 2008).  Moreover, the newsworthy nature of the search conducted at O'Keefe's

residence adds additional weight to the presumption.  *See, e.g.*, *Hardy v. Kaszycki & Sons*, No.

1:83-cv-06346, 2017 WL 6805707, at *3 (S.D.N.Y. Nov. 21, 2017) (finding that when

information "is of legitimate interest to the public  . . . the Court's determination of the weight of

the presumption of access may not ignore this 'broader context.'" (quoting *Lugosch*, 435 F.3d at

123 n.5)).

       Having determined the weight to be accorded the common law presumption of access, the

Courts must then balance it against any countervailing interests.  *Lugosch*, 435 F.3d at 124

(explaining that records may be kept under seal if "'countervailing factors' in the common law

framework . . . so demand.").  Under Second Circuit precedent, the following are countervailing

factors that may be considered: "the danger of impairing law enforcement or judicial efficiency," *Amodeo II*, 71 F.3d at 1050, "the privacy interests of those resisting disclosure," *id.*, and the possibility that disclosure would "reveal details of an ongoing investigation, pose a risk to witnesses, endanger national security, or reveal trade secrets," *Bernstein*, 814 F.3d at 143.

No such countervailing factors apply with respect to the Search Warrant Materials at issue here.  The relevant search warrant has already been executed and, indeed, is publicly available.  *See* Exhibit A.  Moreover, substantial information concerning the search and the investigation it concerns is already public.  *See, e.g.*, Michael S. Schmidt, William K. Rashbaum, Adam Goldman & Ben Protess, *F.B.I. Searches James O'Keefe's Home in Ashley Biden Diary Theft Inquiry*, N.Y. Times (Nov. 6, 2021), https://www.nytimes.com/2021/11/06/us/politics/james-okeefe-project-veritas-ashley-biden.html; Adam Goldman and Mark Mazzetti, *Project Veritas and the Line Between Journalism and Political Spying*, N.Y. Times (Nov. 12, 2021), https://www.nytimes.com/2021/11/11/us/politics/project-veritas-journalism-political-spying.html; *see also Josh Gerstein, FBI raid on Project Veritas founder's home sparks questions about press freedom*, Politico (Nov. 13, 2021), https://www.politico.com/news/2021/11/13/raid-veritas-okeefe-biden-press-521307.  And the fact that O'Keefe and his counsel have spoken publicly and in detail about the search and the related investigation indicates that no privacy interests would be implicated by unsealing.  *See, e.g.*, Joseph A. Wulfsohn, *Project Veritas' James O'Keefe speaks out after FBI raided home: 'This is an attack on the First Amendment.'*, Fox News (Nov. 9, 2021), https://www.foxnews.com/media/project-veritas-james-okeefe-hannity-fbi-raid (interview of O'Keefe and his attorney).

Finally, even assuming, *arguendo*, that unsealing the Search Warrant Materials in their entirety at the present time might reveal sensitive law enforcement information or implicate privacy interests, the proper remedy would be temporary redaction, not continued wholesale sealing. *See Cohen*, 366 F. Supp. 3d at 633; *see also United States v. E. Side Ophthalmology*, 1996 WL 384891, at *2 (S.D.N.Y. July 9, 1996) ("The caselaw in this circuit indicates that search warrants and supporting documentation may not be sealed indefinitely."). Accordingly, to the extent the Court finds that a countervailing interest necessitates the continued sealing of some information in the Search Warrant Materials, the Court should order redacted versions to be unsealed and immediately placed on the public docket.

## <u>CONCLUSION</u>

For the foregoing reasons, the Reporters Committee respectfully requests that the Court unseal the Search Warrant Materials. Alternatively, to the extent the Court finds, based on specific facts, that a countervailing interest necessitates the continued sealing of some information in the Search Warrant Materials at the present time, the Reporters Committee respectfully requests that the Court (1) order that redacted versions of the Search Warrant Materials be placed on the public docket immediately, and (2) order the parties to inform the Court when such redactions are no longer necessary.

Respectfully submitted,

/s/ Katie Townsend
Katie Townsend
THE REPORTERS COMMITTEE FOR
 FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, DC 20005
Phone: 202.795.9300
Facsimile: 202.795.9310
ktownsend@rcfp.org

Counsel of Record for the Reporters
Committee for Freedom of the Press

CC:

Paul A. Calli
Chas Short
CALLI LAW, LLC
14 NE 1st Ave, Suite 1100
Miami, FL 33132
PCalli@Calli-Law.com
CShort@Calli-Law.com

Harlan Protass
PROTASS LAW PLLC
260 Madison Avenue, 22nd Floor
New York, NY 10016
hprotass@protasslaw.com

Stephen R. Klein
BARR & KLEIN PLLC
1629 K St. N.W., Ste. 300
Washington, DC 20006
steve@barrklein.com

Benjamin Barr
BARR & KLEIN PLLC
444 N. Michigan Avenue Ste. 1200
Chicago, IL 60611
Ben@barrklein.com

Counsel for James O'Keefe

Mitzi Steiner
Robert Sobelman
Jacqueline Kelly
One St. Andrew's Plaza
New York, NY 10007
Mitzi.Steiner@usdoj.gov
Robert.Sobelman@usdoj.gov
Jacqueline.Kelly@usdoj.gov

Assistant U.S. Attorneys for the Southern
District of New York

**<u>Exhibit A</u>**

AO 93C  (08/18) SDNY Rev.  Warrant by Telephone or Other Reliable Electronic Means     ❐ Original     ❐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Southern District of New York

| In the Matter of the Search of | )  | **21 MAG 10685** |
|---|---|---|
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) | |
| the Premises Known and Described as ████████ | ) | Case No. |
| ██████████████████████████ | ) | |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Southern_____ District of _____New York_____ *(identify the person or describe the property to be searched and give its location)*:

the Premises Known and Described as ███████████████████████████████as described in Attachment A-1

The search and seizure are related to violation(s) of *(insert statutory citations)*:

18 U.S.C. §§ 371 (conspiracy to transport stolen property across state lines and conspiracy to possess stolen goods), 2314 (interstate transportation of stolen property), 2315 (possession of stolen goods), 2 (aiding and abetting), 3 (accessory after the fact), and 4 (misprision of felony)

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment A-1

**YOU ARE COMMANDED** to execute this warrant on or before _____November 19, 2021_____ *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.  ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*  ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued: _____11/5/2021  11:18am_____          *Sarah Cave*
                                                                                                    *Judge's signature*

City and state:  New York, New York _____          Hon. Sarah L. Cave, U.S. Magistrate Judge
                                                                                                    *Printed name and title*

AO 93C  (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

| **Certification** |
|---|

       I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**ATTACHMENT A-1**

## I.  Premises to be Searched—Subject Premises

The premises to be searched (the "Subject Premises") are described as follows, and include all locked and closed containers found therein:

An apartment known as unit 

2019.11.19

## II.   Items to Be Seized

### A.   Subject Devices

Law enforcement agents are authorized to seize any and all cellphones within the Subject Premises, including, but not limited to, the cellphone that is or was assigned to the call number ████████ (collectively, the "Subject Devices").

### B.   Evidence, Fruits, and Instrumentalities of the Subject Offenses

The items to be seized from the Subject Devices are the following evidence, fruits, and instrumentalities of violations of 18 U.S.C. §§ 371 (conspiracy to transport stolen property across state lines and conspiracy to possess stolen goods), 2314 (interstate transportation of stolen property), 2315 (possession of stolen goods), 2 (aiding and abetting), 3 (accessory after the fact), and 4 (misprision of felony) (collectively, the "Subject Offenses") for the time period August 1, 2020, up to and including the date on which the Subject Devices are seized, consisting of:

a.      Evidence sufficient to establish the user(s) of the Subject Devices at times relevant to the Subject Offenses, such as user-inputted data, access logs, device information, photographs, communications with other individuals or entities that reveal the true identity of the user(s) such as their name, address, telephone number, email address, payment information, and other personally identifiable information.

b.      Evidence of communications regarding or in furtherance of the Subject Offenses, such as communications with or relating to Ashley Biden (and representatives thereof) and/or Ashley Biden's family, friends, or associates with respect to her stolen property.

c.      Evidence of the location of Ashley Biden's property and the location of the user of the Subject Accounts at times relevant to the Subject Offenses, such as communications that reference particular geographic locations or refer to the property being located in a particular place.

d.      Evidence of the identity, locations, knowledge, and participation in the Subject Offenses of potential co-conspirators, such as communications with other individuals—including, but not limited to, ███████████████████████████████████████████ about obtaining, transporting, transferring, disseminating, or otherwise disposing of Ashley Biden's stolen property, including but not limited to communications reflecting the knowledge of co-conspirators that the property obtained from Ashley Biden had been stolen, and communications that contain personally identifiable information of co-conspirators and references to co-conspirators' places of residence or locations at particular points in time.

e.      Evidence regarding the value of any of Ashley Biden's stolen property, such as communications about the resale or market value of any of the items stolen from her, or any plans to sell or market the same.

f.      Evidence of steps taken in preparation for or in furtherance of the Subject Offenses, such as surveillance of Ashley Biden or property associated with her, and drafts of communications

2019.11.19

2

to Ashley Biden, President Biden, and Ashley Biden's associates regarding her stolen property and communications among co-conspirators discussing what to do with her property.

g.      Evidence reflecting the location of other evidence with respect to the Subject Offenses, such as communications reflecting registration of online accounts potentially containing relevant evidence of the scheme.

### C.  Unlocking Devices with Biometric Features

During the execution of the warrant, law enforcement personnel are authorized to obtain from James E. O'Keefe, III the display of any physical biometric characteristics (such as fingerprint/thumbprint or facial characteristics) necessary to unlock any electronic device(s), including to (1) press or swipe the fingers (including thumbs) of O'Keefe to the fingerprint scanner of the device(s); (2) hold the device(s) in front of the face of O'Keefe to activate the facial recognition feature; and/or (3) hold the device(s) in front of the face of O'Keefe to activate the iris recognition feature, for the purpose of attempting to unlock the device in order to search the contents as authorized by this warrant.

### D.  Review of ESI

Following seizure of any device(s) and/or the creation of forensic image copies, law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the ESI contained therein that was sent, received, posted, created, or otherwise accessed, established, modified, or deleted between the time period August 1, 2020 and the present for information responsive to the warrant.

In conducting this review, law enforcement personnel may use various techniques to locate information responsive to the warrant, including, for example:

- surveying various file "directories" and the individual files they contain (analogous to looking at the outside of a file cabinet for the markings it contains and opening a drawer believed to contain pertinent files);

- opening or cursorily reading the first few "pages" of such files in order to determine their precise contents;

- scanning storage areas to discover and possibly recover recently deleted files or deliberately hidden files;

- performing key word searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are intimately related to the subject matter of the investigation; and

2019.11.19

- reviewing metadata, system information, configuration files, registry data, and any other information reflecting how, when, and by whom the computer was used.

Law enforcement personnel will make reasonable efforts to search only for files, documents, or other electronically stored information within the categories identified above in this Attachment.  However, law enforcement personnel are authorized to conduct a complete review of all the ESI from seized devices or storage media if necessary to evaluate its contents and to locate all data responsive to the warrant.

\* \* \*

Review of the items described in this Attachment shall be conducted pursuant to established procedures designed to collect evidence in a manner reasonably designed to protect any attorney-client or other applicable privilege (to the extent not waived).  When appropriate, the procedures shall include use of a designated "filter team," separate and apart from the investigative team, in order to address potential privileges.

4

2019.11.19