UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
:
In re Search Warrant dated November 5, 2021      :     21 Mag. 10685 (SLC)
:
:
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

# GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION
# TO MOTION TO UNSEAL CERTAIN SEARCH WARRANT MATERIALS

DAMIAN WILLIAMS
United States Attorney
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Jacqueline Kelly
Robert B. Sobelman
Mitzi Steiner
Assistant United States Attorneys
-Of Counsel-

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND.......................................................................................................1

APPLICABLE LAW .................................................................................................................... 2

    A.   The Common Law Right of Access................................................................................. 2

    B.   Redactions to Documents Subject to Right of Access...................................................... 5

DISCUSSION ............................................................................................................................... 6

   I.   There Is No Common Law Right of Access to the Materials at the Pre-Indictment Stage of an Ongoing Criminal Investigation ....................................................................................... 6

   II.   Substantial Government Interests Necessitate the Continued Sealing of the Materials ..... 7

      A.   Law Enforcement Interests ............................................................................................... 7

      B.   Privacy Interests............................................................................................................... 10

   III.   The First Amendment Right of Access Does Not Apply and Is Outweighed by the Same Countervailing Factors .................................................................................................... 11

   IV.   Redactions Are Not a Viable Remedy At This Time ..................................................... 13

CONCLUSION............................................................................................................................ 15

# **TABLE OF AUTHORITIES**

*Baltimore Sun Co. v. Goetz*, 886 F.2d (4th Cir. 1989) .................................................................. 15

*Giuffre v. Maxwell*, No. 15 Civ. 7433 (RWS), 2018 WL 4062649 (S.D.N.Y. Aug. 27, 2018) .... 14

*In Application of the United States for an Order Pursuant to 18 U.S.C. § 2703(d)*, 707 F.3d 283
  (4th Cir. 2013) .............................................................................................................................. 10

*In re Dep't of Investigation*, 856 F.2d 481 (2d Cir. 1988) .............................................................. 5

*In re New York Reporters Committee Co.*, 828 F.2d 110 (2d Cir. 1987) ....................................... 6

*In re New York Times Co. to Unseal Wiretap & Search Warrant Materials*, 577 F.3d 401 (2d Cir.
  2009) ............................................................................................................................................ 17

*In re Newsday, Inc.*, 895 F.2d (2d Cir. 1990) ......................................................................... passim

*In re San Francisco Chron.*, No. 07 Misc. 256 (TCP), 2007 WL 2782753 (E.D.N.Y. Sept. 24,
  2007) .......................................................................................................................................... 3, 16

*In re Sealed Search Warrants Issued June 4 and 5, 2008*, No. 08 Misc. 208 (DRH), 2008 WL
  5667021 (N.D.N.Y. July 14, 2008) .............................................................................................. 11

*In re Search Warrant for Secretarial Area Outside Off. of Gunn* ("*Gunn*"), 855 F.2d 569 (8th Cir.
  1988) ............................................................................................................................. 2, 11, 12, 16

*In re Search Warrant*, No. 16 Misc. 464 (PKC), 2016 WL 7339113, at *3 (S.D.N.Y. Dec. 19,
  2016) ...................................................................................................................................... passim

*In Search Warrant Executed Feb. 1, 1995*, No. 18 Misc. 65 (RJW), 1995 WL 406276 (S.D.N.Y.
  July 7, 1995) .............................................................................................................................. 3, 8

*Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006) .................................... 12, 17

*Matter of Searches of Semtex Indus. Corp.*, 876 F. Supp. 426 (E.D.N.Y. 1995) ........................... 3

*Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589 (1978) ............................................................. 2, 5

*SEC v. Ahmed*, No. 15 Civ. 675 (JBA), 2018 WL 4266079 (D. Conn. Sept. 6, 2018)................. 15

*Times Mirror Co. v. United States*, 873 F.2d (9th Cir. 1989) ..................................................... 2, 15

*United States v. All Funds on Deposit at Wells Fargo Bank in San Francisco, California, in Acct. No. 7986104185, Held in the Name of Acct. Servs. Inc., & All Prop. Traceable Thereto*, 643 F. Supp. 2d 577 (S.D.N.Y. 2009).................................................................................. 10, 16, 17

*United States v. Amodeo* ("*Amodeo I*"), 44 F.3d 141 (2d Cir. 1995)............................................. 5

*United States v. Amodeo* ("*Amodeo II*"), 71 F.3d 1044 (2d Cir. 1995) ................................ passim

*United States v. Cohen*, 366 F. Supp. 3d 612 (S.D.N.Y. 2019).................................................. 4, 9

*United States v. DiSalvo*, 34 F.3d 1204 (3d Cir. 1994) ................................................................ 12

*United States v. Nojay*, 224 F. Supp. 3d 208 (W.D.N.Y. 2016) ................................................... 12

*United States v. Paloscio*, No. 99 CR. 1199 (LMM), 2002 WL 1585835 (S.D.N.Y. July 17, 2002) ..................................................................................................................................... 4, 8, 16

*United States v. Pirk*, 282 F. Supp. 3d (W.D.N.Y. 2017)............................................................. 16

*United States v. Smith*, 985 F. Supp. 2d 506 (S.D.N.Y. 2013) ...................................................... 9

**PRELIMINARY STATEMENT**

On November 15, 2021, the Reporters Committee for Freedom of the Press (the "Reporters Committee") filed a motion to unseal certain materials (the "Materials") relating to a search warrant dated November 5, 2021, which was executed on November 6, 2021, at the residence of James E. O'Keefe, III, the founder and chief executive officer of Project Veritas, in connection with an ongoing grand jury investigation. The Reporters Committee's seeks unsealing of "the search warrant application, supporting affidavit, return, and any other related judicial documents filed in connection with the November 5, 2021 search warrant." (Mot. 1.)[1] As set forth below, this request encompasses materials that, if disclosed, would reveal a substantial amount of non-public, sensitive information that would jeopardize an ongoing grand jury investigation in which no public charges have been filed. For these reasons, the Reporter Committee's motion should be denied.

**FACTUAL BACKGROUND**

On November 6, 2021, the Federal Bureau of Investigation ("FBI") executed a search warrant at O'Keefe's residence for cellphones. (*See* S.M. Mot. Ex. F.) The warrant was supported by a detailed sealed affidavit and authorized by this Court, which found probable cause to believe that the subject premises and the cellphones therein contained evidence of, among other things, the interstate transportation of stolen property. (*See* S.M. Mot. Ex. F at 1.)[2]

---

[1] "Mot." refers to the Reporters Committee's motion filed on November 15, 2021 (not yet docketed); "S.M. Mot." refers to a motion filed by O'Keefe and Project Veritas on November 10, 2021 for the appointment of a special master (Dkt. No. 1, 21 Misc. 813 (AT)); "Aff." refers the sealed affidavit submitted to this Court in support of the November 5, 2021 search warrant, a copy of which is filed herewith *ex parte* and under seal.

[2] To the extent the Court has specific factual questions regarding the Government's ongoing investigation, the Government is prepared to provide additional information to the Court on an *ex parte* basis.

## APPLICABLE LAW

### A. The Common Law Right of Access

The Supreme Court has recognized a common law right of public access to judicial documents. *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597-98 (1978). The Second Circuit has held that this right attaches to Rule 41 search warrant applications and orders in the case of a *closed* criminal investigation. *In re Newsday, Inc.*, 895 F.2d 74, 79 (2d Cir. 1990). In so holding, the Second Circuit noted that the defendant in that case had pled guilty and that the government conceded that the "need for secrecy is over." *Id.* The Second Circuit, however, factually distinguished its holding from a case in which the Ninth Circuit had found *no* common law right of access in the context of an *ongoing* criminal investigation. *Id.* at 78-79 (distinguishing *Times Mirror Co. v. United States*, 873 F.2d 1210 (9th Cir. 1989)). In that Ninth Circuit case, the court held that there was no constitutional or common law right to inspect a warrant application "during the pre-indictment stage of an ongoing criminal investigation." *Times Mirror Co.*, 873 F.2d at 1218-19; *see also In re Search Warrant for Secretarial Area Outside Off. of Gunn* ("*Gunn*"), 855 F.2d 569, 574 (8th Cir. 1988) (noting right of public access to search warrant applications once the warrant is executed, but concluding that warrant affidavit should remain under seal because the "government has demonstrated that restricting public access to these documents is necessitated by a compelling government interest—the on-going investigation.").

Courts in this Circuit have therefore recognized that a common law right of public access does not apply to search warrant applications in ongoing criminal investigations. *See, e.g.*, *In Search Warrant Executed Feb. 1, 1995*, No. 18 Misc. 65 (RJW), 1995 WL 406276, at *3 (S.D.N.Y. July 7, 1995) (concluding that "there is a continuing need to maintain the warrant

2

applications under seal at this pre-indictment juncture" and "[t]he nature of the allegations and the pending grand jury investigation all favor this result."); *Matter of Searches of Semtex Indus. Corp.*, 876 F. Supp. 426, 429 (E.D.N.Y. 1995) (noting that "it is reasonable to believe that the need for secrecy continues in a complex, multi-state investigation prior to indictment."). Indeed, "there is no traditional right of public access to search warrant materials nor is there a traditional right for the public to attend search warrant proceedings, which are conducted *ex parte*. To the contrary, pre-trial proceedings in general are historically not proceedings which are made open to the public." *In re San Francisco Chron.*, No. 07 Misc. 256 (TCP), 2007 WL 2782753, at *2 (E.D.N.Y. Sept. 24, 2007). Further, "there is no tradition of public access to the names of unindicted third-parties and to specific personal identifying information where disclosure of this information is sought by the public." *Id.* This is equally true in cases where an indictment has been filed against select defendants, but where the underlying investigation remains ongoing against uncharged subjects. *See, e.g.*, *United States v. Paloscio*, No. 99 CR. 1199 (LMM), 2002 WL 1585835, at *3 (S.D.N.Y. July 17, 2002) (concluding that there is no common law right of access to search warrant materials "during the pre-indictment stage of an ongoing criminal investigation" where the "the warrants, and the materials submitted in support of their issuance, relate to an ongoing investigation of persons other than defendant . . . and that disclosure might jeopardize the ongoing investigation.").[3]

In circumstances where a common law right of access does attach, which the Reporters Committee incorrectly suggests are present here, the weight of that right depends on two factors:

---

[3] By contrast, after an investigation has concluded, courts in this Circuit have found that search warrants and associated documents are "entitled to a strong presumption of public access." *United States v. Cohen*, 366 F. Supp. 3d 612, 21 (S.D.N.Y. 2019). *See also In re Search Warrant*, No. 16 Misc. 464 (PKC), 2016 WL 7339113, at *3 (S.D.N.Y. Dec. 19, 2016 (noting in a closed investigation that the common law presumption of access to a search warrant and related materials was "entitled to great weight.").

3

(1) "the role of the material at issue in the exercise of Article III judicial power" and (2) "the resultant value of such information to those monitoring the federal courts." *United States v. Amodeo* ("*Amodeo II*"), 71 F.3d 1044, 1049 (2d Cir. 1995). "Generally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance." *Id.*  After determining the weight afforded to the presumptive right of access, the common law right is balanced against countervailing interests favoring secrecy. "[T]he fact that a document is a judicial record does not mean that access to it cannot be restricted." *United States v. Amodeo* ("*Amodeo I*"), 44 F.3d 141, 146 (2d Cir. 1995). Noting that it is difficult to "identify all the factors to be weighed in determining whether access is appropriate," the Supreme Court has further observed that "the decision as to access is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Nixon*, 435 U.S. at 598-99. Even then, however, the Second Circuit has recognized certain categories of countervailing factors to be balanced against the presumption of access, including: (i) the danger of impairing law enforcement or judicial efficiency and (ii) the need to protect privacy interests. *Amodeo I*, 44 F.3d at 147. The Circuit has identified the law enforcement privilege as an interest worthy of protection, noting that the privilege is designed:

> to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation.

*Id.* (citing *In re Dep't of Investigation*, 856 F.2d 481 (2d Cir. 1988)). In addition, the court in *Amodeo II* found that the voluntary cooperation of persons who may want or need confidentiality "is also often essential to judicial efficiency." 71 F.3d at 1050. Thus, "[i]f release [of a judicial document] is likely to cause persons in the particular or future cases to resist involvement where

4

cooperation is desirable, that effect should be weighed against the presumption of access." *Id.*

The Second Circuit has also held that "[t]he privacy interests of innocent third parties as well as those of defendants that may be harmed by disclosure. . . should weigh heavily in a court's balancing equation." *In re New York Reporters Committee Co.*, 828 F.2d 110, 116 (2d Cir. 1987); *see also In re Newsday, Inc.*, 895 F.2d at 79-80. The Second Circuit has identified such interests as "a venerable common law exception to the presumption of access." *Amodeo II*, 71 F.3d at 1051. "In determining the weight to be accorded an assertion of a right of privacy, courts should first consider the degree to which the subject matter is traditionally considered private rather than public." *Id.* (listing "[f]inancial records of a wholly owned business, family affairs, illnesses, embarrassing conduct with no public ramifications, and similar matters" as weighing more heavily against access than conduct affecting a substantial portion of the public). "The nature and degree of injury must also be weighed." *Amodeo II*, 71 F.3d at 1051. Finally, in balancing the qualified right of public access against privacy interests, courts must consider "the sensitivity of the information and the subject," and whether "there is a fair opportunity for the subject to respond to any accusations contained therein." *Id.*

## B. Redactions to Documents Subject to Right of Access

Finally, in any case in which some sealing of a judicial document is appropriate, the Second Circuit has directed that the court must determine whether redaction is "a viable remedy," or whether the document presents "an all or nothing matter." *Amodeo II*, 71 F.3d at 1053; *see also In re Newsday, Inc.*, 895 F.2d at 80 (noting that "a district court has the authority to redact a document to the point of rendering it meaningless, or not to release it at all, but such drastic restrictions on the common law right of access are not always appropriate."). Where redactions are necessary to protect the interests described above, the Second Circuit has

5

considered whether the portions of the document that remain intact are intelligible and informative, or are more likely to be confusing and misleading. *Amodeo II*, 71 F.3d at 1053. Where partial redaction is not a viable option, the Second Circuit has indicated that the entire document may remain under seal. *Id.*

## DISCUSSION

**I. There Is No Common Law Right of Access to the Materials at the Pre-Indictment Stage of an Ongoing Criminal Investigation**

There is no common law right of access to the Materials at this pre-indictment stage of an ongoing grand jury investigation. As noted, the November 5, 2021 search warrant was executed at the pre-indictment stage of an ongoing investigation. The factual circumstances here—in the context of an ongoing investigation in which no public charges have been filed—were expressly distinguished by the Second Circuit in recognizing a right of access at a post-indictment stage of a criminal case. *See In re Newsday, Inc.*, 895 F.2d at 78 (distinguishing its holding from a Ninth Circuit opinion on the right of access to search warrant in the context of an ongoing investigation). Where, as here, a criminal investigation remains ongoing there is simply no common law right of access to Rule 41 search warrant applications. Indeed, "[t]he nature of the allegations and the pending grand jury investigation all favor this result." *In Search Warrant Executed Feb. 1, 1995*, 1995 WL 406276, at *3. Further, at this pre-indictment stage of a grand jury investigation, "there is no tradition of public access to the names of unindicted third-parties and to specific personal identifying information where disclosure of this information is sought by the public." *Id.* Disclosing the multitude of details contained in the Materials regarding subjects of the investigation and the scope of the relevant conduct would surely "jeopardize the ongoing investigation." *Paloscio*, 2002 WL 1585835, at *3. The Reporters Committee fail to address the dichotomy between pre-indictment, ongoing investigations, on one hand, and charged or closed

6

cases, on the other, set forth in *In re Newsday, Inc.* or contend with the express case law from Courts in this Circuit, and otherwise cite no decisions to the contrary.[4]  The motion should therefore be denied.

## II. Substantial Government Interests Necessitate the Continued Sealing of the Materials

But even assuming, *arguendo*, that the common law right of access does extend to this context, the right is a qualified one, which in this case is overcome by weighty countervailing factors—the need to protect an ongoing law enforcement investigation and judicial efficiency, and the need to protect privacy interests.

### A. Law Enforcement Interests

It is well-settled that the need to prevent interference with a law enforcement investigation may outweigh any right of access. *See United States v. Smith*, 985 F. Supp. 2d 506, 531 (S.D.N.Y. 2013) ("As a general proposition, courts have repeatedly recognized that materials, including even judicial documents which are presumptively accessible, can be kept from the public if their dissemination might 'adversely affect law enforcement interests.'" (citing *Amodeo*, 71 F.3d at 1050)); *United States v. All Funds on Deposit at Wells Fargo Bank in San Francisco, California, in Acct. No. 7986104185, Held in the Name of Acct. Servs. Inc., & All Prop. Traceable Thereto*, 643 F. Supp. 2d 577, 585 (S.D.N.Y. 2009) (collecting cases).  Courts have recognized numerous different ways in which the disclosure of sealed materials could interfere with an investigation.  Search warrant materials often reveal "the identities of persons of interest in criminal investigations." *In re Search Warrant*, 2016 WL 7339113, at *4; *see also*

---

[4] The cases cited by the Reporters Committee (*see* Mot. 4) are inapposite because they involved motions to unseal search warrant affidavits at the post-indictment stage of an investigation or after an investigation has been closed. *See, e.g.*, *Cohen*, 366 F. Supp. 3d at 633 (motion for unsealing post-indictment); *In re Search Warrant*, 2016 WL 7339113, at *1 (motion for unsealing after closing of investigation).

7

*In Application of the United States for an Order Pursuant to 18 U.S.C. § 2703(d)*, 707 F.3d 283, 294 (4th Cir. 2013) (citing fact that "documents at issue set forth sensitive nonpublic facts, including the identity of targets and witnesses in an ongoing criminal investigation"). The disclosure of sealed materials could also jeopardize the cooperation of persons in either the particular investigation or in future cases. *Amodeo II*, 71 F.3d at 1050. And even when *some* aspect of a criminal investigation is public, disclosure of a detailed affidavit could "disclose to the subjects . . . the evidence obtained by the United States prior to the searches, and the information which the subjects and other individuals had provided to the United States or had failed or declined to provide." *In re Sealed Search Warrants Issued June 4 and 5, 2008*, No. 08 Misc. 208 (DRH), 2008 WL 5667021, at *4 (N.D.N.Y. July 14, 2008); *see also Gunn*, 855 F.2d at 574 (public access outweighed by fact that disclosure would reveal the "nature, scope and direction of the government's investigation").

Here, the disclosure of the Materials may reasonably be expected to result in several of these forms of prejudice. Indeed, the Materials "describe in considerable detail the nature, scope and direction of the government's investigation and the individuals and specific projects involved." *Gunn*, 855 F.2d at 574. The Materials include detailed information about the history of the investigation, the scope of the investigation, and the precise types of evidence the investigation has uncovered, none of which is publicly known. (*See, e.g.*, Aff. ¶¶ 6, 7, 49.) Its disclosure would significantly compromise the ongoing grand jury investigation, and could result in, among other things, alerting subjects of investigation to aspects of the investigation and evidence gathered that are not publicly known, and could lead potential subjects or witnesses to destroy evidence (including types of evidence that they may not realize are relevant, to the extent they are unaware of the evidence gathered to date), tamper with witnesses, or flee from

prosecution. *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006) (noting that the "danger of impairing law enforcement" may be a countervailing factor outweighing the qualified right of access). That is particularly the case where, as here, *no* aspect of the criminal investigation has been made public in a charging document; all that has been made public is the search warrant itself. Thus, at present, there is a significant interest in maintaining the Materials under seal, because there is "a substantial probability that the government's on-going investigation would be severely compromised if the sealed documents were released." *Gunn*, 855 F.2d at 74.

Further, in the event that one or more of the individuals referenced in the Materials are charged, public knowledge of the intricacies of the investigation, as detailed in the Materials, could generate substantially prejudicial pretrial publicity which would impede the progression of any potential prosecution. *See, e.g.*, *United States v. DiSalvo*, 34 F.3d 1204, 1218 (3d Cir. 1994) (concluding that indictment was properly sealed to avoid publicity about codefendant and that the government did not have to justify sealing in relation to each defendant named in indictment); *United States v. Nojay*, 224 F. Supp. 3d 208 (W.D.N.Y. 2016) (describing "avoiding prejudicial pretrial publicity with respect to a codefendant" as one of the justifications for sealing parts of a record in a criminal case). Thus, public knowledge of the details contained in the Materials would substantially harm both the ongoing investigation and any resulting prosecution.

The Reporters Committee claims that "substantial information concerning the search and the investigation it concerns is already public." (Mot. 7). To the contrary, virtually none of the detailed evidence set forth in the Materials has been made public, by the Government or otherwise. The public disclosure of the existence of the investigation, a redacted version of the search warrant (S.M. Mot. Ex. F), and the fact that the search warrant was executed, even taken

9

together, cannot somehow justify the public airing of an ongoing grand jury investigation in which no public charges have been filed. Similarly statements made in the press and judicial filings by O'Keefe and Project Veritas – neither of whom have access to the Materials – have not publicly disclosed the details of the Government's ongoing investigation, the methods used therein, and the evidence gathered to date. As explained above, protection of an ongoing criminal investigation weighs heavily against any potential right of access. The details of a Government investigation are not fair game for public consumption every time a search warrant is executed and the subject of that search warrant voluntarily discloses the existence of the warrant itself and makes a related statement. Were that the case, many grand jury investigations would be impeded by the self-serving actions of subjects eager to gain premature access to the details of secret grand jury investigations for their own benefit.

### B. Privacy Interests

In addition to the law enforcement interests cited above, the privacy rights of third parties provide another compelling justification for sealing, one which outweighs any common law right of access that may attach. It is well established that the need to protect privacy interests may outweigh the right of access. *See generally Giuffre v. Maxwell*, No. 15 Civ. 7433 (RWS), 2018 WL 4062649, at *5-*8 (S.D.N.Y. Aug. 27, 2018). The Second Circuit has held that "the privacy interests of innocent third parties should weigh heavily in a court's balancing equation." *Amodeo II*, 71 F.3d at 1050 (quoting *In re Newsday, Inc.*, 895 F.2d at 79-80). And in the specific context of third parties named in search warrant applications, that interest is especially weighty, because "a person whose conduct is the subject of a criminal investigation but is not charged with a crime should not have his or her reputation sullied by the mere circumstance of an investigation." *In re Search Warrant*, 2016 WL 7339113, at *4. Moreover, unlike charged

defendants, uncharged individuals whose involvement in or association with criminal activity is alleged in search warrant materials may find themselves harmed by the disclosure but without recourse to respond to the allegation. *See Amodeo II*, 71 F.3d at 1051; *In re Newsday, Inc.*, 895 F.2d at 80.[5]

Here, there are many uncharged individuals named in the Materials, each of which have a substantial privacy interest at this pre-indictment stage of the investigation. These individuals include both witnesses to the alleged criminal activity (*see, e.g.*, Aff. ¶¶ 23(c), 27(a)-(b), 29(b)), as well as subjects of the investigation (*see, e.g.*, Aff. ¶ 19(b), 24(d), 27, 44-45). The substantial privacy interests of these individuals warrants the continued sealing of the Materials. For these reasons, the privacy interests of these individuals provide an additional basis to maintain the Materials under seal. *See, e.g.*, *SEC v. Ahmed*, No. 15 Civ. 675 (JBA), 2018 WL 4266079, at *3 (D. Conn. Sept. 6, 2018) (sealing certain documents based, in part, on privacy interests of a third party).

### III. The First Amendment Right of Access Does Not Apply and Is Outweighed by the Same Countervailing Factors

The Reporters Committee implies that this Court should recognize a First Amendment right of access to search warrant materials as an alternative basis for unsealing the Materials. (Mot. 1 n.1.) However, the Second Circuit has not yet recognized such a right—in an ongoing investigation or otherwise—and the weight of authority is against the Reporters Committee's position. Two Courts of Appeals have held that no First Amendment right of access attaches to search warrant materials. *See Times Mirror*, 873 F.2d at 1216 (so holding in context of an

---

[5] The Government has not notified the uncharged third parties that they were named in the Materials, in part because disclosure of that fact to certain of the uncharged third parties would itself impair the ongoing investigation. The Court may nevertheless recognize the privacy rights of these third parties. *See In re Search Warrant*, 2016 WL 7339113, at *4 (court *sua sponte* ordered redactions to protect privacy rights of third party named in search warrant materials).

11

ongoing investigation); *Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 64-65 (4th Cir. 1989) (same); *but see Gunn*, 855 F.2d at 572-74 (8th Cir. 1988) (recognizing right of access).  And it appears that every district court in this Circuit to have considered the issue ha-s similarly found no First Amendment right of access.  *See United States v. Pirk*, 282 F. Supp. 3d 585, 597-600 (W.D.N.Y. 2017) (collecting cases); *see also In re Search Warrant*, 2016 WL 7339113, at *3 (Castel, J.); *All Funds*, 643 F. Supp. 2d at 581-83 (Swain, J.); *Paloscio*, 2002 WL 1585835, at *3; *In re San Francisco Chron.*, 2007 WL 2782753, at *2-3.

As Chief Judge Swain has explained in applying the governing "experience and logic test," no First Amendment right of access attaches to search warrant materials because "[w]arrant application proceedings are highly secret in nature and have historically been closed to the press and public." *All Funds*, 643 F. Supp. 2d at 583.  And based on similar reasoning in an analogous context, the Second Circuit found no First Amendment right of access to wiretap materials.  *See In re New York Times Co. to Unseal Wiretap & Search Warrant Materials*, 577 F.3d 401, 410 (2d Cir. 2009).  Thus, the Court should find that no First Amendment right of access attaches here.

In any event, even assuming such a right did attach, it is undisputedly a qualified right, which may be outweighed by countervailing factors.  To be sure, the First Amendment right of access "gives rise to a higher burden on the party seeking to prevent disclosure than does the common law presumption," such that the Court must make "specific, on-the-record findings that higher values necessitate narrowly tailored sealing." *Lugosch*, 435 F.3d at 126.  But the law enforcement and privacy concerns described above are undoubtedly higher values that may outweigh any First Amendment right of access, and the balancing analysis is the same under either framework.  *See All Funds*, 643 F. Supp. 2d at 586 n.8 (collecting cases).  Thus, for the

12

reasons stated in Part II, *supra*, there is an ample basis for the Court to make on-the-record findings that any First Amendment right of access that may attach is outweighed by (a) the risk of interference with an ongoing law enforcement investigation and (b) the privacy rights of uncharged third parties.

### IV. Redactions Are Not a Viable Remedy At This Time

The Reporters Committee argues that, in the alternative, the Materials should be released with any sensitive law enforcement information or information implicating privacy interests redacted. (Mot. 8). Releasing the Materials in redacted form is not a viable remedy at the present time, for at least two reasons.

First, such disclosure would require a line-by-line review of the Materials—which are substantial—to identify which information must be redacted to protect the integrity of the ongoing investigation; which information constitutes protected grand jury material; and which information must be redacted to protect privacy interests of uncharged individuals. While this cumbersome exercise might be appropriate at the conclusion of the investigation, to require it in this context would set a precedent that is contrary to the public interest and require the Government to engage in such a time-consuming exercise in the midst of ongoing investigation where no public charges have been filed. Moreover, as the investigation develops, certain information might become public by other means, or the disclosure of certain specific information might no longer be an impediment to the investigation, requiring the constant revisiting of decisions about what to redact. If such piecemeal unsealing were permitted, it could give rise to repeated or periodic motions to unseal in investigations of media interest, placing a burden on both the Government to constantly rejustify sealing and the Court to constantly review unsealing applications. From the standpoint of protecting judicial efficiency and law

enforcement interests, it makes far more sense to permit the Government to conclude its ongoing investigation before proposing redactions. *See Amodeo II*, 71 F.3d at 1050 (relying on both law enforcement interests and judicial efficiency).

Second, the release of a partially redacted version of the Materials could be more damaging to uncharged individuals than wholesale release, because the redactions would lead to rampant speculation. The Second Circuit addressed this concern in *Amodeo II*, which concerned a request to unseal an investigative report filed with the court by a court officer appointed pursuant to a consent decree. 71 F.3d at 1047. Part of the report consisted of accusatory information about an uncharged individual, who had since been appointed to a prominent position in the Executive Branch. The Second Circuit initially authorized certain redactions in the report to protect an ongoing investigation and the privacy interests of certain parties. *Id.* It then held, however, that the report should not be released in its partially redacted form, because the redacted version "would provide little meaningful information to the public." *Id.* at 1048. Moreover, because the names of the sources of information had to be redacted, the Court reasoned, the redacted report was "more likely to mislead than to inform the public," because "[i]t would circulate accusations that cannot be tested by the interested public because the sources and much of the subject matter are shrouded by the redactions." *Id.* at 1052. This would leave the uncharged third parties "in the unfair position of choosing between suffering the accusations in silence or revealing redacted information." *Id.*

The same concerns apply here. The Materials include detailed information about the conduct of numerous uncharged individuals. As this Court may be aware, this case has been the subject of public attention and speculation about the nature and scope of the Government's investigation. If the Materials were unsealed in redacted form, such redactions would likely need

14

to be extensive to protect the ongoing investigation and the privacy interests of the numerous uncharged individuals. As a result, the disclosures "would provide little meaningful information to the public." *Id.* at 1048. What is more, the disclosure would almost certainly result in a very public guessing game in which the media and members of the public attempted to guess the identities of the uncharged parties described in the Materials. This would leave those individuals in the unfair position of defending against speculation that they were or currently are under investigation. *Id.* at 1052.

For these reasons, release of partially redacted versions of the Materials is not a viable remedy at this time.

## CONCLUSION

At present, disclosure of the Materials would jeopardize an ongoing law enforcement investigation in concrete ways and prejudice any future prosecution in this case. In addition, disclosure would infringe on the privacy interests of numerous individuals. For these reasons, the motion should be denied.

Dated: November 19, 2021
       New York, New York

                                      Respectfully submitted,

                                      DAMIAN WILLIAMS
                                      United States Attorney

By:      /s/
            Jacqueline Kelly
            Robert B. Sobelman
            Mitzi Steiner
            Assistant United States Attorneys
            Tel.: (212) 637-2456/2616/2284