# **Exhibit 1**

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: SEARCH WARRANT DATED<br>NOVEMBER 5, 2021 | Misc. Action No. 21-00813 (AT)(SLC) |

**REPLY OF THE REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS IN SUPPORT OF ITS NOVEMBER 15, 2021 LETTER MOTION TO UNSEAL**

Katie Townsend
REPORTERS COMMITTEE FOR
 FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, DC 20005
Phone: 202.795.9300
Facsimile: 202.795.9310
ktownsend@rcfp.org

*Counsel of Record for the Reporters Committee for Freedom of the Press*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................ ii

ARGUMENT ......................................................................................................................................... 1

    I.    The Search Warrant Materials are judicial documents to which the common law presumption of access applies; application of the presumption does not turn on the status of the Government's investigation. ............................................................................ 1

    II.   The Government fails to meet its burden to demonstrate that countervailing interests overcome the presumption of access as to the entirety of the Search Warrant Materials. ........................................................................................................... 4

    III.  Even assuming countervailing interests require continued sealing of portions of the Search Warrant Materials, redaction is a viable alternative. .......................................... 8

    IV.  The Reporters Committee moved to unseal the Search Warrant Materials pursuant to common law; the Court need not and should not consider the Government's additional arguments regarding the First Amendment presumption of access. ................. 10

CONCLUSION ................................................................................................................................... 10

## TABLE OF AUTHORITIES

**Cases**

*ABC, Inc. v. Stewart*,
    360 F.3d 90 (2d Cir. 2004) .................................................................................................. 6

*Hardy v. Kaszycki & Sons*,
    No. 1:83-cv-06346, 2017 WL 6805707 (S.D.N.Y. Nov. 21, 2017) ..................................... 7, 9

*In re Application of WP Company LLC*,
    201 F. Supp. 3d 109 (D.D.C. 2016) ..................................................................................... 7

*In re Newsday, Inc.*,
    895 F.2d 74 (2d Cir. 1990) ............................................................................................. 1, 3, 9

*In re San Francisco Chronicle*,
    No. 07 Misc. 256 (TCP), 2007 WL 2782753 (E.D.N.Y. Sept. 24, 2007) ............................. 3, 4

*In re Sealed Search Warrants Issued June 4 and 5, 2008*,
    No. 08 Misc. 208 (DRH), 2008 WL 5667021 (N.D.N.Y. July 14, 2008) ................................ 4

*In re Search Warrant Executed Feb. 1, 1995*,
    No. 18 Misc. 65 (RJW), 1995 WL 406276 (S.D.N.Y. July 7, 1995) ........................................ 3

*In re Search Warrant*,
    No. 16 Misc. 464 (PKC), 2016 WL 7339113 (S.D.N.Y. Dec. 19, 2016) ............................... 4, 6

*Lugosch v. Pyramid Co. of Onondaga*,
    435 F.3d 110 (2d Cir. 2006) ........................................................................................... 1, 3, 9

*Matter of Searches of Semtex Indus. Corp.*,
    876 F. Supp. 426 (E.D.N.Y. 1995) ....................................................................................... 3

*Newsday LLC v. Cty. of Nassau*,
    730 F.3d 156 (2d Cir. 2013) .................................................................................................. 1

*Times Mirror Co. v. United States*,
    873 F.2d 1210 (9th Cir. 1989) ............................................................................................ 1, 3

*United States v. All Funds on Deposit at Wells Fargo Bank*,
    643 F. Supp. 2d 577 (S.D.N.Y. 2009) ........................................................................... 2, 4, 5, 9

*United States v. Amodeo*,
    44 F.3d 141 (2d. Cir. 1995) ("*Amodeo I*") .......................................................................... 3, 4

*United States v. Amodeo*,
    71 F.3d 1044 (2d Cir. 1995) ("*Amodeo II*") ...................................................................... 3, 5, 7

*United States v. Camick*,
   796 F.3d 1206 (10th Cir. 2015) ................................................................................... 9

*United States v. Cohen*,
   366 F. Supp. 3d 612 (S.D.N.Y. 2019) ............................................................... 2, 5, 9

*United States v. Paloscio*,
   No. 99 CR. 1199 (LMM), 2002 WL 1585835 (S.D.N.Y. July 17, 2002) ................... 3

*United States v. Shkreli*,
   260 F. Supp. 3d 257 (E.D.N.Y. 2017) ....................................................................... 6

**Statutes**

Privacy Protection Act of 1980,
   42 U.S.C. § 2000aa(a) ............................................................................................ 10

**Regulations**

28 C.F.R. § 50.10 ............................................................................................................ 10

The Reporters Committee for Freedom of the Press (the "Reporters Committee") respectfully submits this response to the Government's November 19, 2021 Memorandum of Law in Opposition to Motion to Unseal Certain Search Warrant Materials, ECF 35 ("Opposition" or "Opp.") and in support of its November 15, 2021 letter motion, ECF 34 ("Motion" or "Mot.").

**ARGUMENT**

I. **The Search Warrant Materials are judicial documents to which the common law presumption of access applies; application of the presumption does not turn on the status of the Government's investigation.**

In its Opposition, the Government contends that "a common law right of public access does not apply to search warrant applications in ongoing criminal investigations." Opp. at 2. This misstates the law. Under Second Circuit precedent, it is a document's status as a "judicial document" that "triggers" the "presumption of public access, and requires a court to make specific, rigorous findings before sealing the document or otherwise denying public access." *Newsday LLC v. Cty. of Nassau*, 730 F.3d 156, 167 n.15 (2d Cir. 2013). The Search Warrant Materials are, for the reasons detailed in the Motion, "judicial documents," *see* Mot. at 3–5—a determination that under Second Circuit law does not turn on whether a related law enforcement investigation is "ongoing." *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006) (a judicial document is any "filed item that is relevant to the performance of the judicial function and useful in the judicial process." (quotation marks omitted)).

Contrary to the Government's mischaracterization of *In re Newsday, Inc.*, 895 F.2d 74 (2d Cir. 1990), that decision expressly did not adopt the Ninth Circuit's approach in *Times Mirror Co. v. United States*, 873 F.2d 1210 (9th Cir. 1989). *See In re Newsday, Inc.*, 895 F.2d at 78–79 ("*Times–Mirror* focused on the question of rights of access 'during the pre-indictment stage of an ongoing criminal investigation. . . . Without deciding whether we would concur in Times–Mirror*'s result, we decline to extend its holding*." (emphasis added)). Indeed, contrary to

1

the Government's assertions, district courts in this Circuit have (correctly) held that warrant materials connected to an *ongoing* investigation are judicial records to which the common law presumption of access applies.

For example, in *United States v. All Funds on Deposit at Wells Fargo Bank*, 643 F. Supp. 2d 577 (S.D.N.Y. 2009) ("*All Funds on Deposit*"), the district court held that "[a]ffidavits in support of seizure or search warrants . . . clearly fall within the definition of 'judicial documents'" to which the common law presumption of access attaches. *Id*. at 583–84. The district court went on to reject the Government's contention that countervailing considerations—including the Government's assertion that "its ongoing criminal investigation . . . would be compromised by the revelation of the affidavits' content"—warranted denying the public "any access to the warrant affidavits at this time." *Id*. at 585. Instead, the district court considered "the sensitivity of the Government's ongoing investigation" to be among "countervailing factors sufficient to require the redaction of certain portions" of those affidavits pending further order of the court; the remainder of the documents were immediately unsealed. *Id*. at 584–86. Similarly, and more recently, in *United States v. Cohen*, 366 F. Supp. 3d 612, 633 (S.D.N.Y. 2019), the district court held that search warrant applications and supporting affidavits are "judicial documents to which the common law presumption of public access applies[,]" *id*. at 620. The district court then went on to balance countervailing factors—including the Government's representation "that aspects of its investigation remain ongoing[,]" *id*. at 623—and ordered that redacted versions of the applications and affidavits at issue be immediately unsealed. *Id*. (requiring redaction because, "[a]t this stage, wholesale disclosure of the Materials would reveal the scope and direction of the Government's ongoing investigation")

The Government relies heavily on cases like *In re Newsday, Inc.* that either predate the

2

Second Circuit's seminal rulings in *United States v. Amodeo*, 44 F.3d 141 (2d. Cir. 1995) ("*Amodeo I*") and *United States v. Amodeo*, 71 F.3d 1044 (2d Cir. 1995) ("*Amodeo II*"), or were decided in the short interval between them. *Amodeo I* and *Amodeo II*, respectively, established that "judicial documents" are presumptively open to public inspection under the common law and set forth the standards to be used by courts in this Circuit when balancing the presumption of access against countervailing interests. *See Lugosch*, 435 F.3d at 119–20 (summarizing the legal standards announced in *Amodeo I* and *Amodeo II*). For example, the two district court decisions the Government points to in support of its claim that courts in this Circuit have recognized "that a common law right of public access does not apply to search applications in ongoing criminal investigations," Opp. at 2–3—*In re Search Warrant Executed Feb. 1, 1995*, No. 18 Misc. 65 (RJW), 1995 WL 406276 (S.D.N.Y. July 7, 1995) and *Matter of Searches of Semtex Indus. Corp.*, 876 F. Supp. 426 (E.D.N.Y. 1995)—were decided before *Amodeo II* and, thus, make no mention of, let alone apply, those now-governing legal standards.[1]

Nor do the other district court decisions cited by the Government support its argument. In *In re San Francisco Chronicle*, No. 07 Misc. 256 (TCP), 2007 WL 2782753 (E.D.N.Y. Sept. 24, 2007), the Government had *already* unsealed the search warrant and supporting affidavits at issue in redacted form; the only issue before the district court was whether the First Amendment or common law provided a basis for disclosure of the *redacted information* in the search warrant materials. *Id*. at *3–4. The district court determined it did not. *Id*. at *3 (concluding that the

---

[1] Similarly, the Government's reliance on *United States v. Paloscio*, No. 99 CR. 1199 (LMM), 2002 WL 1585835 (S.D.N.Y. July 17, 2002), is unavailing. The district court, in a single paragraph, rejected a criminal defendant's request to unseal search warrant materials, citing only *In re Search Warrant Executed Feb. 1, 1995* and the Ninth Circuit's decision in *Times Mirror Co*. *See Paloscio*, 2002 WL 1585835 at *3. It did not cite, let alone apply, governing Second Circuit precedent concerning the public's common law right to inspect judicial documents.

3

"redactions are narrowly tailored to protect the identity of the unindicted third parties and to facilitate the government's ongoing criminal investigation"). Indeed, to the contrary, cases that the Government points to as support for its argument that the Search Warrant Materials must remain, for now, fully under seal squarely refute its contention that the common law presumption does not apply. *See, e.g.*, *In re Sealed Search Warrants Issued June 4 and 5, 2008*, No. 08 Misc. 208 (DRH), 2008 WL 5667021, at *4–5 (N.D.N.Y. July 14, 2008) (applying the common law presumption but concluding that unsealing of the requested search warrant applications and affidavits "cannot be accomplished at this stage without serious risk to the investigation").

In short, the Reporters Committee does not dispute that the specific factual circumstances of this matter, including the status of the Government's investigation, are relevant factors for the Court to consider in determining whether—and to what extent—the strong common law presumption of public access applicable to the Search Warrant Materials may be overcome at the present time. But the status of the Government's investigation does not determine whether the common law presumption of access attaches in the first place. For the reasons detailed in the Motion, the Search Warrant Materials "clearly fall within the definition of 'judicial documents[,]'" *All Funds on Deposit*, 643 F. Supp. 2d at 583; the common law presumption of public access attaches to them; and the presumption is "entitled to great weight[,]" *In re Search Warrant*, No. 16 Misc. 464 (PKC), 2016 WL 7339113, at *3 (S.D.N.Y. Dec. 19, 2016).

II. **The Government fails to meet its burden to demonstrate that countervailing interests overcome the presumption of access as to the entirety of the Search Warrant Materials.**

The Government bears the burden of demonstrating that countervailing factors, including any asserted harm to an ongoing investigation, overcome the public's common law right to inspect the Search Warrant Materials, *see Amodeo I*, 44 F.3d at 148: a document-specific, factual showing that the Government would be expected to attempt to make through the submission of

4

evidence and argument addressed to the specific facts of the case. *See, e.g.*, *All Funds on Deposit*, 643 F. Supp. 2d at 585; *Cohen*, 366 F. Supp. 3d at 623–24. The Government has not done so. *See* Opp. at 1, n.2 (offering "[t]o the extent the Court has specific factual questions" to "provide additional information to the Court on an *ex parte* basis").

Instead, the Government lists general law enforcement and privacy interests that may—in some cases—justify redaction or sealing, but do not fit the circumstances here. *See, e.g.*, *id*. at 8 (speculating that unsealing "could result in, among other things, alerting subjects of investigation to aspects of the investigation and evidence gathered that are not publicly known, and could lead potential subjects or witnesses to destroy evidence (including types of evidence that they may not realize are relevant, to the extent they are unaware of the evidence gathered to date), tamper with witnesses, or flee from prosecution.").[2] For example, the Government emphasizes that "*no* aspect of the criminal investigation has been made public in a charging document; all that has been made public is the search warrant itself," *id*. at 9 (emphasis in original). Yet this ignores not only what is in the public domain about the Government's investigation into the theft of a diary reportedly stolen from Ashley Biden, President Biden's daughter, through news reporting and the public statements of James O'Keefe ("O'Keefe") and his attorneys and associates, *see* Mot. at 7, but also the Government's *own* representations in public filings about the status and scope of its investigation. Those representations include, *inter alia*, that the warrant at issue was "obtained by the Government as part of an ongoing grand jury investigation . . . into the theft and interstate transportation" of stolen property; that the "Government's investigation is limited to a

---

[2] The Reporters Committee does not dispute that "the danger of impairing law enforcement or judicial efficiency," *Amodeo II*, 71 F.3d at 1050, may be a countervailing factor sufficient to justify redaction or sealing in a particular case. The question is whether—and to what extent— the Government has shown that factor applies and outweighs the presumption of access here.

5

narrow course of conduct and the particular offenses listed in the search warrants" executed at the residences of O'Keefe and his associates, Spencer Meads ("Meads") and Eric Cochran ("Cochran"); and that "the Government has already established the identity of the individuals whom Project Veritas has characterized as its 'sources' through the evidence gathered in its investigation. . . ." Gov't Opp'n to Mot. to Appoint Special Master 3, 11, ECF 29. Given these representations about the "narrow" scope and status of the investigation, *id*. at 11, and the information in the public domain, the Government's bald claim that unsealing *any* portion of the Search Warrant Materials at this time would jeopardize its investigation falls short.[3]

The Government's assertion of countervailing privacy interests of third parties is, likewise, unavailing. Certain individuals likely to be named in the Search Warrant Materials—such as O'Keefe, Meads, and Cochran—are already publicly connected to the investigation and have asserted, including in court filings, that the searches were improper; there can be no concern that their "reputation[s will be] sullied by the mere circumstance of [the] investigation." Opp. at 10 (quoting *In re Search Warrant*, 2016 WL 7339113, at *4).

As for other "uncharged third parties" who may be named in the Search Warrant Materials, the Government appears to merely speculate that they would assert "substantial privacy interests" in opposition to unsealing. *See* Opp. at 11, n.5 (stating that the "Government

---

[3] While it repeatedly invokes an ongoing investigation as the basis for continued sealing, the Government also appears to take the extraordinary position that sealing would be warranted even *after* its investigation ends to avoid "generat[ing] substantially prejudicial pretrial publicity which would impede the progression of any potential prosecution." Opp. at 9. A party attempting to overcome the public's rights of access to judicial proceedings and documents—even in the most high-profile matters—on the ground that "there is a substantial probability that the defendant's right to a fair trial will be prejudiced by [pre-trial] publicity" bears a "heavy burden" to so demonstrate. *ABC, Inc. v. Stewart*, 360 F.3d 90 (2d Cir. 2004); *United States v. Shkreli*, 260 F. Supp. 3d 257, 259–60 (E.D.N.Y. 2017). The Government's rank speculation about publicity that might be generated by unsealing the Search Warrant Materials, and its possible effect on a potential prosecution, falls far short of meeting that standard.

has not notified the uncharged third parties that they were named in the [Search Warrant] Materials"). But the applicable test does not ask courts to imagine what privacy interests *might* conceivably be at play; it instructs courts to consider "the privacy interests *of those resisting disclosure*[.]" *Amodeo II*, 71 F.3d at 1050 (emphasis added); *see also In re Application of WP Company LLC*, 201 F. Supp. 3d 109, 126–27 (D.D.C. 2016) (taking into consideration that, as instructed by the district court, the Government "took steps to 'notify any individuals whose privacy interests may be implicated through the additional disclosure'" of information sought to be unsealed in search warrant materials and those individuals "oppos[ed] any further unsealing in this case"). Here, at least some—if not all—of the "uncharged third parties" who may be named in the Search Warrant Materials are undoubtedly aware of the investigation at issue through public reporting or otherwise. *See, e.g.*, Gov't Opp'n to Mot. to Appoint Special Master 20 (stating that "the Government approached multiple individuals as part of the investigation prior to the execution of the search warrants"), ECF 29. Yet, as the Government appears to concede, none have come forward to raise concerns about unsealing of the Search Warrant Materials; the only party "resisting disclosure" in this case is the Government.

The interest of the press and the public in access to the Search Warrant Materials is exceptional—a fact that adds weight to the presumption. *See, e.g.*, *Hardy v. Kaszycki & Sons*, No. 1:83-cv-06346, 2017 WL 6805707, at *3 (S.D.N.Y. Nov. 21, 2017). Here, O'Keefe and Project Veritas have claimed publicly and in court filings that the searches conducted by the Government, including the search at O'Keefe's residence, violated the Privacy Protection Act of 1980, 42 U.S.C. § 2000aa(a), and the Department of Justice's internal policies, *see* 28 C.F.R. § 50.10, and implicate First Amendment-protected material. *See generally*, Mot. to Appoint Special Master, ECF 1. The Government has strongly denied any impropriety with respect to the

7

searches and argued, among other things, that no First Amendment or qualified journalistic privilege attaches to the materials seized by the Government. *See generally*, Gov't Opp'n to Mot. to Appoint Special Master, ECF 29. Such issues are newsworthy, and of abiding interest to members of the public and press, as well as to organizations such as the Reporters Committee.

Further, to refute Project Veritas' claims, the Government has pointed to the showing it made in the sealed Search Warrant Materials. In its opposition to the appointment of a special master, the Government argues, for example, that "O'Keefe and Project Veritas's motion for a special master contains a number of unsworn assertions regarding the [i]nvestigation and the underlying facts, for which no evidence is provided, and which are either false or misleading and *are directly contradicted by the evidence described in the sworn affidavits that were submitted to the federal magistrate judge in support of the search warrants*." Gov't Opp'n to Mot. to Appoint Special Master 3 (emphasis added), ECF 29; *see also, e.g.*, *id*. at 12 (arguing that "any qualified journalistic privilege that might attach to the information responsive to the search warrants is readily overcome by the showing made in support of the search warrants"). The Government's own reliance on the sealed Search Warrant Materials in public filings only strengthens the public's legitimate interest in access to those judicial documents.

In sum, the Government's search and the showing that the Government made to obtain the warrant for that search are *themselves* newsworthy and of broad, legitimate interest to the press and public. In considering the strength of the common law presumption of public access to the Search Warrant Materials, the Court should not "ignore" that "broader context." *Hardy*, 2017 WL 6805707, at *3 (quoting *Lugosch*, 435 F.3d at 123 n.5).

**III.     Even assuming countervailing interests require continued sealing of portions of the Search Warrant Materials, redaction is a viable alternative.**

To the extent the Court finds that countervailing interests necessitate the continued

8

sealing of some portion of the Search Warrant Materials, any "limitation" on access "should not be broader than necessary." *All Funds on Deposit*, 643 F. Supp. 2d at 585; *see also In re Newsday,* 895 F.2d at 80 (approvingly noting district court's limited redactions). Accordingly, the Court should order redacted versions to be unsealed and immediately placed on the public docket, as other courts have done. *See, e.g.*, *Cohen*, 366 F. Supp. 3d at 633. The Government's contention that redaction "is not a viable remedy at the present time" is without merit.

First, the Government's claim that redaction "would require a line-by-line review" that would be "cumbersome" and "time-consuming" is irrelevant. The Government points to no Second Circuit authority (and the Reporters Committee is unaware of any) to suggest that the burden to the Government (or any other party) of redacting documents is a countervailing interest sufficient to overcome the public's right of access. And courts have rejected precisely that argument. *See, e.g.*, *United States v. Camick*, 796 F.3d 1206, 1213 n.5 (10th Cir. 2015) (finding the Government's argument that "review or redaction would be unduly burdensome and costly," overlooked the "presumption in favor of the common-law right of access to judicial records" (cleaned up)).

Second, the Government's claim that the immediate release of redacted documents "could be more damaging to uncharged individuals than wholesale release, because the redactions would lead to rampant speculation[,]" Opp. at 14, ignores the circumstances here. While the Government concedes that this matter *already* "has been the subject of public attention and speculation about the nature and scope of the Government's investigation[,]" *id.*, it nevertheless suggests that additional information about the showing the Government made to obtain the search warrant at issue will somehow lead to more (rather than less) speculation about the Government's actions. To the contrary, the Search Warrant Materials, even in redacted form,

9

would provide additional clarity and decrease the need for a "public guessing game[.]" Opp. at 15. Further, the Government's claim that redacting the names of uncharged individuals would place them in an "unfair position[,]" *id.*, is sheer speculation and, again, ignores that, for at least some of those individuals, their connection to the investigation is already publicly known.

**IV.     The Reporters Committee moved to unseal the Search Warrant Materials pursuant to common law; the Court need not and should not consider the Government's additional arguments regarding the First Amendment presumption of access.**

Because the common law presumption of public access clearly applies to the Search Warrant Materials, the Reporters Committee moved to unseal them pursuant to common law. While the Reporters Committee does not concede that a separate First Amendment presumption of access does not also apply, *see* Mot. at 1, n.1, it did not assert that constitutional presumption as a basis for unsealing the Search Warrant Materials.  The Court should not reach the Government's additional, unnecesssary arguments that no First Amendment presumption of access applies to the Search Warrant Materials, Opp. at 11–13—those arguments are not responsive to the Motion and are not fully briefed.

## CONCLUSION

For the reasons detailed in its Motion and herein, the Reporters Committee respectfully requests that the Court unseal the Search Warrant Materials.  Alternatively, to the extent the Court finds, based on specific facts, that countervailing interests necessitate the continued sealing of some portions of the Search Warrant Materials at present, the Court should (1) order that redacted versions of the Search Warrant Materials be placed on the public docket immediately, and (2) order the parties to inform the Court when such redactions are no longer necessary.

Respectfully submitted,

*/s/ Katie Townsend*

Katie Townsend
THE REPORTERS COMMITTEE FOR
  FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, DC 20005
Phone: 202.795.9300
Facsimile: 202.795.9310
ktownsend@rcfp.org

*Counsel of Record for the Reporters Committee for Freedom of the Press*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing **REPLY OF THE REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS IN SUPPORT OF ITS NOVEMBER 15, 2021 LETTER MOTION TO UNSEAL** was filed with the Clerk of Court using the CM/ECF system, and courtesy copies were served on the Court and counsel for the following via e-mail:

Paul A. Calli
Chas Short
CALLI LAW, LLC
14 NE 1st Ave, Suite 1100
Miami, FL 33132
PCalli@Calli-Law.com
CShort@Calli-Law.com

Harlan Protass
PROTASS LAW PLLC
260 Madison Avenue, 22nd Floor
New York, NY 10016
hprotass@protasslaw.com

Stephen R. Klein
BARR & KLEIN PLLC
1629 K St. N.W., Ste. 300
Washington, DC 20006
steve@barrklein.com

Benjamin Barr
BARR & KLEIN PLLC
444 N. Michigan Avenue Ste. 1200
Chicago, IL 60611
Ben@barrklein.com

*Counsel for James O'Keefe*

Mitzi Steiner
Robert Sobelman
Jacqueline Kelly
One St. Andrew's Plaza
New York, NY 10007
Mitzi.Steiner@usdoj.gov
Robert.Sobelman@usdoj.gov
Jacqueline.Kelly@usdoj.gov

*Assistant U.S. Attorneys for the Southern District of New York*

This the 23rd day of November, 2021.

　　　　　　　　　　　　　　　　　　　　*/s Katie Townsend*
　　　　　　　　　　　　　　　　　　　　　Katie Townsend

12