```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF NEW YORK

In re:                               :
                                         Docket #1:21-mc-00813-
                                     : AT

 SEARCH WARRANT DATED                :
 NOVEMBER 5, 2021

                                     : New York, New York
                                       November 29, 2021
                                     :

------------------------------------ : TELEPHONE CONFERENCE
```

```
                       PROCEEDINGS BEFORE
                 THE HONORABLE SARAH L. CAVE,
                 UNITED STATES MAGISTRATE JUDGE
```

APPEARANCES:

```
For the United States:    UNITED STATES ATTORNEY'S OFFICE
                          BY:  ROBERT B. SOBELMAN, ESQ.
                               MITZI STEINER, ESQ.
                          One St. Andrew's Plaza
                          New York, New York 10007


For the Reporters         REPORTERS COMMITTEE FOR FREEDOM OF
Committee for Freedom         THE PRESS
of the Press:             BY:  KATIE TOWNSEND, ESQ.
                               CHARLIE HOGLE, ESQ.
                          1156 15th Street, N.W., Suite 1020
                          Washington, D.C.  20005
```

```
Transcription Service:  Carole Ludwig, Transcription Services
                        155 East Fourth Street #3C
                        New York, New York 10009
                        Phone:  (212) 420-0771
                        Email:  Transcription420@aol.com
```

Proceedings conducted telephonically and recorded by
electronic sound recording;
Transcript produced by transcription service

## INDEX

### E X A M I N A T I O N S

| Witness | Direct | Cross | Re-Direct | Re-Cross |
|---------|--------|-------|-----------|----------|

None

### E X H I B I T S

| Exhibit Number | Description | ID | In | Voir Dire |
|----------------|-------------|----|----|-----------|

None

```
 1                        PROCEEDINGS                    3

 2              HONORABLE SARAH L. CAVE (THE COURT):   Good

 3    morning.   This is Magistrate Judge Cave.   I'll ask my

 4    deputy to call the case, please.

 5              THE CLERK:   Your Honor, this is in the matter of

 6    Search Warrant dated November 5, '21; 21-mc-813.

 7              Counsel, please state your appearance for the

 8    record.

 9              MR. ROBERT SOBELMAN:   Robert Sobelman, the United

10    States.   And I'm joined on this call by Assistant U.S.

11    Attorney Mitzi Steiner.   Good morning, your Honor.

12              THE COURT:   Good morning.

13              MS. KATIE TOWNSEND:   Good morning, your Honor.

14    Katie Townsend on behalf of the Reporters Committee for

15    Freedom of the Press.   My colleague, Charlie Hogle, from

16    the Reporters Committee, is also on the line, but he won't

17    be addressing the Court.

18              THE COURT:   Okay.   Very good.

19              Mr. Sobelman, will it just be you speaking for the

20    government?

21              MR. SOBELMAN:   Yes, your Honor.

22              THE COURT:   Okay, so I'm just going to ask my

23    deputy, just so we don't get any feedback or anything,

24    she'll just mute the other lines aside from Mr. Sobelman

25    and Ms. Townsend.
```

```
 1                         PROCEEDINGS              4
 2              Okay, great.  All right, so, Ms. Townsend, we
 3   have before the Court the Reporters Committee's request to
 4   unseal the search warrant materials relating to the
 5   November 5th search warrant.  And so, given that it's your
 6   motion, you can have the floor first.
 7              MS. TOWNSEND:  Thank you, your Honor.  And I won't
 8   repeat what we've detailed in the papers, which I'm sure
 9   the Court is familiar with and the Court and the Court is.
10   But I will highlight a couple of points.  The Reporters
11   Committee has moved for public access to the search warrant
12   application, supporting affidavit, any other related sealed
13   judicial documents concerning the November 5th search
14   warrant that was executed at the home of Mr. O'Keefe.
15   These search warrant materials are, for the reason that
16   we've detailed in our papers and a number of courts in this
17   district have held, applying Second Circuit law, plainly
18   judicial documents to which a strong common presumption of
19   public access applies; and that the determination that it
20   does not, as the government has argued and as I think we
21   addressed early in our reply, turn on the status of the
22   government's investigation.
23              Now, what's the status of the government's
24   investigation may be relevant to -- and I think we've
25   acknowledged this from the outset -- is the extent to which
```

1                              PROCEEDINGS                        5

2    the common law presumption may be overcome at present.  Put

3    another way, is there information in the search warrant

4    application or affidavit or other documents that we've

5    moved to unseal that the government has demonstrated needs

6    to be redacted, at least for now.  And, as we've argued in

7    our reply, we don't think the government has met its burden

8    in its opposition to demonstrate that any specific

9    redactions are necessary but let alone that nothing can be

10   unsealed at this point in time, which is what the

11   government's position is.

12            This is, I think it's fair to say, your Honor, an

13   unusual matter.  It is certainly not the usual case, that

14   the showing that the government made to obtain a search

15   warrant is sort of in and of itself of particular interest

16   to the press and the public prior to any charges being

17   filed in a given case.  But here, Mr. O'Keefe and Project

18   Veritas accused the government of wrongdoing, indeed

19   unlawful conduct, in obtaining and executing the search

20   warrant, including violations of the Privacy Protection Act

21   of 1980, violations of the Department of Justice media

22   guidelines.

23            The government has stated publicly --

24            THE COURT:  Can I just interrupt you for one

25   second on that point?

```
 1                        PROCEEDINGS                  6

 2            MS. TOWNSEND:  Of course.

 3            THE COURT:  I'm sorry to interrupt you.  But do

 4    you have any cases that support sort of a reporter's

 5    exception or any other circumstances like this where there

 6    might be an additional support for allowing access to the

 7    search warrants in an ongoing grand jury investigation?

 8            MS. TOWNSEND:  I think what we've cited, your

 9    Honor, I think is a relevant piece here, and this goes to

10    the strength -- I think this goes to the strength of the

11    presumption of access, which under Second Circuit law is

12    what the Court should evaluate.  Once the Court determines

13    that these are in fact judicial documents, it looks to the

14    weight of the presumption in a given case.  And, as we've

15    argued in our papers, search warrant materials are, there's

16    always a strong presumption of access because of the

17    probable cause determination that the Court is required to

18    make on the basis of the application and affidavit.  But we

19    noted -- we cited *Hardy v. Kaszycki & Sons*, a Southern

20    District of New York case from November of 2017, in our

21    papers to demonstrate that the Courts determine the weight

22    to be stronger when there is a legitimate public interest.

23    In particular in access to information, that's context that

24    the Court shouldn't ignore when it's determining the weight

25    of the presumption in a given case.
```

```
1                          PROCEEDINGS              7
```

2              And I do want to underscore, your Honor, that the

3      government has stated publicly, including in its opposition

4      to Mr. O'Keefe's and Project Veritas's motion for the

5      appointment of a special master, that the showing the

6      government made in its search warrant application and

7      affidavit squarely refutes the accusations that have been

8      made by Mr. O'Keefe and Project Veritas.  And I'm not

9      suggesting that the Reporters Committee or any member of

10     the public has reason necessarily to doubt that

11     representation by the government, but as Chief Justice

12     Burger noted in *Richmond Newspapers*, it's difficult for the

13     public to accept what it's prohibited from observing.  And

14     I think, given the very public nature of that dispute over

15     the propriety, frankly, of the search warrant itself,

16     really the only way for the public to get true clarity

17     about the government's actions with respect to these

18     searches, which again is of paramount importance whether or

19     not the government pursues any criminal charges here, is

20     for the showing the government made to the Court in support

21     of the search warrant to be public, at least to the

22     greatest extent possible.

23              THE COURT:  Right.  But why does that outweigh the

24     need for grand jury secrecy, which is also protected by the

25     cases and the Federal Rules of Criminal Procedure,

```
 1                       PROCEEDINGS               8
 2   including Rule 6; why is that more urgent, the need for
 3   sunshine on the search warrant, why is that need more
 4   urgent than protecting the grand jury's secrecy?
 5             MS. TOWNSEND:  Well, I think, your Honor, that
 6   there isn't -- I don't think we would dispute and we do not
 7   dispute that an ongoing grand jury investigation is a
 8   countervailing factor that may weigh against access in a
 9   given case.  I think that is, particularly in this case,
10   where there's a number of pieces of information, including
11   the existence of the grand jury investigation, that have
12   already been made public by the government itself, I would
13   think that that would weigh, that would be a factor that
14   would be taken into account for purposes of redaction, your
15   Honor, not wholesale sealing.  And I think that the
16   Reporters Committee in its initial motion and again
17   reiterated in its reply that, to the extent the Court finds
18   that there are countervailing factors that outweigh the
19   common law presumption at this point in time, that we would
20   advocate for a redacted version, we would ask that a
21   redacted version be placed on the public docket, and that
22   to the extent down the road, a few weeks from now perhaps
23   or a month from now, there is no more need for redaction,
24   that the materials could be unsealed more thoroughly at
25   that point in time.
```

```
 1                         PROCEEDINGS                    9

 2              THE COURT:  Okay.  So since you submitted your

 3    reply and we scheduled this call, Judge Torres has issued

 4    an order on November 23rd in which she denied, I believe

 5    it's Project Veritas and Mr. O'Keefe's motion seeking

 6    unsealing of, I think, the same information that you're

 7    seeking unsealing here.  So why doesn't that either moot

 8    the Reporters Committee's request or at least isn't the law

 9    of the case?

10              MS. TOWNSEND:  I don't think it's dispositive,

11    your Honor, for a few reasons.  One is that the one-page

12    motion for -- I don't believe it was a motion to unseal; I

13    believe it was a motion for production or a motion asking

14    the Court to require the government to produce the

15    affidavit to Mr. O'Keefe and Project Veritas.  It was a

16    one-page motion; it cited no case law; it did not refer to

17    the common law presumption of access; it didn't refer,

18    again, to any case law.  It indicated that it was

19    predicated on a need for Mr. O'Keefe and Project Veritas to

20    respond to the government's opposition to their motion to

21    appoint a special master.  And Judge Torres did indeed deny

22    that motion for access.  She did address the merits, even

23    though the motion was moot at that point because Project

24    Veritas had filed its reply.  She did address the merits;

25    but, again, faced with no case law, she seemed to ground
```

1                             PROCEEDINGS                10

2    that in a finding that there was no Fourth Amendment right

3    to an uncharged party to inspect a warrant.

4             So, one, I don't think that that was a motion to

5    unseal, citing the common law presumption of access, which

6    is what the Reporters Committee has asserted here.  It

7    wasn't an issue that was presented to Judge Torres.  And I

8    would take the position, your Honor, respectfully, that it

9    does not address the issues that we've raised in our motion

10   and briefing.

11            THE COURT:  Okay.  Can I ask you just a logistical

12   question?  Attached to your November 15th letter is a copy

13   of the search warrant itself with redactions.  Are those

14   redactions that the Reporters Committee put on the search

15   warrant, or did the search warrant come to you with those

16   redactions?

17            MS. TOWNSEND:  Those are not redactions that we

18   placed on that document, your Honor.  That is the document

19   that was attached -- or a copy of the search warrant that

20   was attached to the filing that Project Veritas made, which

21   I believe it's an initial filing in support of an

22   appointment of a special master.

23            THE COURT:  Okay.  Thank you.

24            And then I guess my last question for now is --

25   and your letter is grounded -- your request is grounded in

```
 1                          PROCEEDINGS              11
 2  the common law, and I think in both your opening letter and
 3  your reply you sort of encouraged me not to reach the First
 4  Amendment grounds.  If I deny your motion under the common
 5  law, though, hypothetically, don't you want me to consider
 6  whether -- the First Amendment arguments, as well?
 7            MS. TOWNSEND:  I think we can -- I would take the
 8  position, your Honor, that the Reporters Committee -- the
 9  common law presumption of access, which is incredibly
10  strong in this context for the reasons that we've
11  described, should entitle us to the relief that we've
12  requested.  So, again, I would say that the Court need not
13  reach the First Amendment issue.  I think the case law in
14  the Second Circuit and in the Southern District of New York
15  with respect to application of the common law presumption
16  is clear.  And I would also note, your Honor, that, to the
17  extent the Court finds that, for example, an ongoing
18  investigatory need of the government requires redaction, I
19  think the Court would reach that same conclusion, quite
20  frankly, under the First Amendment and common law; and
21  given the clarity of the law under the common law, I think
22  that that is what we grounded our request in.  I don't
23  think the Court needs to reach the First Amendment issues.
24            THE COURT:  Okay.  All right.  Thank you,
25  Ms. Townsend.
```

1                          PROCEEDINGS              12

2              Mr. Sobelman, would you like to respond?

3              MR. SOBELMAN:  Yes, your Honor, briefly, as I

4    think most of these points have been dealt with in the

5    government's brief.

6              First, with respect to Judge Torres' order,

7    counsel is correct that this -- it did not squarely decide

8    the same issue.  But I think it takes the wind out of the

9    sails of her argument.  Her argument was, you know, Project

10   Veritas and Mr. O'Keefe have raised issues about the search

11   warrant, and somehow that increases the public's

12   entitlement; their unilateral allegations increase the

13   public's entitlement to this document, which we certainly

14   do not concede and in fact dispute.  Nevertheless, Judge

15   Torres herself decided that the affidavits and their

16   contents were not sufficiently placed at issue in the

17   special master litigation to require them to be produced,

18   even just to Mr. O'Keefe and Project Veritas.

19             So the idea that, you know, unilateral allegations

20   by two individuals or an individual (indiscernible) entity

21   somehow entitles the public to a sealed ex parte submission

22   in a separate matter really can't stand in light of Judge

23   Torres' ruling that even in that litigation with those two

24   parties, those two parties are not entitled to the

25   documents.  We agree that the common law right of access is

```
 1                        PROCEEDINGS              13
 2  a different analysis, assuming the Court finds that it
 3  applies and chooses not to follow *Times Mirror*, but Judge
 4  Torres' order we think is a very strong indication that the
 5  argument being made today cannot succeed.
 6            A couple of other responses.  Counsel referenced
 7  that, you know, now that the government has confirmed the
 8  existence of the investigation, there's somehow less of a
 9  need to protect the information that was submitted in a
10  sealed and ex parte proceeding.  In every search warrant
11  that will be true.  Search warrants are executed,
12  generally, on premises or individuals; and in almost all
13  circumstances, the individuals on whom those search
14  warrants are executed are aware of the execution of the
15  search warrant and given a copy of the search warrant,
16  consistent with the Federal Rules of Criminal Procedure and
17  related case law.  It cannot be that, because a search
18  warrant has been executed in an ongoing investigation in
19  which no public charges have filed, suddenly the public is
20  entitled to the affidavit that was submitted in support of
21  that search warrant.
22            Your Honor, I'll finally note that here redactions
23  really are not practicable, to the extent the Court thinks
24  that, one, there is a common law right of access; and, two,
25  the entirety is not overcome by the presumption.  In the
```

1                           PROCEEDINGS                    14

2    *Gunn* case in the Eighth Circuit there's a discussion of

3    whether redactions are appropriate or not appropriate at

4    page 574.  I won't read the quotes to the Court, but to the

5    extent the Court is considering that type of remedy, we

6    would strongly oppose it.  Just like in the *Gunn* case,

7    where they found redactions were not practicable, virtually

8    every page of the affidavit contains multiple references

9    and pieces of information to individuals, entities,

10   investigative techniques and procedures and evidence

11   gathered in this investigation that are simply not

12   appropriate to be made public at this time.

13            Unless the Court has any additional questions, the

14   government will otherwise rest on its brief.

15            THE COURT:  Okay, Mr. Sobelman, so in the ordinary

16   course, then, the search warrant, affidavit and related

17   documents here will be sealed unless and until charges are

18   actually brought and then discovery were to proceed in the

19   criminal case; is that right?

20            MR. SOBELMAN:  Yes, your Honor.  In a typical

21   case, in this posture, the affidavit and related materials

22   remain sealed.  If and when an indictment is filed against

23   someone investigated in the course of the investigation,

24   those materials are produced in discovery to the person or

25   entity that's charged as part of our Rule 16 obligations,

```
 1                        PROCEEDINGS              15
 2   as Judge Torres made a reference to in her order that your
 3   Honor referenced.  And the affidavit, even at that time, is
 4   not unsealed by the Court.  It's simply provided only to
 5   the charged party.  And, in fact, you know, there was a
 6   situation before Judge Torres in another case where even
 7   after charged parties had been provided a sealed affidavit
 8   that was submitted in support of a restraining order, Judge
 9   Torres determined that uncharged parties who sought access
10   to that affidavit were not entitled to it in that
11   circumstance.  So even after a charged case, there would
12   still have to be an analysis of whether it would be
13   appropriate for the public or other nonparties to have
14   access to that sealed affidavit.  It would not be that it
15   was made public as a matter of course.
16             And just -- sorry, just one other note --
17             THE COURT:  Sure.
18             MR. SOBELMAN:  -- in response to counsel's
19   argument, which is, you know, there's a very strong
20   presumption here because search warrant affidavits are
21   something the Court relies upon and the press is really
22   interested here.  We don't see any case where the media
23   attention is taken into account and given a stronger
24   presumption.  It's a different analysis.  But we'll note
25   that in *Amodeo II* at page 1050, the Court wrote -- and I
```

PROCEEDINGS                16

1

2  quote -- "For such documents are usually filed with the

3  Court and are generally available, the weight of the

4  presumption is stronger than where filing with the Court is

5  unusual or is generally under seal."  Here we have a

6  circumstance where search warrant affidavits almost

7  exclusively are filed under seal.  So it cannot be that the

8  presumption is the strongest it could possibly be, as

9  counsel for the Reporters Committee suggests.  In fact, we

10  think it is quite minimal given that these types of

11  documents are routinely, generally and almost exclusively

12  filed under seal for the same reason that it should remain

13  under seal here, which is that the interest of protecting a

14  law enforcement investigation in an ongoing uncharged

15  circumstance is substantial.

16          THE COURT:  Okay.  Does the government have any

17  objection to the Reporters Committee's motion, the

18  government's opposition and the reply being publicly

19  available and then the Court's decision on the motion?

20          MR. SOBELMAN:  No, your Honor.  And in fact, I

21  believe all three of those documents have been publicly

22  filed on the 21-mc-813 docket.

23          THE COURT:  Okay.  I wasn't sure --

24          MR. SOBELMAN:  And assuming the Court's decision

25  does not make reference to specific details of the

```
 1                      PROCEEDINGS              17
 2  affidavit at issue, we have no objection to the Court's
 3  opinion being made publicly available.
 4             THE COURT:  Okay.  All right.  Thank you,
 5  Mr. Sobelman.
 6             Ms. Townsend, any points that you'd like to make
 7  before we close?
 8             MS. TOWNSEND:  Yes, briefly, your Honor, I'll just
 9  respond to a couple of points.  We don't take the position
10  that it's simply the sort of unilateral disclosure that has
11  been made by Mr. O'Keefe and Project Veritas that sort of
12  put this search warrant perhaps -- or search warrant
13  materials perhaps on a different footing than other -- than
14  perhaps other search warrants.  I think there is, as I said
15  earlier, an unusual amount of public information about this
16  investigation that has been put into the public domain,
17  both by Project Veritas and Mr. O'Keefe but also by the
18  government itself, who again has pointed precisely directly
19  to these materials in a public way, in public filings in
20  connection with the motion to appoint a special master that
21  was brought by Project Veritas to refute the arguments
22  being made by Project Veritas that there was anything
23  unlawful about the search that was conducted here.  So it
24  isn't simply sort of unilateral representations that have
25  been made by Project Veritas and by Mr. O'Keefe.
```

```
1                        PROCEEDINGS              18
```

2                 And I would note, just to respond, your Honor, on

3    some of the legal points that counsel made, the notion that

4    the status of an ongoing investigation, somehow that's what

5    the common law presumption of access hinges on is simply

6    refuted by the Second Circuit case law that we've cited and

7    a number of district courts within the Second Circuit that

8    have squarely held that the presumption of access applies

9    to search warrant applications and affidavits even though

10   they are typically filed under seal prior to execution.

11   That would be the Southern District of New York in *Cohen*,

12   the *All Funds on Deposit* case which we cite throughout our

13   briefing, *In Re Sealed Search Warrants Issued June 4 and*

14   *June 5, 2008,* another case cited in our briefing.  And I'd

15   note that the Second Circuit in *In Re Newsday, Inc.* at pin

16   cite 895 F. 2nd 79, directly refuted the argument that the

17   fact that search warrants are commonly filed under seal

18   until a warrant is executed somehow changes their status as

19   public documents.  It concluded precisely the opposite.

20                 So I think the points that counsel is making are

21   really points again about timing and perhaps redaction.

22   The common law presumption of access applies to all of

23   these materials.  The question is, is it overcome at a

24   given point in time and to what extent is it overcome.  And

25   it may be the typical case that the public knows nothing

1
2   about an ongoing investigation, that the government has put
3   no information about an ongoing investigation into the
4   public domain until well after a search warrant is
5   executed; and in that case, it may be far more difficult to
6   argue that information, redacted versions of search
7   warrants, for example, should be made public prior to any
8   indictments being issued.  But here, even if no indictments
9   ever issue, these are materials -- the showing that the
10  government made to obtain this search warrant is still
11  going to be of interest to the press and the public, it's
12  still going to speak to actions that were taken by the
13  government and to the search warrant that was ultimately
14  issued by the Court.  And so I think that those questions,
15  those issues, go really to the heart of what the common law
16  presumption of access is meant to do, which is to allow the
17  public to observe the judicial process and particularly so
18  in cases where the Court has acceded to or responded to a
19  request made by a coordinate branch of government.
20          With that, your Honor, if you have no other
21  questions, we'll rest on our briefing.
22          THE COURT:  Okay.  Great.  Thank you very much.
23  This has been very helpful.  If I can ask the parties to
24  coordinate to order a transcript of today's conference,
25  that would be helpful to me, as well, and in the minute

```
 1                         PROCEEDINGS              20
 2  entry for today's conference, we'll include how you do
 3  that.  So if you could do that on as quickly a turnaround
 4  as is affordable, we would be grateful.
 5              Thank you, both --
 6              MR. SOBELMAN:  Your Honor, was the conference --
 7  sorry, your Honor -- was the conference recorded, or was it
 8  taken down by a reporter?  That will just aid us in
 9  ordering it.
10              THE COURT:  Yes, you're right.  It was just
11  recorded.  We don't have a court reporter on the line for
12  this.
13              MR. SOBELMAN:  Thank you, your Honor.  The
14  government will do that.
15              THE COURT:  Okay.  Thank you so much.  We're
16  adjourned for today.  Have a good afternoon.
17              (Whereupon, the matter is adjourned.)
18
19
20
21
22
23
24
25
```

21

C E R T I F I C A T E

        I, Carole Ludwig, certify that the foregoing

transcript of proceedings in the case of In re: Search

Warrant dated November 5, 2021, Docket #21-mc-00813-AT, was

prepared using digital transcription software and is a true

and accurate record of the proceedings.




Signature_____

                    Carole Ludwig

Date:    November 30, 2021