UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re Search Warrant Dated November 5, 2021,

Case No. 21 Misc. 813 (AT) (SLC)

**OPINION AND ORDER**

**SARAH L. CAVE**, United States Magistrate Judge.

## I. INTRODUCTION

The Reporters Committee for Freedom of the Press ("RCFP"), claiming rights of access grounded in the common law, asks the Court to unseal documents relating to a search warrant dated November 5, 2021 (the "Search Warrant"), which was executed at the residence of James E. O'Keefe, III, the founder and Chief Executive Officer of Project Veritas, in connection with an ongoing federal grand jury investigation (the "Motion").[1] The Government opposes the Motion (the "Opposition"), and RCFP has submitted a reply (the "Reply").  For the reasons set forth below, the Motion is DENIED.

## II. BACKGROUND

On November 4, 2021, a federal grand jury sitting in the Southern District of New York issued a subpoena to Project Veritas, addressed to its counsel, Paul A. Calli, Esq., in connection with its official criminal investigation of a suspected felony (the "Investigation").  (No. 21 Misc.

---

[1] The docket relating to the Search Warrant, No. 21 MAG 10685, remains sealed, but the Motion, Opposition, and Reply are publicly available at ECF Nos. 34-1, 35, and 43-1, respectively, on the docket of the related matter, In re Search Warrant dated Nov. 5, 2021, No. 21 Misc. 813 (AT) (S.D.N.Y.).

813, ECF No. 10-5 at 2).  It has been publicly reported that the Investigation relates to a diary reported to have been stolen from Ashley Biden, the daughter of President Joseph R. Biden, Jr. (Motion at 2; No. 21 Misc. 813, ECF No. 1 at 1).

On November 5, 2021, based on an affidavit sworn by a federal law enforcement officer (the "Affidavit"), the Court found that probable cause existed to believe that O'Keefe's residence contained evidence of federal crimes, including conspiracy to transport stolen property across state lines and conspiracy to possess stolen goods in violation of 18 U.S.C. §§ 371, 2314, and 2315, and issued the Search Warrant, which permitted the FBI to "seize any and all cellphones" found in O'Keefe's residence.  (Motion at 2 & Ex. A).

On November 6, 2021, the Federal Bureau of Investigation ("FBI") executed the Search Warrant at O'Keefe's residence, and seized O'Keefe's cell phones (the "Phones").  (Motion at 1 & Ex. A; Opposition at 1; No. 21 Misc. 813, ECF No. 1 at 2).  On November 10, 2021, Project Veritas and O'Keefe, represented by Calli, asked the Court to appoint a special master to review the contents of the Phones.  (No. 21 Misc. 813, ECF No. 1 (the "SM Motion")).  On review of the SM Motion, the Honorable Analisa Torres directed the Government to confirm "that it ha[d] paused its extraction and review of the contents" of the Phones.  (No. 21 Misc. 813, ECF No. 2).  The Government confirmed that "[o]n November 11, 2021, promptly after receiving the Court's order of that same date, the Government paused its extraction and review of the contents" of the Phones, and notified Calli it had done so.  (No. 21 Misc. 813, ECF No. 3).

On November 15, 2021, RCFP submitted the Motion, which Judge Torres referred to me. In the Motion, RCFP asks the Court to unseal "the search warrant application, supporting affidavit, return, and any other related judicial documents filed in connection with the" Search

Warrant (the "Materials").  (Motion at 1).  On November 19, 2021, the Government submitted the Opposition, and on November 23, 2021, RCFP filed the Reply.  (ECF Nos. 35, 43-1).

In the meantime, on November 19, 2021, Project Veritas and O'Keefe filed a motion seeking an order directing the Government to produce to them all affidavits submitted in support of the Search Warrant, on the basis that the Government had put the contents of the affidavits at issue in its opposition to the SM Motion such that they needed to see the affidavits to file their reply in support of the SM Motion.  (No. 21 Misc. 813, ECF No. 33 at 1 (the "Nov. 19 Motion")). On November 23, 2021, Judge Torres denied the Nov. 19 Motion.  (No. 21 Misc. 813, ECF No. 42 (the "Nov. 23 Order")).  In the Nov. 23 Order, Judge Torres noted that Project Veritas and O'Keefe had filed their reply in support of the SM Motion, thus mooting the Nov. 19 Motion.  (Id.)  Judge Torres also addressed the Nov. 19 Motion on the merits, and found that Project Veritas and O'Keefe "'cite[] no precedent—and the Court is aware of no authority—for the proposition that the Fourth Amendment (or any other constitutional or statutory provision) gives a person who has not been charged a right to review a search warrant affidavit during an ongoing investigation.'"  (Id. (quoting In re Search Warrants Executed on Apr. 28, 2021, No. 21 Misc. 425 (JPO), 2021 WL 2188150, at *3 (S.D.N.Y. May 28, 2021)).  Judge Torres denied the Nov. 19 Motion on the grounds that "the Government's grand jury investigation is ongoing, and no one has been charged."  (Id.)

On November 29, 2021, the Court heard telephonic oral argument on the Motion.  (No. 21 Misc. 813, ECF Nos. 32, 45).

### III.DISCUSSION

**A. Legal Standards**

"The 'notion that the public should have access to the proceedings and documents of courts is integral to our system of government.'" United States v. Cohen, 366 F. Supp. 3d 612, 618 (S.D.N.Y. 2019) (quoting United States v. Erie County, 763 F.3d 235, 238–39 (2d Cir. 2014)). Accordingly, there is a presumptive right of access to judicial documents rooted in both common law and the First Amendment. Erie County, 763 F.3d at 238–39.  Under Second Circuit precedent, documents may be sealed in whole or in part where it "is essential to preserve higher values and is narrowly tailored to serve that interest." Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 120 (2d Cir. 2006) (quoting In re New York Times Co., 828 F.2d 110, 116 (2d Cir. 1987)).  The "decision as to access is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 599 (1978).

Within the Second Circuit, courts follow a three-step process for determining whether documents should be sealed in whole or in part.  First, the Court must determine whether the item at issue is a "judicial document," that is, whether the item is "'relevant to the performance of the judicial function and useful in the judicial process.'" Lugosch, 435 F.3d at 119 (quoting United States v. Amodeo, 44 F.3d 141, 145 (2d Cir. 1995) ("Amodeo I")).  Second, the Court "must determine the weight of that presumption [of access]," which is "governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." Id. at 119.  Third, the Court must "balance competing considerations against" the weight of the presumption.  Id. at 120.

4

B. **Judicial Documents**

The Second Circuit has explained that "the mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access," and that, instead, courts must assess whether "the item filed [is] relevant to the performance of the judicial function and useful in the judicial process." Amodeo I, 44 F.3d at 145.  Applying this definition, the Court finds that the Search Warrant and the Materials are judicial documents to which the presumption of access applies.

The Search Warrant itself is "unquestionably" a judicial document because it "embod[ies] the performance of judicial functions." Cohen, 366 F. Supp. 3d at 621; see Joy v. North, 692 F.2d 880, 892 (2d Cir. 1982) ("An adjudication is a formal act of government, the basis of which should, absent exceptional circumstances, be subject to public scrutiny.").  In addition, "[b]ecause a court necessarily relies upon search warrant applications and supporting affidavits in assessing whether there is probable cause to issue a search warrant, they are certainly relevant to the performance of that judicial function," and are therefore also "judicial documents to which the common law presumption of public access applies." Cohen, 366 F. Supp. 3d at 620–21; see In re Search Warrant, No. 16 MAG 7063 (PKC), 2016 WL 7339113, at *2 (S.D.N.Y. Dec. 19, 2016) ("Search warrant applications require the close and careful scrutiny of a judicial officer, and are thus judicial documents."); In re Sealed Search Warrants Issued June 4 & 5, 2008, No. 08-M-208 (DRH), 2008 WL 5667021, at *2 (N.D.N.Y. July 14, 2008) (holding that affidavits, which were "the basis upon which a judge determined to issue the warrants," and search warrant returns, which are mandated by Fed. R. Crim. P. 41(f)(1)(D), were judicial documents); see also In re Search Warrants Executed on Apr. 28, 2021, 2021 WL 2188150, at *3 (assuming, without deciding, that

search warrant affidavits were judicial documents to which the presumption of access applied). As Chief Judge Swain explained in United States v. All Funds on Deposit at Wells Fargo Bank, "[a]ffidavits in support of seizure or search warrants are central to a court's probable cause determination.  These documents clearly fall within the definition of 'judicial documents' and public access to them facilitates public monitoring of the various government agencies and branches."  643 F. Supp. 2d 577, 583 (S.D.N.Y. 2009).  Therefore, the Affidavit and related documents are also judicial document to which the presumption of access applies.

The Government asks the Court to recognize an exemption from the common law right of public access for all "search warrant applications in ongoing criminal investigations." (Opposition at 2 (emphasis added); see id. at 6–7).  The Court declines to recognize such an exemption.  As explained above, the Second Circuit has determined that a document's status as a "judicial document" is the feature that "triggers" the "presumption of public access, and requires a court to make specific, rigorous findings before sealing the document or otherwise denying public access."  Newsday LLC v. County of Nassau, 730 F.3d 156, 167 n.15 (2d Cir. 2013).

In addition, the cases the Government cites do not support its conclusion that "[t]here is no common law right of access to the Materials at this pre-indictment stage of an ongoing grand jury investigation."  (Opposition at 6).  In In re Newsday, Inc. (Opposition at 6), a 1990 decision that pre-dates the Second Circuit's definition of "judicial document" in Amodeo I, the court expressly declined to adopt or extend the Ninth Circuit's holding "that there was no constitutional or common law right to inspect a warrant application during the pendency of the investigation[,]" and indeed was not faced with that question, given that the unsealing request before it came after a guilty plea had been entered and the government had admitted that its

need for secrecy had ended.  895 F.2d 74, 78–79 (2d Cir. 1990) (citing <u>Times Mirror Co. v. United States</u>, 873 F.2d 1210 (9th Cir. 1989)).  While the court in <u>In re Search Warrant Executed Feb. 1, 1995</u> (Opposition at 6) found that "[t]he nature of the allegations and the pending grand jury investigation" in that case justified maintaining pre-indictment warrant applications under seal, the court did so in reliance on a decision that did not recognize or address <u>Amodeo I</u>'s definition of judicial documents.  No. M-18-65 (RJW), 1995 WL 406276, at *3 (S.D.N.Y. July 7, 1995) (citing <u>In re Searches of Semtex Indus. Corp.</u>, 876 F. Supp. 426, 429 (E.D.N.Y. 1995)).  Finally, in <u>United States v. Paloscio</u> (Opposition at 6), in holding that the public is not entitled to the warrant materials during the pre-indictment stage of an ongoing criminal investigation, No. 99 CR. 1199 (LMM), 2002 WL 1585835, at *3 (S.D.N.Y. July 17, 2002), the court relied principally on <u>Times Mirror</u>, the Ninth Circuit decision whose holding the Second Circuit declined to extend in <u>In re Newsday</u>.  895 F.2d at 79 ("Without deciding whether we would concur in <u>Times-Mirror's</u> result, we decline to extend its holding.").

Rather, precedent within the Second Circuit post-<u>Amodeo I</u> and <u>United States v. Amodeo</u>, 71 F.3d 1044, 1048 (2d Cir. 1995) ("<u>Amodeo II</u>") demonstrates that search warrant applications <u>are</u> judicial documents (<u>see</u> <u>supra</u> § III.B), the sealing of which must be analyzed based on the weight of the presumption balanced against the "countervailing factors," of which the status of the government's investigation is but one.  <u>See</u> <u>Amodeo II</u>, 71 F.3d at 1050 (including "law enforcement concerns" among "[c]ountervailing [f]actors to be [b]alanced [a]gainst the [p]resumption of [a]ccess); <u>All Funds</u>, 643 F. Supp. 2d at 585 (collecting decisions holding that ongoing criminal investigation was "sufficiently compelling to warrant some measure of closure"); <u>In re Search Warrant</u>, 2016 WL 7339113, at *4 (noting that government's interest in

sealing search warrant application "is especially strong when revealing [identity of person named in application] would compromise an ongoing criminal investigation"). Accordingly, the Court declines the Government's invitation to recognize an across-the-board exemption of pre-indictment search warrant application materials from the common law right of access, and will instead consider the status of the Government's Investigation among the countervailing factors to be balanced against the presumption. (See infra § III.C.2.c).

C. **Common Law Right of Access**

1. **Weight of the presumption**

"Having found that the common law presumption of access attaches to" the Materials, "the Court must next determine the weight to be accorded to that presumption." All Funds, 643 F. Supp. 2d at 584; see Hardy v. Kaszycki & Sons, No. 83 Civ 6346 (LAP), 2017 WL 6805707, at *2 (S.D.N.Y. Nov. 21, 2017) ("Once a district court has determined that the common law presumption of access attaches, it must determine the weight of the presumption.") (citing Lugosch, 435 F.3d at 119). "The common law right of access to court records has a 'long history' that has been said to 'predate even the Constitution itself.'" Cohen, 366 F. Supp. 3d at 619 (quoting Erie County, 763 F.3d at 239). This "presumption of access is based on the need for federal courts, although independent—indeed, particularly because they are independent—to have a measure of accountability and for the public to have confidence in the administration of justice." Amodeo II, 71 F.3d at 1048.

"The Second Circuit has found that where the documents 'directly affect an adjudication, or are used to determine the litigants' substantive legal rights' the presumption of access is very high and may only be overcome by 'extraordinary circumstances.'" In re Search

Warrant, 2016 WL 7339113, at *3 (quoting Bernstein v. Bernstein Litowitz Berger & Grossmann

LLP, 814 F.3d 132, 142 (2d Cir. 2016) (internal citations omitted)).  As Judge Castel explained in In

re Search Warrant:

> Search warrants and associated documents go to the heart of the judicial function.
> The judicial determination whether to grant a search warrant, and thus allow the
> government to enter and search private property, directly affects individuals'
> substantive rights.  See In re Sealed Search Warrants Issued June 4 & 5, 2008, 2008
> WL 5667021, at *3 (finding that the presumption of access to search warrants and
> related documents carries the maximum possible weight).  Documents that a
> court relies on in making this determination, such as affidavits, directly affect the
> court's adjudication of those rights.  See All Funds on Deposit at Wells Fargo Bank,
> 643 F. Supp. 2d at 584.  The common law presumption of access to the search
> warrant and related materials . . . is thus entitled to great weight.

2016 WL 7339113, at *3.  On this basis, the Court joins other courts in this Circuit holding that

"search warrants and search warrant materials are entitled to a strong presumption of public

access."  Cohen, 366 F. Supp. 3d at 621 (collecting cases).

### 2.  Balancing competing interests

Having determined that the presumption of access to the Materials is strong, the Court

"must balance competing considerations against it."  Amodeo II, 71 F.3d at 1050.  Where, as here,

"the presumption of access is 'of the highest' weight, as to material sought by the public or press,

the material 'should not remain under seal absent the most compelling reasons.'"  All Funds, 643

F. Supp. 2d at 584 (quoting Lugosch, 435 F.3d at 123).  "In balancing the relevant countervailing

factors, the Court 'has a responsibility to exercise an informed discretion . . . with a sensitive

appreciation of the circumstances' surrounding the affidavits."  Id. at 585 (quoting Nixon, 435

U.S. at 603).  Should the Court find "compelling reasons" to deny public or press access to the

search warrant materials, "the limitation should not be broader than necessary."  Id. (collecting

cases approving limited redactions).  In other words, "[t]he Court is required to order disclosure

absent compelling reasons to deny access and even then must employ the least restrictive possible means of doing so." Id.  As one court in this District has explained:

> [t]he constellation of relevant factors includes both public and private considerations, such as guarding against risks to national security, protecting the privacy and reputation of crime victims, and minimizing the danger of an unfair trial from adverse publicity [and] . . . the risk of impairing law enforcement investigations and the interests in preventing disclosure of law enforcement techniques and procedures, preserving the confidentiality of sources, protecting witnesses and law enforcement personnel, safeguarding the privacy of individuals involved in an investigation, and otherwise preventing interference with or disclosure of the details of an ongoing investigation.

Cohen, 366 F. Supp. 3d at 622–23.

The Government advances two countervailing factors that it contends outweigh the common law right of access: (1) law enforcement interests, and (2) privacy interests of third parties.  (Opposition at 7–11).  The Court will consider each in turn.

### a.  Law enforcement interests

The law enforcement interests the Government describes include the integrity of the ongoing Investigation by the grand jury, confidentiality of the identities of persons of interest, cooperation of persons in this or future investigations, and preventing potential subjects or witnesses from destroying evidence, tampering with witnesses, or fleeing.  (Opposition at 7–9). The Government argues that these risks are heightened here because "no aspect of the criminal [I]nvestigation has been made public in a charging document." (Id. at 9).  RCFP argues in response that information in the press and the Government's public filings has disclosed the status and scope of the Investigation, including that there is a pending grand jury investigation into the potential theft and interstate transportation of stolen property, that search warrants were executed at the residences of O'Keefe and his associates, Spencer Meads and Eric Cochran, and

that the Government has "established the identity" of Project Veritas' "'sources.'" (Reply at 5–6).  In any event, RCFP argues, "[c]ertain individuals likely to be named in the [] Materials . . . are already publicly connected with the [I]nvestigation[.]" (Id. at 6).

The Court finds that the pendency of the Government's ongoing grand jury investigation into potential federal crimes is a substantial countervailing factor weighing against the presumption of public access.  First, the Supreme Court has "recognized that the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings." Douglas Oil Co. v. Petrol Stops Nw., 441 U.S. 211, 218 (1979).  "Among other things, if matters relating to grand jury proceedings became public, prospective witnesses may be deterred from testifying, those who do testify may be less likely to do so truthfully, targets of investigations may flee, and persons how are the subject of an ultimately meritless investigation may face public embarrassment."  United States v. Haller, 837 F.2d 84, 88 (2d Cir. 1988).  To that end, as the Second Circuit noted in Haller, Federal Rule of Criminal Procedure 6(e)(2) "provides for the nondisclosure of matters occurring before a grand jury."  Id.; see In re Search Warrant, 2016 WL 7339113, at *4 (noting that "concerns with revealing the identities of persons of interest in criminal investigations manifest themselves in the strict secrecy of grand jury proceedings").  Here, the Search Warrant was issued in connection with an ongoing federal grand jury proceeding, before anyone has been charged with a crime, and therefore the Materials would traditionally remain under seal.  See In re Search Warrants Executed on Apr. 28, 2021, 2021 WL 2188150, at *3 (explaining that subject of search was "not entitled to a preview of the Government's evidence in an ongoing investigation before he has been charged with a crime"); Nov. 23 Order ("Here, the Government's grand jury investigation is ongoing, and no one has been

charged."); see also In re San Francisco Chronicle, No. 07-00256-MISC (TCP), 2007 WL 2782753, at *2 (E.D.N.Y. Sept. 24, 2007) (noting that "there is no traditional public right to attend search warrant proceedings").

Second, that O'Keefe or other subjects of the ongoing Investigation are aware of its pendency, through receipt of a search warrant or otherwise, does not mitigate the fact that unsealing of the Materials "would disclose to the subjects the full range of potential criminal violations being investigated, the evidence obtained by the United States prior to the searches, and the information which the subjects and other individuals had provided to the United [S]tates or had failed or declined to provide." In re Sealed Search Warrants Issued June 4 & 5, 2008, 2008 WL 5667021, at *4.  Disclosure of that information to the subjects—or other participants in the alleged criminal activity whose identities are unknown—creates the risk that they "could conceal or destroy other evidence, influence information and testimony given by others, and otherwise delay and obstruct the [I]nvestigation." Id.  Likewise, RCFP has failed to identify anything in the substance of what the Government has stated in its filings that "was beyond the public record" as might undermine its asserted investigative interests.  United States v. Smith, 985 F. Supp. 2d 506, 535 (S.D.N.Y. 2013).

Third, the Court has reviewed the Materials in camera and observes that they contain considerable detail about individuals who may have already provided information to the Government—voluntarily or involuntarily—such that unsealing of the Materials "could subject [them] to witness tampering, harassment, or retaliation."  In re Sealed Search Warrants Issued June 4 & 5, 2008, 2008 WL 5667021 at *4; see Amodeo II, 71 F.3d at 1050 (noting that if the confidentiality of cooperating witnesses "cannot be assured, cooperation will not be

forthcoming"); <u>Smith</u> 985 F. Supp. 2d at 531–32 (noting that disclosure of search warrant materials would undermine ongoing investigation by, <u>inter alia</u> "officially confirm[ing] who some of the cooperating witnesses in these investigations are," which "could lead to efforts by [the targets of the investigation] to frustrate the ongoing investigations").  Release of the information in the Materials "is likely to cause persons in [this] or future cases to resist involvement where cooperation is desirable," and thereby undermine law enforcement interests.  <u>Amodeo II</u>, 71 F.3d at 1050.

For these reasons, the Court finds that the law enforcement interests relating to the ongoing grand jury Investigation are a strong countervailing factor to be weighed against the presumption of access.

### b.  <u>Privacy interests</u>

The Government argues that "there are many uncharged individuals named in the Materials, each of which ha[s] a substantial privacy interest at this pre-indictment stage of the [I]nvestigation," including both "witnesses to the alleged criminal activity . . . as well as subjects of the [I]nvestigation."  (Opposition at 11).  The Government maintains that "[t]he substantial privacy interests of these individuals warrant[] the continued sealing of the Materials."  (<u>Id.</u>)

RCFP disputes the Government's contention that "uncharged third parties" have substantial privacy interests, and argues that the Court should only consider "'the privacy interests of those resisting disclosure[.]'"  (Reply at 7 (quoting <u>Amodeo II</u>, 71 F.3d at 1050)).  RCFP emphasizes the "exceptional" interest of the public and the press in obtaining access to the Materials over any perceived interest in the privacy of persons mentioned in the Materials.  (<u>Id.</u> at 7).

The Court rejects RCFP's narrow reading of which third parties' privacy interests are appropriately considered.  After the sentence RCFP quotes from Amodeo II, the Second Circuit went on to note its prior decisions holding that "'[t]he privacy interests of innocent third parties . . . should weigh heavily in a court's balancing equation,'" and explained that "[s]uch interests, while not always fitting comfortably under the rubric 'privacy,' are a venerable common law exception to the presumption of access."  Amodeo II, 71 F.3d at 1051 (quoting In re Newsday, 895 F.2d at 79–80) (emphasis added).  Other courts in the Second Circuit have similarly recognized that the privacy interests of third parties—who may be named but may not be before the court or obvious targets of the investigation—should be given careful consideration in the balancing analysis.  See Haller, 837 F.2d at 88 (considering privacy interests of "third parties under investigation who may be unaware of the threatened danger to their interests and may not appear before the district court to protect themselves"); In re Search Warrant, 2016 WL 7339113, at *4 ("The Court must consider, however, the privacy interests of other persons mentioned in the documents who have not been publicly named by the government.") (emphasis added); In re Sealed Search Warrants Issued June 4 & 5, 2008, 2008 WL 5667021, at *4 (weighing privacy interests of "individuals who have cooperated in the investigation or otherwise provided information"); see also U.S. Sec. & Exch. Comm'n v. Ahmed, No. 3:15-cv-675 (JBA), 2018 WL 4266079, at *3 (D. Conn. Sept. 6, 2008) (finding that non-party's confidentiality interest "substantially outweigh[ed] the public's right of access" and granting motion to seal).  Accordingly, the Court deems it appropriate to consider the privacy interests of third parties, regardless of whether they have appeared to oppose the Motion or are a target of the ongoing grand jury investigation.

The Second Circuit has explained that "[i]n determining the weight to be accorded an assertion of a right of privacy, courts should first consider the degree to which the subject matter is traditionally considered private rather than public," before turning to "[t]he nature and degree of injury" to the right of privacy. Amodeo II, 71 F.3d at 1051. As discussed above, search warrant materials and grand jury investigations are not traditionally public. (See supra § III.C.2.a).

Turning to the nature and degree of the injury to third parties' privacy interests, the Court finds that this injury if the Materials are unsealed is very significant. As noted above, the Court observes that the Materials include references to a number of individuals employed by or associated with Project Veritas. Their conduct in relation to the alleged criminal activity is described in considerable detail, although not all of that conduct may be criminal. There is a recognized interest in protecting third parties from "the unfairness of being stigmatized from sensationalized and potentially out-of-context insinuations of wrongdoing, combined with the inability of these third parties to clear their names at trial." Smith, 985 F. Supp. 2d at 526; see Haller, 837 F.2d at 88 (recognizing concern that disclosure of names of "officers and employees, who although not specifically named were reasonably identifiable" would subject them "to public embarrassment, even if they were later exonerated by the grand jury"); In re Search Warrant, 2016 WL 7339113, at *4 ("Ordinarily, a person whose conduct is the subject of a criminal investigation but is not charged with a crime should not have his or her reputation sullied by the mere circumstance of an investigation.").

There is also a measurable possibility that the individuals named in the Materials may have provided, or will provide, information or testimony before the grand jury, and as discussed above, courts seek to avoid impeding the important role of confidential informants and

cooperating witnesses.  See Amodeo II, 71 F.3d at 1050 ("If [] informants in the present or future cases anticipate that their cooperation will likely become a matter of public knowledge, valuable cooperation might cease.").

Finally, the Court is attentive to the fact that the Government is investigating potential criminal activity relating to the transmission of personal information about a private citizen, who happens to be the daughter of President Biden.  In Amodeo II, the Second Circuit noted that "[c]ourts have long declined to allow public access simply to cater 'to a morbid craving for that which is sensational and impure.'" 71 F.3d at 1051 (quoting In re Caswell, 18 R.I. 835, 836 (1893)). The Second Circuit thus reminded district courts that they "have the power to insure that their records are not 'used to gratify private spite or promote public scandal,' and have 'refused to permit their files to serve as reservoirs of libelous statements for press consumption.'"  Id. (quoting Nixon, 435 U.S. at 598).  While the Court does not suggest that RCFP's interest is of a prurient character, it does note that, given the details about Ms. Biden's personal information included in the Materials, "the privacy interests of innocent third parties"—including the victim of the alleged criminal activity—is an important countervailing factor against granting public access.  Amodeo II, 71 F.3d at 1050–51 (internal citation omitted).

### c.  **Balancing the Competing Interests**

The Court must now balance the presumption of access, which, as noted above, is strong, against the countervailing interests of law enforcement and third parties' privacy.  See Amodeo II, 71 F.3d at 1051.  The Court finds that the Materials contain details of the ongoing grand jury Investigation that "could be used to affect adversely the outcome of that investigation before any charges are filed or a decision is made not to seek formal charges."  In re Search Warrants

Issued June 4 & 5, 2008, 2008 WL 5667021, at *4.  The Court also concludes that "the public has at least as great an interest in preserving the integrity and security of criminal investigations as in obtaining access to judicial documents."  Id.  Finally, the Court finds that the privacy interests of third parties—potential subjects of the grand jury's investigation, as well as confidential informants, cooperating witnesses, employees or associates of Project Veritas, and the victim of the alleged criminal activity—at this point in time, while the Investigation is ongoing and before any charges have been publicly filed, weigh heavily against granting public access to the Materials.

Furthermore, the sealing of the Materials is likely not indefinite.  As the Government acknowledged during oral argument; if charges are brought, the Materials would be produced in discovery to the individuals or entities who are charged as part of the Government's obligations under Federal Rule of Criminal Procedure 16.  (No. 21 Misc. 813, ECF No. 45 at 14–15).  See In re Sealed Search Warrant Issued June 4 & 5, 2008, 2008 WL 5667021, at *4 (noting that "future disclosure of the documents [was] likely" once the determination was made to bring, or not bring, criminal charges).  And if the grand jury Investigation is closed without any criminal charges being filed, the law enforcement interests and possibly some of the third parties' privacy interests would have diminished to warrant revisiting the continued confidentiality of the Materials.  Cf. In re Search Warrant, 2016 WL 7339113, at *4 (noting that subject of closed criminal investigation had "little remaining privacy interest in the release of documents identifying her as the subject of [the] investigation"); In re Sealed Search Warrant, No. 04-M-370 & -388, 2006 WL 3690639, at *4–5 (N.D.N.Y. Dec. 11, 2006) (explaining that the weight of countervailing factors diminished after indictment or decision not to prosecute).

Finally, the Court has carefully examined the Materials to determine whether redactions would be sufficient to protect the countervailing interests that outweigh the presumption of public access, and concludes that "no portion of those documents may be unsealed without compromising the interest in the integrity and security of the [I]nvestigation" and the privacy interests of third parties.  In re Sealed Search Warrants Issued June 4 & 5, 2008, 2008 WL 5667021, at *5.  As noted above, the Materials contain not only the legal theories of the Investigation, but also details about the information the Government has obtained and from which sources.  The nature and extent of any possible redactions to omit this information would "render[] unintelligible" the contents of the Materials, and could be "more likely to mislead than to inform the public" in the way that RCFP predicts.  Amodeo II, 71 F.3d at 1052.  Accordingly, the Court concludes that unsealing the Materials, "even in redacted form, cannot be accomplished at this stage without serious risk to the [I]nvestigation," and they must therefore remain sealed at this time.  In re Sealed Search Warrant Issued June 4 & 5, 2008, 2008 WL 5667021, at *5.

**D.  First Amendment Considerations**

The Government contends that the parallel First Amendment right of access does not apply to this case, (Opposition at 11), and RCFP maintains that "the Court need not and should not consider" the First Amendment arguments, which RCFP contends "are not responsive to the Motion and are not fully briefed."   (Reply at 10). "The Second Circuit has articulated two approaches to determine whether a First Amendment right of access applies to particular judicial documents."  San Francisco Chronicle, 2007 WL 2782753, at *2 (citing Lugosch, 435 F.3d at 120). The first "logic and experience" approach "recognizes a First Amendment right where the documents have historically been open to the public, and where public access plays a significant

role in the oversight and functioning of the judiciary." Id. The second approach evaluates "the extent to which access to the documents is a necessary corollary of the public's capacity to attend relevant judicial proceedings." Id.

RCFP has not pressed a First Amendment argument, perhaps in tacit recognition of the controlling precedent in this Circuit declining to recognize such a right in the context of search warrant materials in an ongoing criminal investigation. See In re Search Warrant, 2016 WL 7339113, at *3 (holding that "no First Amendment right of access exists for the search warrant and related documents applicant seeks at this time"); All Funds, 643 F. Supp. 2d at 583 (holding that media entity had "no First Amendment right of access to the seizure warrant affidavits at this juncture" while criminal investigation was ongoing); San Francisco Chronicle, 2007 WL 2782753, at *2 (finding that "there is no traditional right of public access to search warrant materials nor is there a traditional right for the public to attend search warrant proceedings, which are conducted ex parte"). The Court sees no basis to depart from this precedent, and accordingly, concludes that RCFP does not have a First Amendment right of access to the Materials.

## IV. CONCLUSION

For the reasons set forth above, RCFP's Motion is DENIED. The Clerk of the Court is respectfully directed to publicly file this Opinion and Order in case number 21 Misc. 813 (AT).

Dated:       New York, New York
             December 7, 2021

                                             SO ORDERED.

                                             _____
                                             SARAH L. CAVE
                                             United States Magistrate Judge