**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

---

IN RE: SEARCH WARRANT DATED
NOVEMBER 5, 2021

Misc. Action No. 21-00813 (AT)(SLC)

---

**OBJECTIONS OF THE REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS**
**TO THE MAGISTRATE JUDGE'S OPINION AND ORDER OF DECEMBER 7, 2021**

Katie Townsend
REPORTERS COMMITTEE FOR
  FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, DC 20005
Phone: 202.795.9300
Facsimile: 202.795.9310
ktownsend@rcfp.org

*Counsel of Record for the Reporters*
*Committee for Freedom of the Press*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................................ii

INTRODUCTION AND SUMMARY OF ARGUMENT ...................................................... 1

RELEVANT BACKGROUND ............................................................................................ 4

STANDARD OF REVIEW ................................................................................................. 5

ARGUMENT ...................................................................................................................... 8

   I.    The Order's continued wholesale sealing of the Search Warrant Materials is
        contrary to law and clearly erroneous. ................................................................... 8

   II.   The Order errs in failing to provide for immediate unsealing when the
        Government's investigation concludes. ...............................................................14

   III.  The Order's First Amendment analysis is both unnecessary and incorrect. .....................15

CONCLUSION .................................................................................................................20

# TABLE OF AUTHORITIES

## Cases

*All Funds on Deposit*,
  643 F. Supp. 2d at 585 ................................................................................................ 15

*Ayala v. Speckard*,
  131 F.3d 62, 70 (2d Cir. 1997) ...................................................................................... 9

*Bastidas v. Chappell*,
  791 F.3d 1155 (9th Cir. 2015) ....................................................................................... 7

*Catskill Dev., L.L.C. v. Park Place Ent. Corp.*,
  206 F.R.D. 78 (S.D.N.Y. 2002) ..................................................................................... 7

*Dobson v. Milton Hershey Sch.*,
  434 F. Supp. 3d 224 (M.D. Pa. 2020) ...................................................................... 6, 8

*Franks v. Delaware*,
  438 U.S. 154 (1978) ...................................................................................................... 18

*FTC v. Standard Fin. Mgmt. Corp.*,
  830 F.2d 404 (1st Cir. 1987) ........................................................................................ 19

*Haines v. Liggett Group, Inc.*,
  975 F.2d 81 (3d Cir. 1992) ............................................................................................ 7

*Hall v. Cty. of Fresno*,
  No. 1:11-CV-2047, 2016 WL 374550 (E.D. Cal. Feb. 1, 2016) ............................... 7

*Hartford Courant Co. v. Pellegrino*,
  380 F.3d 83 (2d Cir. 2004) ..................................................................................... 16, 17

*In re Leopold*,
  300 F.Supp.3d 61 (D.D.C. 2018) ................................................................................. 18

*In re Newsday, Inc.*,
  895 F.2d 74 (2d Cir. 1990) ................................................................................... passim

*In re Sealed Search Warrant*,
  2006 WL 3690639 (N.D.N.Y. Dec. 11, 2006) .......................................................... 13

*In re Search Warrant for Secretarial Area Outside Off. of Gunn*,
  855 F.2d 569 (8th Cir. 1988) ("*Gunn*") .................................................................... 18

*In re Search Warrant*,
  No. 16- MAG-7063, 2016 WL 7339113  (S.D.N.Y. Dec. 19, 2016) ....................... 19

*Janes v. Berryhill*,
  498 F. Supp. 3d 540 (S.D.N.Y. 2020) .......................................................................... 7

*Lugosch v. Pyramid Co. of Onondaga*,
  435 F.3d 110 (2d Cir. 2006) ................................................................................. passim

*Newsday LLC v. Cty. of Nassau*,
    730 F.3d 156 (2d Cir. 2013) ................................................................. 8, 9, 14

*Press-Enterprise Co. v. Superior Court*,
    478 U.S. 1 (1986) ("*Press-Enterprise II*")..................................................... 17, 19

*Press-Enterprise Co. v. Superior Ct.*,
    464 U.S. 501 (1984) ("*Press-Enterprise I*") ....................................................... 1, 20

*Richmond Newspapers, Inc. v. Virginia*,
    448 U.S. 555 (1980)........................................................................................ 2

*Smith v. United States Dist. Court for S. Dist.*,
    956 F.2d 647 (7th Cir. 1992) ......................................................................... 19

*Times Mirror Co. v. United States*,
    873 F.2d 1210 (9th Cir. 1989) ....................................................................... 18

*United States v. All Funds on Deposit at Wells Fargo Bank*,
    643 F. Supp. 2d 577 (S.D.N.Y. 2009) ("*All Funds on Deposit*") .................... passim

*United States v. Amodeo*,
    44 F.3d 141, 148 (2d Cir. 1995) ("*Amodeo I*")................................................. 8, 9

*United States v. Amodeo*,
    71 F.3d 1044, 1048 (2d Cir. 1995) ("*Amodeo II*") ...................................... 2, 12, 19

*United States v. Burke*,
    504 U.S. 229 (1992)...................................................................................... 15

*United States v. Cohen*,
    366 F. Supp. 3d 612 (S.D.N.Y. 2019) ....................................................... 3, 9, 13, 17

*United States v. Doe*,
    63 F.3d 121 (2d Cir. 1995) ............................................................................ 8, 9

*United States v. E-Mail Account*,
    No. 10-mj-00291 (D.D.C. Nov. 7, 2011)........................................................ 13

*United States v. Haller*,
    837 F.2d 84 (2d Cir. 1988) ............................................................................ 11

*United States v. Sealed Search Warrants*,
    868 F.3d 385, 390 (5th Cir. 2017) .................................................................. 17

*United States v. Stewart*,
    2002 WL 1300059 (S.D.N.Y. June 11, 2002) ................................................. 1

*United States v. W.R. Grace & Co.-Conn.*,
    185 F.R.D. 184, 188 (D.N.J. 1999).................................................................. 8

**Statutes**

28 U.S.C. § 636(b)(1) ......................................................................................... 6

Privacy Protection Act ("PPA"),
42 U.S.C. § 2000aa *et seq* ........................................................................................ 1, 12, 13

**Rules**

Fed. R. Crim. P. 41 ................................................................................................ 19

Fed. R. Crim. P. 59 ................................................................................................ 1, 5

Pursuant to Federal Rule of Criminal Procedure 59, the Reporters Committee for

Freedom of the Press ("Reporters Committee") hereby respectfully submits the following

objections to the Magistrate Judge's Opinion and Order of December 7, 2021, ECF No. 47

("Order"), denying in its entirety the Reporters Committee's November 15, 2021 letter motion

("Motion" or "Mot.") to unseal the search warrant application, supporting affidavit, return, and

any other related judicial documents filed in connection with the November 5, 2021 search

warrant executed at the residence of James O'Keefe ("O'Keefe"), founder of Project Veritas

(collectively, the "Search Warrant Materials").[1]  *See* ECF No. 34.

## INTRODUCTION AND SUMMARY OF ARGUMENT

As this Court has recognized, the Government's search of O'Keefe's home and its

"review of the materials seized" raise "potential First Amendment concerns" that make it

especially important that the related procedures followed by the Government and the courts "not

only be fair but also appear to be fair."  ECF No. 48 at 3 (quoting *United States v. Stewart*, 2002

WL 1300059, at *8 (S.D.N.Y. June 11, 2002)); *see also Press-Enter. Co. v. Superior Ct.*, 464

U.S. 501, 508 (1984) ("*Press-Enterprise I*").  Here, O'Keefe and Project Veritas have claimed

publicly, including in filings to this Court, that the searches conducted by the Government,

including the search at O'Keefe's residence, not only implicate First Amendment concerns, but

also violated statutory and other protections for newsgathering, including the Privacy Protection

Act of 1980, 42 U.S.C. § 2000aa(a), and the Department of Justice's internal policies, *see* 28

C.F.R. § 50.10.  *See* Mot. of Project Veritas to Appoint Special Master 8–9, ECF No. 1.  Such

claims touch on legal issues of fundamental, abiding importance to the press and public.  *See*

Josh Gerstein, *FBI raid on Project Veritas founder's home sparks questions about press*

---

[1] The Reporters Committee has prepared these objections in conformance with the length and
formatting requirements set forth in Rule III.D of the Court's Individual Practices in Civil Cases.

*freedom*, Politico (Nov. 13, 2021), https://perma.cc/WR9A-TB3Q.  And, while the Government

has denied any impropriety with respect to the searches—including by arguing, *inter alia*, that no

First Amendment or qualified journalistic privilege attaches to the materials seized by the

Government, *see generally*, Gov't Opp. to Special Master, ECF No. 29—"it is difficult" for the

public "to accept what [it is] prohibited from observing."  *Richmond Newspapers, Inc. v.

Virginia*, 448 U.S. 555, 572 (1980); *see also United States v. Amodeo*, 71 F.3d 1044, 1048 (2d

Cir. 1995) ("*Amodeo II*") ("The presumption of access is based on the need for federal courts,

although independent—indeed, particularly because they are independent—to have a measure of

accountability and for the public to have confidence in the administration of justice.").

     For these reasons, the Reporters Committee, a non-partisan nonprofit organization

dedicated to defending the First Amendment and newsgathering rights of members of the news

media, moved to unseal the showing made by the Government to obtain the November 5, 2021

search warrant and related judicial documents pursuant to the public's strong, presumptive

common law right to inspect warrant materials.  The Order denied that Motion in its entirety, and

the following three portions of it were error and should be set aside (or modified) by this Court.

     First, the Order's conclusion that no portion of the Search Warrant Materials may be

unsealed so long as the Government asserts that its investigation is ongoing is contrary to Second

Circuit law holding that where, as here, the common law presumption of public access is "of the

highest" order, judicial documents "should not remain under seal *absent the most compelling

reasons*," *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 123 (2d Cir. 2006) (emphasis

original), and that any "limitation" on public access should be no "broader than necessary,"

*United States v. All Funds on Deposit at Wells Fargo Bank*, 643 F. Supp. 2d 577, 585 (S.D.N.Y.

2009) ("*All Funds on Deposit*").  *See also In re Newsday, Inc.*, 895 F.2d 74, 80 (2d Cir. 1990)

(warning against "drastic restrictions on the common law right of access" and approvingly noting district court's limited redactions).  The Order's refusal to permit public access to any portion of the Search Warrant Materials erroneously ignores not only the public's strong interest in access to these judicial documents, but also the facts already in the public domain about the Government's investigation.  Simply put, even to the extent the Government has demonstrated compelling reasons for some continued sealing tied to its ongoing investigation, the Order errs in permitting wholesale sealing rather than requiring redaction.  *See*, *e.g.*, *United States v. Cohen*, 366 F. Supp. 3d 612, 623, 633 (S.D.N.Y. 2019) ("*Cohen*") (ordering redacted versions of warrant applications and affidavits immediately unsealed where Government represented "that aspects of its investigation remain ongoing"); *All Funds on Deposit*, 643 F. Supp. 2d 583–86 (holding "the sensitivity of the Government's ongoing investigation" to be among "countervailing factors sufficient to require the redaction of certain portions" of warrant affidavits).

Second, even assuming, *arguendo*, that the Order correctly holds that no portion of the Search Warrant Materials can be immediately unsealed given the status of the Government's investigation, the Order errs in failing to require the Government to immediately move to unseal the Search Warrant Materials at the close of its investigation—whether or not any charges are brought as a result—and in failing to require the Government to inform the Court of (and keep it apprised of) the status of its investigation.  These safeguards are necessary to ensure that the Order's "drastic restrictions on the common law right of access," *In re Newsday*, 895 F.2d at 80, continue no longer than necessary.  *See Lugosch*, 435 F.3d at 126–27 ("emphasiz[ing]" the "importance of immediate access" where the public's presumptive right of access is not overcome).

Third, and finally, the Order erred in deciding application of the First Amendment right

of access to the Search Warrant Materials—an independent basis for access not asserted by, and thus not fully briefed by, the Reporters Committee.  And the Order's conclusion that no First Amendment presumption of access applies is contrary to law and should be rejected.

## RELEVANT BACKGROUND

On November 5, 2021, Magistrate Judge Cave issued a search warrant permitting the Government to seize and extract information from cellular phones found in O'Keefe's home. *See* Exhibit A to Mot., ECF No. 34-1 (redacted copy of warrant).  On or about November 6, 2021, federal authorities executed the warrant.  *See* Michael S. Schmidt, et al., *F.B.I. Searches James O'Keefe's Home in Ashley Biden Diary Theft Inquiry*, N.Y. Times (Nov. 6, 2021), https://perma.cc/5AFL-T3AV.

**O'Keefe's Motions.**  On November 10, O'Keefe, through his counsel, submitted a letter motion requesting that the Court (1) order the Government not to examine the contents of the phones seized pursuant to the warrant and (2) appoint a special master to review the phones' contents.  ECF No. 1.  The Government filed its opposition on November 19.  ECF No. 29.  That same day, O'Keefe moved this Court for an order requiring the Government to produce "all affidavits that it submitted to any court in support of the search warrant it obtained for the search of [his] home," arguing that such discovery was necessary to enable O'Keefe to reply to the Government's opposition to his motion to appoint a special master.  ECF No. 33.  The Government filed its opposition to O'Keefe's motion for production on November 21.  ECF No. 36.

On November 23, the Court denied as moot O'Keefe's motion for production, noting that it identified no source of law in support of its requested relief.  ECF No. 42.  On December 8, the Court granted O'Keefe's motion to appoint a special master.  ECF No. 48.

**The Reporters Committee's Motion.**  On November 15, the Reporters Committee

submitted to this Court and to Judge Cave a letter motion to unseal the Search Warrant Materials in their entirety pursuant to the public's common law right of access.  Mot. 8, ECF No. 34-1.  In the alternative, the Reporters Committee requested that the Search Warrant Materials be released in redacted form—redacted only if and to the extent necessitated by compelling interests—and that the parties inform the Court when any redactions ceased to be necessary.  *Id.*  The Government filed its opposition ("Opposition" or "Opp.") to the Motion on November 21, ECF No. 35, and the Reporters Committee filed its reply on November 23, ECF No. 43-1.  Judge Cave held a telephonic hearing on the Motion on November 29. ECF Nos. 32, 45.

On December 7, Judge Cave issued an opinion and order denying the Reporters Committee's Motion in full.  Order 1, ECF No. 47.  The Order holds that the Search Warrant Materials are judicial documents subject to a strong presumption of public access under the common law.  *Id.* at 5, 9.  Nevertheless, the Order concludes that countervailing law-enforcement and privacy interests overcome the common law presumption, and that those interests require the Search Warrant Materials remain sealed in their entirety.  *Id.* at 16–18.

### STANDARD OF REVIEW

Pursuant to Federal Rule of Criminal Procedure 59(a), a magistrate judge may enter an order conclusively resolving a "non-dispositive" matter—*i.e.*, a matter that "does not dispose of a charge or defense."  *Id.*[2]  Upon a party's timely objection, the district court must modify or set aside those portions of the order that are "contrary to law or clearly erroneous."  *Id.*  When a magistrate judge is faced with a "dispositive" matter, on the other hand—defined in Rule 59 to include "a defendant's motion to dismiss or quash an indictment or information, a motion to suppress evidence, or any matter that may dispose of a charge or defense"—the magistrate judge

---

[2] All references hereafter to the "Federal Rules" or the "Rules" are to the Federal Rules of Criminal Procedure unless otherwise stated.

"must enter on the record a recommendation for disposing of the matter."  Rule 59(b)(1).  Upon a party's timely objection, the district court must review de novo the relevant portions of the magistrate judge's recommended disposition.  Rule 59(b)(2)–(3).

Neither Rule 59 nor the corresponding provision of the U.S. Code, 28 U.S.C. § 636(b)(1), expressly address the standard to be applied to a district court's review of a magistrate judge's denial of a third party's motion to unseal a search warrant application or materials submitted in support thereof.  Nor has the Second Circuit addressed whether such a denial constitutes a non-dispositive or dispositive ruling for the purposes of Rule 59.  *But see Lugosch*, 435 F.3d at 115–119 (in the civil context, reviewing pursuant to the collateral order doctrine a district court order affirming a magistrate judge's order holding in abeyance a motion to intervene and unseal in following the filing of objections pursuant to Federal Rule of Civil Procedure 72, without comment on the standard of review applied by the district court).  "Various district courts" confronted with this "unsettled question" in the analogous civil context "have dealt with [it] differently."  *Dobson v. Milton Hershey Sch.*, 434 F. Supp. 3d 224, 230–31 (M.D. Pa. 2020) (finding "the dispositive-non-dispositive dichotomy" under Federal Rule of Civil Procedure 72 "not helpful" where a party has filed a motion to unseal "which that party alleges is its only merits claim"; summarizing various approaches, but declining to answer the question because "under either standard of review, redacting the material, rather than disclosing or sealing it wholesale, will strike the appropriate balance between the competing interests at stake").

As a practical matter, the Order is unquestionably dispositive.  It finally resolves the Reporters Committee's sole claim: that the common law right of access requires immediate unsealing of the Search Warrant Materials with, at most, only limited redactions necessary to serve any compelling, countervailing interests.  *See Bastidas v. Chappell*, 791 F.3d 1155, 1164

(9th Cir. 2015) ("[T]o determine whether a magistrate judge's ruling denying a motion is

dispositive, we examine whether the denial of the motion effectively disposes of a claim or

defense or precludes the ultimate relief sought."); *see also Lugosch*, 435 F.3d at 117 (explaining

that media intervenors may immediately "appeal from apparently interlocutory orders under the

collateral order doctrine on the grounds that orders denying access are final" as to them).

Accordingly, it should be reviewed by this Court *de novo* under Rule 59(b).  *See, e.g., Hall v.*

*Cty. of Fresno*, No. 1:11-CV-2047, 2016 WL 374550, at *4 (E.D. Cal. Feb. 1, 2016) (holding

that a "Magistrate Judge's order denying [an intervenor's] request to unseal" had "the practical

effect of denying [the intervenor] the ultimate relief he seeks as an intervenor" and thus was

"dispositive and, accordingly, subject to *de novo* review").

   Even if the Court deems the Order non-dispositive, however, it should still grant the relief

sought herein.  The portions of the Order the Reporters Committee objects to are contrary to

law—a phrase that "indicates plenary review as to matters of law."  *Haines v. Liggett Group,*

*Inc.*, 975 F.2d 81, 91 (3d Cir. 1992); *see also Catskill Dev., L.L.C. v. Park Place Ent. Corp.*, 206

F.R.D. 78, 86 (S.D.N.Y. 2002) (explaining that "[a]n order may be deemed contrary to law when

it fails to apply or misapplies relevant" case law) (quotation marks omitted).  And, to the extent

the relevant portions of the Order are predicated on factual findings, they are clearly erroneous.

*Janes v. Berryhill*, 498 F. Supp. 3d 540, 541 (S.D.N.Y. 2020) ("Clear error is present when,

'upon review of the entire record, [the court is] left with the definite and firm conviction that a

mistake has been committed.'") (alteration in original) (quoting *United States v. Snow*, 462 F.3d

55, 72 (2d Cir. 2006)).[3]  "[U]nder either standard of review," the Order's denial of any public

---

[3] Even if deemed non-dispositive, the Order denying the Reporters Committee's Motion should
be subjected to "scrutiny closer to that of '*de novo*' review, with careful attention to the facts of
the case and the applicable case law."  *United States v. W.R. Grace & Co.-Conn.*, 185 F.R.D.

access to the Search Warrant Materials was error.  *Dobson*, 434 F. Supp. 3d at 230–31.

## ARGUMENT

**I.**     **The Order's continued wholesale sealing of the Search Warrant Materials is contrary to law and clearly erroneous.**

The Order correctly holds that the Search Warrant Materials are "judicial documents"

subject to the common law presumption of public access.  Order 5.  The Order also correctly

holds that the common law presumption of access applies with the strongest possible force to the

Search Warrant Materials.  *Id.* at 9.  Yet the Order denies the public *any* access to *any* portion of

the Search Warrant Materials while the Government maintains that its investigation into O'Keefe

and Project Veritas, and their alleged role in the alleged theft of a diary belonging to Ashley

Biden, is ongoing.  *Id.* at 18.  This conclusion is both contrary to law and clearly erroneous.

"It is not, and should not be, an easy matter to deny the public access to documents that

are utilized in judicial proceedings and form part of the basis of judicial decision-making," for

"the public is ordinarily entitled to review such material in order to understand and evaluate the

actions of the courts."  *Newsday LLC*, 730 F.3d at 167 n.15.  Thus, when a party seeks access to

judicial documents, "[t]he Court is required to order disclosure absent compelling reasons to

deny access and even then must employ the least restrictive possible means of doing so."  *All*

*Funds on Deposit*, 643 F. Supp. 2d at 585.  A party resisting disclosure bears the burden of

demonstrating that compelling, countervailing interests overcome the common law presumption

of access.  *See United States v. Amodeo*, 44 F.3d 141, 148 (2d Cir. 1995) ("*Amodeo I*").  As the

---

184, 188 (D.N.J. 1999).  This approach is consistent with Second Circuit precedent applying
"more rigorous" review to decisions sealing judicial documents.  *United States v. Doe*, 63 F.3d
121, 125 (2d Cir. 1995) ("*Doe*"); *see also Newsday LLC v. Cty. of Nassau*, 730 F.3d 156, 163 (2d
Cir. 2013) (in the First Amendment context, explaining that the Court has "traditionally
undertaken an independent review of sealed documents, despite the fact that such a review may
raise factual rather than legal issues").

Second Circuit has held, that burden "increases the more extensive the closure sought[.]"  *Doe*, 63 F.3d at 129; *see also Ayala v. Speckard,* 131 F.3d 62, 70 (2d Cir. 1997) (*en banc*) ("[T]he more extensive . . . the closure requested, the greater must be the gravity of the required interest and the likelihood of risk to that interest.").

When the Government resists disclosure of search warrant materials, courts have generally required it to submit evidence and argument specifically addressing the factual circumstances at hand.  *See, e.g.*, *All Funds on Deposit*, 643 F. Supp. 2d at 585; *Cohen*, 366 F. Supp. 3d at 623–24.  The Government did not do so here.  *See* Opp. 1, n.2 (offering to "provide additional information to the Court on an ex parte basis" if "the Court has specific factual questions").  Instead, it (1) identified generic law enforcement and privacy interests that have justified sealing warrant materials in some cases, and (2) speculated that these same interests "could" justify sealing the Search Warrant Materials.  Opp. 8–9, 10.  The Government did not provide the Magistrate Judge with an affidavit or otherwise set forth facts necessary to support "specific findings" that would justify continued sealing of the Search Warrant Materials.  *See Amodeo I*, 44 F.3d at 148 ("any restrictions on access [to judicial documents] should be supported by specific findings"); *see also Newsday*, 730 F.3d at 167 n.15 (courts must "make specific, rigorous findings" before sealing judicial documents).

On the basis of that threadbare showing, the Order erroneously concludes that the Search Warrant Materials must remain sealed in their entirety.  Order 18.  And, in its discussion of the law enforcement and privacy interests that purportedly justify such wholesale sealing, the Order pays little heed to the wealth of information about the Government's investigation already in the public domain, including information disclosed by the Government itself, *see* Order 10–18—a public record that has only grown richer in detail since the Order was entered.  *See* Adam

Goldman and Michael S. Schmidt, *How Ashley Biden's Diary Made Its Way to Project Veritas*,
N.Y. Times (Dec. 16, 2021), https://perma.cc/XP4A-YFRE ("*Ashley Biden's Diary*").

For example, the Order states, among other things, that law enforcement interests require
continued wholesale sealing of the Search Warrant Materials because unsealing "would disclose
to the subjects the full range of potential criminal violations being investigated . . . ."  Order 12.
But the Government already represented to this Court in public filings that its "investigation is
limited to a narrow course of conduct and the particular offenses listed in the" relevant warrant.
Gov't Opp. to Special Master 11.  Those offenses are public knowledge; they include alleged
violations of 18 U.S.C. §§ 371, 2314, 2315, 2, 3, and 4.  *See* Mot. Exhibit A (redacted copy of
O'Keefe warrant listing offenses under investigation).  Thus, based on the Government's own
representations, alone, the parameters of its "narrow" investigation—including the potential
criminal offenses underlying its theory of the case—are known.  And the Government's public
disclosures do not stop there.  The Government has also represented to this Court, among other
things, that it "has already established the identity of the individuals whom Project Veritas has
characterized as its 'sources' through the evidence gathered in its investigation," Opp. 11; that,
"as O'Keefe and Project Veritas well know," it "approached multiple individuals as part of the
investigation prior to the execution of the search warrants," *id.* at 20; and that "the seized
materials" are "all electronic devices that were in the possession of O'Keefe," *id.*

Nor do the Government's representations to this Court exhaust its disclosures or what is
publicly known about the investigation.  O'Keefe and his counsel have made their own, detailed
public statements regarding the execution of the warrant and the Government's investigation.
*See, e.g.*, Joseph A. Wulfsohn, *Project Veritas' James O'Keefe speaks out after FBI raided
home: 'This is an attack on the First Amendment.'*, Fox News (Nov. 9, 2021),

https://perma.cc/6Z84-HYNC (interview of O'Keefe and his attorney).  And previously non-public details about the Government's search and its investigation have been uncovered and reported by investigative journalists.  *See, e.g.*, Michael S. Schmidt, William K. Rashbaum, Adam Goldman & Ben Protess, *F.B.I. Searches James O'Keefe's Home in Ashley Biden Diary Theft Inquiry*, N.Y. Times (Nov. 6, 2021), https://perma.cc/2CHK-4PJX.  Indeed, just days ago, after entry of the Order, *The New York Times*, relying on "interviews with people involved in or briefed on the investigation[,]" as well as "a review of court filings, police records and other material," published a thoroughgoing account of the investigation's factual underpinnings. Goldman & Schmidt, *Ashley Biden's Diary*, https://perma.cc/XP4A-YFRE (reporting, *inter alia*, how in September 2020 Ashley Biden's diary "had been acquired from [Aimee] Harris and a friend by Project Veritas" and that on November 8, 2020, "a lawyer named Adam Leo Bantner II arrived at the police station" with Ms. Biden's belongings—which, according to a police report, "Mr. Bantner's client had told him . . . [were] 'possibly stolen'").

The extent of information in the public domain—including information placed there by the Government—casts doubt not only on the Government's conclusory assertion that any unsealing of the Search Warrant Materials would compromise the integrity of its investigation, but also on the Order's determination that sealing is necessary to protect the privacy interests of third parties.  Relying principally on the Second Circuit's opinion in *United States v. Haller*, 837 F.2d 84, 88 (2d Cir. 1988), the Order explains that it may properly consider the privacy interests of "third parties under investigation who *may be unaware of the threatened danger to their interests* and may not appear before the district court to protect themselves."  Order 11 (quoting *Haller*, 837 F.2d at 88) (emphasis added).  The Order then concludes that the privacy interests of (1) "a number of individuals employed by or associated with Project Veritas," referenced in the

Search Warrant Materials; and (2) Ms. Biden, whose "personal information" is included in the Search Warrant Materials, are sufficient to overcome the presumption of public access. Order 15, 16. But *Haller* is inapposite. Even if some individuals' privacy interests survive the public disclosures to date, it is inconceivable that either Ms. Biden or individuals employed by or associated with Project Veritas are "unaware of" the present controversy, either through the substantial media coverage the investigation has garnered, or otherwise. *See, e.g.*, Gov't Opp. to Special Master 20 (stating that "the Government approached multiple individuals as part of the investigation prior to the execution of the search warrants"). None have come forward to raise concerns about unsealing the Search Warrant Materials; the only party "resisting disclosure" is the Government. *Amodeo II*, 71 F.3d at 1050 (instructing courts to consider "the privacy interests of *those resisting disclosure*") (emphasis added).

While the extensive information in the public domain sheds light on the Government's investigation—and undermines any purported need for continued sealing of the Search Warrant Materials—it is no substitute for public access to those judicial documents. For instance, there is a legitimate public interest in knowing whether (and how) the Government's warrant application addressed the Privacy Protection Act ("PPA"), 42 U.S.C. § 2000aa *et seq*. In relevant part, the PPA makes it unlawful for a government official "to search for or seize" either "work product" or "documentary" materials "possessed by a person in connection with a purpose to disseminate to the public a newspaper, book, broadcast, or other similar form of public communication . . . ." *Id.* § 2000aa(a), (b). The PPA's limitations are not absolute; they do not apply when "there is probable cause to believe that the person possessing such materials has committed or is committing the criminal offense to which the materials relate[.]" *Id.* § 2000aa(a)(1), (b)(1). But this "suspect exception" is inapplicable when "the offense to which the materials relate consists

of the receipt, possession, communication, or withholding of such materials or the information

contained therein . . . ." *Id.*

The Government has publicly asserted that O'Keefe and Project Veritas fall within the

PPA's "suspect exception."  Opp. 14 n.10.  Yet because the Search Warrant Materials remain

entirely under seal, the press and public have no way of knowing whether the Government made

that argument to Judge Cave, who issued the warrant—as it would have been expected to do had

it viewed the PPA as applicable.[4]  And, by the same token, the public has no way of knowing

whether, in reviewing the Government's application for a search warrant, Judge Cave was

invited to consider the existence of probable cause within the parameters of the PPA, including

whether the "suspect exception" applies to O'Keefe and Project Veritas.

When compelling, countervailing interests overcome the presumption of access to

judicial documents, courts must, wherever possible, require that the documents be released with

narrowly tailored redactions.  *See, e.g.*, *Cohen*, 366 F. Supp. 3d at 633; *All Funds on Deposit*,

643 F. Supp. 2d at 585; *see also In re Sealed Search Warrant*, 2006 WL 3690639, at *5

(N.D.N.Y. Dec. 11, 2006) (ordering wholesale disclosure, despite countervailing interests, where

"redaction would too greatly impair the ability of the public to monitor the judicial process").

Here, however, the Order rejects the feasibility of redaction in a conclusory, four-sentence

paragraph.  Order 18.  Specifically, the Order asserts that the Search Warrant Materials "contain

not only the legal theories of the Investigation, but also details about the information the

Government has obtained and from which sources[,]" and summarily states that "[t]he nature and

extent of any possible redactions to omit this information would 'render[] unintelligible' the

---

[4] *See, e.g.*, Application for a Search Warrant, *United States v. E-Mail Account*, No. 10-mj-00291
(D.D.C. Nov. 7, 2011), ECF No. 20.

contents of the Materials, and could be 'more likely to mislead than to inform the public' . . . ."

*Id.* (third alteration in original) (quoting *In re Sealed Search Warrant Issued June 4 & 5, 2008*, 2008 WL 5667021, at *5)).

This explanation for denying the public *any* access to the Search Warrant Materials falls well short of the "specific, rigorous findings" required by law. *Newsday*, 730 F.3d at 167 n.15. First, there can be no compelling interest—either in law enforcement or privacy—that requires the redaction of information that is already public. And given the sheer extent of information about the Government's investigation that has been revealed publicly, it beggars belief that any *remaining* law enforcement or privacy interests would—even if compelling—require so much redaction as to render the Search Warrant Materials "unintelligible." *See* Order 18. Second, there is no apparent basis for the Order's assertion that releasing a redacted version of the Search Warrant Materials "could" mislead, rather than inform, the public. *Id.* Indeed, it is difficult to understand how providing the public with additional information regarding the Government's showing to obtain the search warrant will prove more misleading than the welter of selective disclosures that currently dominate the public discourse. Common sense dictates the opposite: the more information the public has from the relevant judicial documents *themselves*, the less likely it will be to leap to erroneous conclusions, resort to speculation, or be swayed by misleading characterizations of what the documents *might* contain.

For all these reasons, the Order's conclusion that the Search Warrant Materials must remain sealed in their entirety was clearly erroneous and contrary to law, and should be set aside.

## II.     The Order errs in failing to provide for immediate unsealing when the Government's investigation concludes.

Even assuming, *arguendo*, that the Government met its burden to establish that the strong presumption of public access applicable to the Search Warrant Materials is overcome fully *now*,

the Order errs by failing to place any limit on the duration of sealing.  *See All Funds on Deposit*, 643 F. Supp. 2d at 585 (explaining that any restrictions on public access should be by the "least restrictive possible means").  The Order makes clear, as the Government argued, that any countervailing interests in favor of sealing the Search Warrant Materials are closely tied to the pendency of the Government's investigation.  *See, e.g.*, Order 17 (stating that if the investigation "is closed without any criminal charges being filed, the law enforcement interests and possibly some of the third parties' privacy interests would have diminished to warrant revisiting the continued confidentiality of the Materials").[5]  Yet the Order makes no provision for unsealing of the Search Warrant Materials at that time—an omission that risks their being kept under seal long after any possible justification for restricting public access has dissipated.  At minimum, this Court should modify the Order to require the Government to immediately move to unseal the Search Warrant Materials at the close of its investigation—whether or not any charges are brought—and to keep the Court apprised of the status of its investigation

## III.    The Order's First Amendment analysis is both unnecessary and incorrect.

The Order further errs in holding that the First Amendment does not provide a qualified right of access to the Search Warrant Materials.  Order 19.  As an initial matter, it was error for the Magistrate Judge to rule on that separate constitutional issue, which the Reporters Committee neither asserted as a basis for unsealing nor fully briefed.  *See* Mot. 1 n.1  Judicial prudence strongly disfavors ruling on matters of constitutional law that a movant has neither raised nor argued.  *Cf. United States v. Burke*, 504 U.S. 229, 246 (1992) (Scalia, J., concurring) ("The rule

---

[5] It bears emphasis that the public's common law right to inspect the Search Warrant Materials is distinct from an individual defendant's right to obtain such materials through discovery under Federal Rule of Criminal Procedure 16.  *Cf.* Order 17.  Thus, public access to the Search Warrant Materials is required whether the Government brings charges or not, and whether or not any charged individual obtains the Search Warrant Materials in discovery.

that points not argued will not be considered is more than just a prudential rule of convenience; its observance, at least in the vast majority of cases, distinguishes our adversary system of justice from the inquisitorial one."). Far from a "tacit recognition" that no First Amendment right applies, Order 19, the Reporters Committee moved to unseal the Search Warrant Materials only pursuant to common law because the strong common law presumption of access applicable to the Search Warrant Materials requires all of the relief sought by the Reporters Committee. In such circumstances, a court "need not, and should not, reach the First Amendment issue . . . ." *In re Newsday, Inc.*, 895 F.2d at 78; *cf. Lugosch*, 435 F.3d at 124 ("Having concluded that the common law presumption of access exists in this context, we may not avoid the question of whether a First Amendment presumption of access also exists, *for the Newspapers ask us to impose the higher constitutional burden in requiring disclosure*.") (emphasis added).

In any event, the Order's holding is incorrect as a matter of law. Though the Second Circuit has not addressed the issue, application of its precedent makes clear that the First Amendment guarantees the public a qualified right of access to the Search Warrant Materials, and provides a separate, independent basis for unsealing them.[6]

While the common law presumption applies to *all* judicial documents, the First Amendment guarantees a qualified right to inspect "particular types of judicial documents." *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91 (2d Cir. 2004) ("*Pellegrino*"). In

---

[6] For this reason, the Order's reference to "controlling precedent in this Circuit" purportedly "declining to recognize" a presumptive First Amendment right to inspect "search warrant materials in an ongoing criminal investigation" is puzzling. Order at 19. The Second Circuit has never so ruled. To the contrary, as detailed herein, its case law indicates that to the extent application of the First Amendment right to search warrant materials turns on any temporal consideration, it applies *post-execution*; the status of the Government's investigation, as in the context of the common law right, is a factor to be considered when determining whether the presumption of access is overcome in a given case, not whether it applies in the first instance.

determining whether that constitutional right applies, the Second Circuit looks to the two

"complementary" and "related" considerations—"experience" and "logic"—identified by the

Supreme Court in *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 8 (1986) ("*Press-Enterprise II*"): the extent to which the "documents 'have historically been open to the press and

general public'" and "whether 'public access plays a significant positive role in the functioning

of the particular process in question.'" *Lugosch*, 435 F.3d at 120.  Both support a First

Amendment right of access to the Search Warrant Materials.

As to experience, in considering whether documents have historically been open to the

press and general public, courts in this Circuit "have generally invoked the common law right of

access to judicial documents in support of finding a history of openness." *Pellegrino*, 380 F.3d

at 92.  And here, as the Order correctly held, Order 9, search warrant applications and supporting

affidavits are judicial documents subject to a strong presumption of public access under the

common law regardless of the status of any Government investigation or prosecution.  *See In re

Newsday, Inc.*, 895 F.2d at 79 (recognizing that a search warrant application is "a public

document subject to a common law right of access"); *see also United States v. Sealed Search

Warrants*, 868 F.3d 385, 390 (5th Cir. 2017) (holding "that the qualified common law right of

access can extend to an individual seeking to access pre-indictment search warrant materials").

Indeed, district courts in this Circuit have ordered redacted warrant materials unsealed pursuant

to the common law notwithstanding the existence of an "ongoing" criminal investigation.  *See,

e.g.*, *Cohen*, 366 F. Supp. 3d at 623, 633; *All Funds on Deposit*, 643 F. Supp. 2d 583–86.

Contrary to the incorrect arguments the Government pressed before the Magistrate Judge,

experience thus supports a constitutional presumption of access to search warrant materials *at

least* where, as here, the warrant has been *executed*, regardless of the status of the Government's

investigation.  Second Circuit precedent suggests as much, and the Eighth Circuit so held *In re*

*Search Warrant for Secretarial Area Outside Off. of Gunn*, 855 F.2d 569, 573 (8th Cir. 1988)

("*Gunn*")—a decision repeatedly cited by the Government below yet not addressed in the Order.

*Id.* at 573 (recognizing constitutional right of access to search warrant applications once the

warrant had been executed); *see also In re Newsday, Inc.*, 895 F.2d at 79 (explaining that "the

fact that search warrants are commonly filed under seal *until the warrant is executed* does not

change their status as public documents") (emphasis added); *In re Leopold*, 300 F.Supp.3d 61, 88

(D.D.C. 2018) (noting "'unbroken, uncontradicted history of openness'" of "post-execution

search warrant materials") (internal citation omitted), *rev'd on other grounds*, *In re Leopold to*

*Unseal Certain Elec. Surveillance Applications & Ords.*, 964 F.3d 1121 (D.C. Cir. 2020).  *But*

*see Times Mirror Co. v. United States*, 873 F.2d 1210 (9th Cir. 1989) (finding no common law or

First Amendment presumption of public access pre-indictment).

Simply put, whether the "process of *issuing* search warrants has traditionally not been

conducted in an open fashion" does not speak to the tradition of public access to search warrant

materials *post-execution*.  *Gunn*, 855 F.2d 569, 573 (emphasis added) (explaining that *post-*

*execution* "search warrant applications and receipts are routinely filed with the clerk of court

without seal"); *cf. Franks v. Delaware*, 438 U.S. 154, 169 (1978) (noting that a proceeding for

*issuing* a search warrant "is necessarily ex parte, since the subject of the search cannot be tipped

off to the application for a warrant lest he destroy or remove the evidence").  And the Second

Circuit, in expressly declining to "extend" the Ninth Circuit's holding in *Times Mirror*,

underscored the relevance of the post-execution context when evaluating the common law right

of access to warrant materials.  *In re Newsday, Inc.*, 895 F.2d at 78–79 ("Here, the warrant has

been executed, a plea-bargain agreement has been reached, the government admits that its need

for secrecy is over, and the time has arrived for filing the application with the clerk.  In these circumstances, there is a common law right to inspect what is commanded thus to be filed."); *see also* Fed. R. Crim. P. 41(i) (requiring "the magistrate judge to whom the [executed] warrant is returned" to attach to the warrant "a copy of the return, of the inventory, and of all other related papers" and "deliver them to the clerk in the district where the property was seized").

Logic, too, strongly supports application of the First Amendment presumption of access to the Search Warrant Materials.  Search warrant applications and supporting affidavits filed by the Government "are critical to judicial determinations of whether the Fourth Amendment's probable cause standards are met[,]" *In re Search Warrant*, No. 16- MAG-7063, 2016 WL 7339113, at *2  (S.D.N.Y. Dec. 19, 2016), and "public access to them facilitates public monitoring of the various government agencies and branches," *All Funds on Deposit*, 643 F. Supp. 2d at 583–84.  Indeed, without access to these judicial documents, public oversight not only of a magistrate judge's decision to issue a warrant, but also the Government's grounds for seeking it, would be impossible.  *See Amodeo II,* 71 F.3d at 1048 (public monitoring of the courts "is not possible" without access to the documents "used in the performance of Article III functions"); *FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987) ("[I]n such circumstances, the public's right to know what the executive branch is about coalesces with the concomitant right of the citizenry to appraise the judicial branch."); *see also Smith v. United States Dist. Court for S. Dist.*, 956 F.2d 647, 650 (7th Cir. 1992) (same).

That public access to search warrant materials, generally, plays a "significant positive role" in the functioning of the judicial system, *Press-Enterprise II*, 478 U.S. at 8, is underlined by the particular facts here.  O'Keefe and Project Veritas have asserted impropriety on the part of the Government in *obtaining* the search warrant at issue.  Openness is thus necessary—whether

or not any indictment issues or charges or filed; indeed perhaps even *more so* if no prosecution

results—to give "assurance that established procedures [have been] followed and that deviations

will become known." *Press-Enterprise I*, 464 U.S. at 508. Public access to search warrant

materials thus enhances both the basic fairness of the warrant process—which adjudicates

important Fourth Amendment and, in some cases, First Amendment rights—and is a prerequisite

to "the appearance of fairness so essential to public confidence in the system." *Id*.

For these reasons, the Order's summary rejection, in a single paragraph, of the existence

of a qualified First Amendment right to inspect the Search Warrant Materials should be set aside.

The Order's constitutional ruling was both unnecessary and incorrect as a matter of law.

## CONCLUSION

For the reasons stated herein, the Reporters Committee respectfully requests that the

Court set aside those portions of the Order to which the Reporters Committee objects and order

the Search Warrant Materials immediately unsealed, with redactions if necessary. Alternatively,

at a minimum, the Reporters Committee requests that the Order be modified to require the

Government to move to unseal the Search Warrant Materials immediately upon the conclusion of

its investigation and to keep the Court apprised of the status of its investigation in the interim.

Respectfully submitted,

*/s/ Katie Townsend*
Katie Townsend
THE REPORTERS COMMITTEE FOR
  FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, DC 20005
Phone: 202.795.9300
Facsimile: 202.795.9310
ktownsend@rcfp.org

*Counsel of Record for the Reporters
Committee for Freedom of the Press*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing **OBJECTIONS OF THE REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS TO THE MAGISTRATE JUDGE'S OPINION AND ORDER OF DECEMBER 7, 2021** was filed with the Clerk of Court using the CM/ECF system.

This the 20th day of December, 2021.                    */s/ Katie Townsend*
                                                                           Katie Townsend