

CALLI LAW, LLC
One Flagler Building, Suite 1100
14 Northeast 1st Avenue
Miami, Florida 33132
T. 786.504.0911
F. 786.504.0912
www.calli-law.com

March 24, 2022

**VIA CM/ECF**

Honorable Analisa Torres
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

    Re:    In re Search Warrant dated November 5, 2021, Case No. 21-MC-00813 (AT)

Dear Judge Torres:

    In its arrogance, the government argues in its March 23, 2022 filing that this Court is powerless to stop it from reviewing journalist's privileged communications, and even powerless to require the government to explain the circumstances of its privilege invasions to date. Fortunately, the law does not agree. James O'Keefe and Project Veritas are entitled to the interim relief sought in our March 22, 2022, letter.

    The government's non-denials establish critical facts regarding its infringement on Project Veritas's privileges. The government does not deny in its Opposition (Docket No. 65) to Project Veritas' request for interim relief (Docket No. 64) that prosecutors failed to inform this Court, when opposing the appointment of a special master, about the covert warrants and orders by which the government obtained wholesale access to Project Veritas Microsoft email content and data. This omission was material in view of the fact, effectively conceded by the government in its Opposition, that the investigative team had already accessed and reviewed the very same kind of newsgathering and attorney-client privileged materials that this Court sought to protect through appointment of the Special Master. (Docket No. 65) at 2 ("the Government's review of the materials referenced by the Movants was completed months ago, before the Movants initiated this Part I matter . . ."). And the government continues its strategy of dodging the critical issue, making no mention in its Opposition of the First Amendment or the Department of Justice ("DOJ") regulations establishing procedures for its protection. Contrary to the impression the government seeks to convey in its Opposition, there is no Project Veritas or conservative news exception to the First Amendment or the DOJ regulations.

    The government's opposition relies primarily on the decision in *In re Search Warrants Executed on Apr. 28, 2021*, 21 Misc. 425 (JPO), 2021 WL 2188150, at *2 (S.D.N.Y. May 28,

1

2021), assuring the Court that "the circumstances confronted by Judge Oetken [there] are indistinguishable from those presented here." (Docket No. 65) at 3. That assurance is false.

Judge Oetken was addressing the government's application to appoint a special master to review an attorney's files, and the content of a second attorney's mobile telephone, seized pursuant to search warrants. Most fundamentally, that case is distinguishable because the government—unlike the prosecutors here—was taking steps to promote the protection of valid privileges, not to evade protections and violate privilege.

Although Judge Oetken denied as premature the request of the attorneys for the return or suppression of email seized pursuant to the Stored Communications Act, 18 U.S.C. §§ 2701 *et seq.* "SCA"), that denial was based on a critical fact not present here. Judge Oetken relied on "the Government['s] represent[ation] that it has utilized a 'filter team' — a separate group of attorneys and agents who were not part of the investigative team — to review materials for privilege." 2021 WL 2188150, at *2; *see also id.* ("This Court finds that the filter team process adequately safeguards the attorney-client privilege and the constitutional rights of the search subjects and their clients."). Here, the prosecutors offer no such representation, and their silence on the point all but concedes that no filter team was used. Therefore, whereas Judge Oetken reasoned that the attorneys challenging the seizure "ha[d] not established irreparable harm from the Government's retention of the property in light of the safeguards…to protect attorney-client privilege," *id.* at *3, here Project Veritas has shown irreparable injury given the absence of any such safeguards employed by the government investigators. Moreover, because at issue here is the government's secret warrants to obtain journalists' communications, the threat to the First Amendment and the chilling effect of the government's invasions are of prime importance.

The government also mis-cites *In re the Matter of the Application of the U.S. for a Search Warrant*, 665 F. Supp. 2d 1210 (D. Or. 2009), claiming that it is authority for the proposition that seizures under the Stored Communications Act are immune from challenge under Rule 41(g). (Docket No. 65) at 2. But the holding in that case addressed only the notice provisions of Rule 41 41(f)(1)(C). *See* 665 F. Supp. 2d at 1224. Equally misleading is the government's citation to I*n re Search of Yahoo, Inc.*, No. 07 Misc. 3194 (MB), 2007 WL 1539971, at *6 (D. Ariz. May 21, 2007) for the same proposition. *Id.* That decision merely addressed the singular question of whether a magistrate judge has authority under the SCA and Rule 41 to issue a warrant to be executed outside the judicial district; there was simply no Rule 41(g) relief at issue in that case.

This Court, of course, is empowered to protect privileges, including at the investigative stage. *See e.g. Gravel v. United States*, 408 U.S. 606 (1972) (Supreme Court upheld authority of district court to regulate on-going grand jury investigation to prevent potential violation of Congressional privilege); *In re Grand Jury Investigation of Hugle*, 754 F.2d 863, 865 (9th Cir. 1988) ("Where the prosecutor has a clear purpose to enter a privileged area and it is demonstrated that there is high potential for violation of the privilege, a court is not required to defer relief until after issuance of the indictment.") (citations omitted). It is monumental hubris for the government to argue that Project Veritas and the Court must "wait and see" what the prosecutors do with the protected information they seized before any remedial relief is available.

Finally, the government attempts to take refuge in the circumstance that the "issue of the validity of the search warrants is not before the Court," (Docket No. 65) at 2, and the veil of secrecy that Rule 6(e) prescribes for matters occurring before the grand jury. *Id.* at *passim*. **First**, Project Veritas' motion requested interim relief in order to confirm that government investigators had rummaged through nearly a years' worth of its journalists' privileged communications without employing a filter team. The government's Opposition provides that confirmation, and Project Veritas will be lodging promptly a challenge to ***all*** the warrants and orders obtained and executed by the government unlawfully.

***Second***, the government appears to believe that if it uses the words "grand jury" frequently enough, the Court will automatically accept the premise that an actual grand jury investigation was underway when the prosecutors procured the Microsoft warrants and orders. But if the government seeks to shroud its work in the protections afforded by Rule 6(e) it must do more than invoke the label "grand jury." As explained below, there is substantial reason to believe that no grand jury has been empaneled to investigate Project Veritas or the alleged common law crimes involving the abandoned Ashley Biden diary. The Court can and should require the government to deliver for *in camera* inspection the applications submitted by the prosecutors to obtain the Microsoft warrants and orders to determine whether or not those applications contain any grand jury information. Likewise, the prosecutors should be required to reveal *in camera* whether any of the information seized or otherwise obtained from Microsoft was returned or otherwise submitted to a grand jury.

As noted in its Motion, Project Veritas has substantial reason to believe that this investigation was launched in early November 2020 when Ashely Biden's lawyer complained to the United States Attorney's Office that her client's diary had been obtained by Project Veritas. (Docket No. 64) at 4 n.3. Within weeks the prosecutors began obtaining a series of orders and warrants to seize Project Veritas' communications from Microsoft. *Id.* at 4. Not only does the timeline support the premise that this investigation was launched, and has been conducted by, the prosecutors and FBI independent of any grand jury investigation, but also the Covid-19 precautionary measures in place in 2020 make it unlikely that prosecutors were presenting this matter to a grand jury.

There is also reason to believe that, even after the Covid-19 precautionary measures were eased in late 2021, the prosecutors and FBI acted independent of any grand jury proceedings. On November 4, 2021, the day the government executed search warrants at the residences of Spencer Meads and Eric Cochran, the prosecutors emailed to counsel for Project Veritas a document purporting to be a grand jury subpoena. The document, which appears to be an electronically generated form, does not refer to any particular grand jury then-empaneled by the Chief Judge of this Court. Rather, the document purported to command attendance before "the GRAND JURY" at 40 Foley Square, Room 220, on November 24, 2021. But when a representative of Project Veritas appeared with counsel at that location, on the designated date and time, to lodge Project Veritas' objections to the compelled production of privileged materials, there was ***no grand jury*** sitting and no prosecutors present. *See* November 26, 2021, Paul Calli, Esq. Letter to AUSA Mitzi Steiner (Exhibit A).

3

The grand jury may not be used as "a pawn in a technical game," and the Constitution and federal law tolerate no such result. *See U.S. Dist. Ct. for S. Dist. Of W. Virginia*, 238 F.2d 713, 722 (4th Cir. 1957) *(quoting United States v. Johnson*, 319 U.S. 503, 512 (1943) (Frankfurter, J.)). The government argues when it is convenient for it to do so that the execution of search warrants by the FBI are "independent of" proceedings before the grand jury," *see, e.g.*, *United States v. Eastern Air Lines, Inc.*, 923 F.2d 241 (2d Cir. 1991), but then solemnly intones the words "grand jury" to shroud in secrecy actions undertaken by the prosecutors and FBI agents for their own purposes. In *Eastern Air*, the government represented to the court, in support of the position that a search warrant affidavit should be unsealed, that its contents were "based on the government's investigations independent of the investigations by the grand jury and that the affidavit did not reflect matters that had occurred before the grand jury." *Id* at 244. The Second Circuit reasoned that "this finding is supported by the government's representation that the 13 confidential informants cited in the affidavit made their statements to the investigators voluntarily, have not testified before the grand jury, and have not received grand jury subpoenas." *Id.*

There is reason to believe that is exactly the circumstance here—the prosecutors and FBI agents who applied for the Microsoft orders and warrants merely conveyed to the magistrate judges information obtained from "informants," such as Ashley Biden's lawyer, and that information had not been, and never was, submitted to a grand jury. Absent a showing to the Court that the information, and the Project Veritas materials seized as a result, were matters occurring before the grand jury, the prosecutors may not defeat Project Veritas's request for interim relief on the basis of misleading insinuations about the need to protect "the proper functioning of our grand jury system." (Docket No. 65) at 3.

\*     \*     \*

The government has implicitly conceded that it searched privileged Project Veritas news gathering information without using a filter team, and that prosecutors did not reveal this information to this Court when opposing the appointment of a special master. Its privilege violations are apparent. Project Veritas is entitled to the interim relief requested in its Motion.

                                                Respectfully submitted,

                                                CALLI LAW, LLC

                                                             /s/
                                        By: _____
                                             Paul A. Calli
                                             Charles P. Short
                                        14 NE 1st Avenue
                                        Suite 1100
                                        Miami, FL 33132
                                        T. 786-504-0911
                                        F. 786-504-0912
                                        pcalli@calli-law.com
                                        cshort@calli-law.com

*Admitted Pro Hac Vice*

Harlan Protass
PROTASS LAW PLLC
260 Madison Avenue
22nd Floor
New York, NY 10016
T. 212-455-0335
F. 646-607-0760
hprotass@protasslaw.com

*Counsel for James O'Keefe,
Project Veritas and Project
Veritas Action Fund*

| | |
|---|---|
| Benjamin Bar<br>BARR & KLEIN PLLC<br>444 N. Michigan Avenue<br>Suite 1200<br>Chicago, IL 60611<br>T. 202-595-4671<br>ben@barrklein.com<br><br>*Admitted Pro Hac Vice* | Stephen R. Klein<br>BARR & KLEIN PLLC<br>1629 K Street, NW<br>Suite 300<br>Washington, DC 20006<br>T. 202-804-6676<br>steve@barrklein.com<br><br>*Admitted Pro Hac Vice* |

cc:     All Counsel of Record (via ECF)