UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                  :

In re Search Warrant dated November 5, 2021    :          21 Misc. 813 (AT)

                                  :

                                  :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION FOR RETURN OF PROPERTY


DAMIAN WILLIAMS
United States Attorney
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007


Jacqueline Kelly
Robert B. Sobelman
Mitzi Steiner
Assistant United States Attorneys
- Of Counsel -

## **CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND ................................................................................................... 1

APPLICABLE LAW ................................................................................................................ 4

ARGUMENT ............................................................................................................................ 5

    I.   The Government's Retention of Electronic Devices and Data Is Reasonable Because They Were Obtained Pursuant to Valid Legal Process and the Government's Investigation Is Ongoing ................................................................................................................................. 6

    II.  The Search Warrants Were Supported by Probable Cause, Sufficiently Particularized, and Not Overbroad ........................................................................................................................ 10

        A.  Probable Cause ........................................................................................................... 11

        B.  Particularity and Breadth ........................................................................................... 13

    III. The Government's Execution of the Search Warrants Was Reasonable ......................... 17

    IV. The Movants' Arguments Regarding Privilege Issues Are Pending Before the Special Master ................................................................................................................................... 20

    V.  The PPA and DOJ Regulations and Guidelines Provide No Support For The Requested Relief ..................................................................................................................................... 22

CONCLUSION ....................................................................................................................... 23

# TABLE OF AUTHORITIES

## Cases

*Acosta v. United States*, No. 12 Misc. 793 (ARR), 2013 WL 2444172 (E.D.N.Y. June 5, 2013) .......................................................................................................................... ...8

*Adeleke v. United States*, 355 F.3d 144 (2d Cir. 2004)..................................................... 4

*De Almeida v. United States*, 459 F.3d 377 (2d Cir. 2006) ............................................... 4

*Doane v. United States*, No. 08 Mag. 17 (HBP), 2009 WL 1619642 (S.D.N.Y. June 5, 2009)... 10

*Doe v. DiGenova*, 642 F. Supp. 624 (D.D.C. 1986) ....................................................... 23

*Ferreira v. United States*, 354 F. Supp. 2d 406 (S.D.N.Y. 2005)..................................... 5

*Illinois v. Gates*, 462 U.S. 213 (1983) .............................................................. 11, 12

*In re 22 Blackwatch Trail Apt. No. 8*, No. 06 Misc. 6009 (MAT), 2006 WL 2443674 (W.D.N.Y. Aug. 22, 2006) ................................................................................. 13

*In re Search of Office of Tylman*, 245 F.3d 978 (7th Cir. 2001)....................................... 4

*In re Search of Yahoo, Inc.*, No. 07 Misc. 3194 (MB), 2007 WL 1539971 (D. Ariz. May 21, 2007) ...................................................................................... 7

*In re Search Warrant dated Nov. 5, 2021*, No. 21 Misc. 813 (AT), 2021 WL 5845146 (S.D.N.Y. Dec. 8, 2021) .............................................................. 2, 10, 12

*In re Search Warrant dated Nov. 5, 2021*, No. 21 Misc. 813 (AT) (SLC), 2021 WL 5830728 (S.D.N.Y. Dec. 7, 2021) ................................................................ 12

*In re Search Warrant dated Nov. 5, 2021*, No. 21 Misc. 813 (AT), 2022 WL 500919 (S.D.N.Y. Feb. 18, 2022) .............................................................. 10

*In re Search Warrant for Premises of Intertex Apparel Ltd.*, No. 05 Mag. 1744 (DFE), 2006 WL 250522 (S.D.N.Y. Feb. 1, 2006)............................................. 17

*In re Search Warrants Executed on Apr. 28, 2021*, 21 Misc. 425 (JPO), 2021 WL 2188150 (S.D.N.Y. May 28, 2021)..................................................... 6, 8, 10, 22

*In re the Matter of the Application of the U.S. for a Search Warrant*, 665 F. Supp. 2d 1210 (D. Or. 2009)................................................................... 7

*In the Matter of Search of Kitty's East*, 905 F.2d 1367 (10th Cir. 1990) ....................................... 4

*Jackson v. United States*, 526 F.3d 394 (8th Cir. 2008) .......................................................... 5

*Kee v. United States*, No. 01 Civ. 1657 (DLC), 2001 WL 897175 (S.D.N.Y. Aug. 9, 2001) ........ 9

*Lavin v. United States*, 299 F.3d 123 (2d Cir. 2002) ......................................................... 5

*Lawal v. U.S. Drug Enforcement Admin.*, No. 90 Civ. 3680 (RR), 1991 WL 158981 (E.D.N.Y. July 24, 1991) ................................................................... 4

*Mora v. United States*, 955 F.2d 156 (2d Cir. 1992) ......................................................... 4

iii

*N.Y. Times Co. v. Gonzales*, 382 F. Supp. 2d 457 (S.D.N.Y. 2005) ............................................. 23

*Podlog v. United States*, No. S2 92 Cr. 374 (JFK), 1996 WL 403029 (S.D.N.Y. July 18, 1996).. 9

*Ramsden v. United States*, 2 F.3d 322 (9th Cir. 1993) ............................................................... 4, 5

*United States v. $16,072.00 in U.S. Currency*, 374 F. Supp. 3d 205 (N.D.N.Y. 2019) ................. 8

*United States v. Almaleh*, No. S1 17 Cr. 25 (ER), 2022 WL 602069 (S.D.N.Y. Feb. 28, 2022)…
................................................................................................................................................ 19

*United States v. Amodeo*, 71 F.3d 1044 (2d Cir. 1995) ............................................................... 12

*United States v. Chambers*, 192 F.3d 374 (3d Cir. 1999) .............................................................. 5

*United States v. Chow*, No. 01 Cr. 291 (FB), 2001 WL 1347236 (E.D.N.Y. Nov. 2, 2001) ........ 19

*United States v. Cohan*, 628 F. Supp. 2d 355 (E.D.N.Y. 2009) .................................................... 15

*United States v. Elkorany*, No. S1 20 Cr. 437 (NRB), 2021 WL 3668086 (S.D.N.Y. Aug. 17,
2021) ........................................................................................................................................ 16

*United States v. Ferguson*, 758 F.2d 843 (2d Cir. 1985) ............................................................. 13

*United States v. Galpin*, 720 F.3d 436 (2d Cir. 2013) ................................................................. 14

*United States v. Garcon*, 406 F. App'x 366 (11th Cir. 2010) ........................................................ 5

*United States v. Huggins*, No. 13 Cr. 155 (SHS) (SN), 2013 WL 1728269 (S.D.N.Y. Mar. 22,
2013) ........................................................................................................................................ 10

*United States v. Johnson*, No. 19 Cr. 140 (GWC), 2021 WL 2667168 (D. Vt. June 29, 2021) ... 16

*United States v. King*, No. 21 Cr. 255 (NSR), 2022 WL 875383 (S.D.N.Y. Mar. 24, 2022) ......... 8

*United States v. Kolfage*, No. 20 Cr. 412 (AT), 2020 WL 7342796 (S.D.N.Y. Dec. 14, 2020)…..
.............................................................................................................................................. 4, 12

*United States v. Levy*, No. S5 11 Cr. 62 (PAC), 2013 WL 664712 (S.D.N.Y. Feb. 25, 2013) .... 15

*United States v. Lloyd*, No. 98 Cr. 529, 1998 WL 846822 (E.D.N.Y. Oct. 5, 1998) .................... 19

*United States v. Lustyik*, 57 F. Supp. 3d 213 (S.D.N.Y. 2014) .................................................... 17

*United States v. Martin*, 426 F.3d 68 (2d Cir. 2005) .................................................................. 11

*United States v. Pierre*, 484 F.3d 75 (1st Cir. 2007) .................................................................... 5

*United States v. Piervinanzi*, 23 F.3d 670 (2d Cir. 1994) ........................................................... 23

*United States v. Pugh*, No 15 Cr. 116, 2015 WL 9450598 (NGG) (E.D.N.Y. Dec. 21, 2015) .... 14

*United States v. Purcell*, 967 F.3d 159 (2d Cir. 2020) ........................................................... 14, 18

*United States v. Ray*, 541 F. Supp. 3d 355 (S.D.N.Y. 2021) .......................................... 16, 18, 19

*United States v. Riley*, 906 F.2d 841 (2d Cir. 1990) ............................................................. 14, 17

*United States v. Rosario*, No. 19 Cr. 807 (LAP), 2021 WL 5647879 (S.D.N.Y. Dec. 1, 2021) .. 15

*United States v. Seabrook*, No. 16 Cr. 467 (AKH), 2021 WL 965772 (S.D.N.Y. Mar. 15, 2021). 5

*United States v. Smith*, 9 F.3d 1007 (2d Cir. 1993) ...................................................................... 12

*United States v. Soza*, 599 F. App'x 69 (4th Cir. 2015) ................................................................ 5

*United States v. Ulbricht*, 858 F.3d 71 (2d Cir. 2017)................................................... 13, 14, 16

*United States v. Ulbricht*, No. 14 Cr. 68 (KBF), 2014 WL 5090039 (S.D.N.Y. Oct. 10, 2014).. 16

*United States v. Van Cauwenberghe*, 934 F.2d 1048 (9th Cir. 1991)........................................... 5

*United States v. Ventresca*, 380 U.S. 102 (1965)....................................................................... 12

*United States v. Wagner*, 989 F.2d 69 (2d Cir. 1993).................................................................. 11

*United States v. Williams*, 181 F. Supp. 2d 267 (S.D.N.Y. 2001) ............................................... 9

*United States v. Xiaojie Shun*,  No. 16 Cr. 75 (RJA) (MJR), 2019 WL 4396237 (W.D.N.Y. Apr. 10, 2019)............................................................................................................................ 6

*US VC Partners GP LLC v. U.S. Dep't of Treasury*, No. 19 Civ. 6139 (GBD), 2020 WL 5578503 (S.D.N.Y. Sept. 17, 2020)............................................................................................................ 5

*Walczyk v. Rio*, 496 F.3d 139 (2d Cir. 2007)............................................................................ 12

**Statutes**

18 U.S.C. § 2703 ........................................................................................................................ 3, 7

42 U.S.C. § 2000aa *et seq.*.................................................................................................... 22, 23

**Other Authorities**

JM § 1-1.100 ................................................................................................................................. 23

**Rules**

Fed. R. Crim. P. 41(e)(2)(B) ....................................................................................................... 18

Fed. R. Crim. P. 41(f)(1)(B) ........................................................................................................ 18

Fed. R. Crim. P. 41(g).................................................................................................................... 4

Fed. R. Crim. P. 41(g), Advisory Committee Note .............................................................. 10, 17

**Treatises**

6 Wayne R. LaFave, *Search & Seizure* § 11.2(h) (6th ed.) ......................................................... 7

**Regulations**

28 C.F.R. § 50.10 .................................................................................................................. 22, 23

## PRELIMINARY STATEMENT

Project Veritas, James E. O'Keefe, III, Eric Cochran, and Spencer Meads (the "Movants") fail to meet their burden to establish that the Government's retention of certain electronic devices and other email account data, all of which was obtained pursuant to valid legal process, is unreasonable.  To the contrary, the electronic devices retained by the Government were obtained pursuant to search warrants issued by a Magistrate Judge after a finding of probable cause, and are currently in the final stages of the Special Master's review process.  Similarly, the contents of email accounts were also obtained pursuant to search warrants issued by Magistrate Judges after findings of probable cause, and the Government's review of materials obtained pursuant to those warrants was completed months ago.  There can be no dispute that the Government's investigation is ongoing, that these materials include evidence relevant to that investigation, and that, if a prosecution results from the investigation, these materials will have evidentiary value.  Consisting of equal parts rhetoric, speculation, and inaccurate factual assertions, the motion is little more than a misguided attempt to end-run the Special Master process that this Court put in place and prematurely litigate the merits of the Government's prior investigative steps.  It should be denied.

## FACTUAL BACKGROUND

On November 4, 2021, the Federal Bureau of Investigation ("FBI") executed search warrants at Meads's and Cochran's residences for certain electronic devices.  (*See* Mot. Exs. B & C.[1])  On November 6, 2021, the FBI executed a similar search warrant at O'Keefe's residence for cellphones.  (*See* Mot. Ex. E.)  The warrants were supported by detailed affidavits, and authorized by a federal magistrate judge, who found probable cause to believe that the subject premises and

---

[1] "Mot." refers to the Movant's motion for return of property, filed on March 30, 2022 (Dkt. No. 70).

the devices therein contained evidence of federal crimes, including conspiracy to transport stolen property across state lines and interstate transportation of stolen property.  (Mot. Ex. B at 1, 8; Mot. Ex. C at 1; Mot. Ex. E at 1.)

On December 8, 2021, this Court appointed a Special Master to "oversee the review of the materials" seized pursuant to the aforementioned search warrants.  *In re Search Warrant dated Nov. 5, 2021*, No. 21 Misc. 813 (AT), 2021 WL 5845146, at *2 (S.D.N.Y. Dec. 8, 2021).  For the past five months, that process has been carried out consistent with this Court's mandate and pursuant to the Special Master's instructions.

At present, the FBI has custody of two electronic devices obtained from O'Keefe's residence, five electronic devices obtained from Cochran's residence, and four electronic devices obtained from Meads's residence.  Each of these devices either has been found by the Special Master to contain data responsive to the search warrants (*see* Special Master Report 2, Dkt. No. 61), is currently under review by the Special Master, or has not yet been able to be accessed due to technical impediments (*see* Mot. Ex. F).  Consistent with the Government's prior representations (Gov't Mem. 19 n.4, Dkt. No. 29), the Government has returned the devices that have been determined by the FBI not to contain any data within the time period of the search warrants or by the Special Master not to contain any data responsive to the search warrants.

The Special Master's responsiveness review has largely been completed, with the contents of only one device currently under review.  The parties have submitted briefs outlining their positions regarding the law and principles that should be applied to the Movants' objections to the

release of the items that the Special Master has deemed responsive to the search warrants to the investigative team.[2]

With respect to the subscriber, non-content, and content information for email accounts referenced by the Movants, which were obtained pursuant to a grand jury subpoena and orders and warrants issued by federal magistrate judges pursuant to the Stored Communications Act (the "SCA"), 18 U.S.C. § 2703, the Government's review of those materials was completed months ago, before the Movants initiated this Part I matter in November 2021.

The electronic devices and email account data at issue were obtained by the Government as part of an ongoing grand jury investigation (the "Investigation") into the theft and interstate transportation of certain property stolen from an individual (the "Victim").  As the Investigation is ongoing and no criminal charges have yet been filed, the underlying factual details remain non-public.  Accordingly, the Government is constrained in this forum from responding to the Movants' numerous allegations, which are in any event not material to the issue before the Court, that is, whether the electronic devices subject to the Special Master's review and other electronic data obtained pursuant to duly authorized legal process should be returned before the completion of the Special Master's review process and in the midst of the Government's ongoing grand jury investigation.[3]

---

[2] The Movants submitted their briefs to the Special Master on April 1, 2022, the Government submitted its response on April 13, 2022, and the Movants submitted a reply on April 20, 2022.

[3] The motion contains a number of unsworn assertions regarding the Investigation and the underlying facts, many of which are false or inaccurate, and for which no evidence is provided. To the extent the Court has specific factual questions, the Government is prepared to provide additional information to the Court on an *ex parte* basis, including the affidavits that formed the basis for the search warrants referenced in the motion.

**APPLICABLE LAW**

"'Rule 41(g) permits a person aggrieved by the government's unlawful seizure or deprivation of property to move for specific relief: the property's return.'"   *United States v. Kolfage*, No. 20 Cr. 412 (AT), 2020 WL 7342796, at *9 (S.D.N.Y. Dec. 14, 2020) (quoting *Adeleke v. United States*, 355 F.3d 144, 149 (2d Cir. 2004)).[4]   "'Where no criminal proceedings against the movant are pending or have transpired, a motion for the return of property is treated as a civil equitable proceeding.'"   *Id*. (quoting *Mora v. United States*, 955 F.2d 156, 158 (2d Cir. 1992)).   "Rule 41(g) is an equitable remedy 'available only when there is no adequate remedy at law and the equities favor the exercise of jurisdiction,' and, therefore, 'jurisdiction under Rule 41 is to be exercised with great restraint and caution.'"   *Id*. (quoting *De Almeida v. United States*, 459 F.3d 377, 382 (2d Cir. 2006)).

"[R]easonableness under all of the circumstances must be the test when a person seeks to obtain the return of property."   Fed. R. Crim. P. 41(g), Advisory Committee Note; *accord In the Matter of Search of Kitty's East*, 905 F.2d 1367, 1375 (10th Cir. 1990) (adopting Advisory Committee Note); *Ramsden v. United States*, 2 F.3d 322, 326 (9th Cir. 1993) (same); *Lawal v. U.S. Drug Enforcement Admin.*, No. 90 Civ. 3680 (RR), 1991 WL 158981, at *1 (E.D.N.Y. July 24, 1991) ("The standard of review is one of reasonableness in light of all the circumstances.").   "If the United States has a need for the property in an investigation or prosecution, its retention of the property generally is reasonable."   Fed. R. Crim. P. 41(g), Advisory Committee Note; *accord In re Search of Office of Tylman*, 245 F.3d 978, 980 (7th Cir. 2001) (adopting Advisory Committee Note); *In the Matter of Search of Kitty's East*, 905 F.2d at 1375 (same); *see also Lavin v. United*

---

[4] Unless otherwise noted, all internal quotation marks, citations, and alterations have been omitted.

*States*, 299 F.3d 123, 127-28 (2d Cir. 2002) ("the Government may retain the property if it has a legitimate reason for doing so"); *Ramsden*, 2 F.3d at 326 ("The United States' retention of the property generally is reasonable if it has a need for the property in an investigation or prosecution."). Accordingly, a motion for return of property "may be denied if . . . the government's need for the property as evidence continues." *United States v. Van Cauwenberghe*, 934 F.2d 1048, 1061 (9th Cir. 1991); *accord United States v. Soza*, 599 F. App'x 69, 70 (4th Cir. 2015) (same); *United States v. Garcon*, 406 F. App'x 366, 369 (11th Cir. 2010) (same); *Jackson v. United States*, 526 F.3d 394, 396 (8th Cir. 2008) (same); *United States v. Pierre*, 484 F.3d 75, 87 (1st Cir. 2007) (same); *United States v. Chambers*, 192 F.3d 374, 377 (3d Cir. 1999) (same); *see also Ferreira v. United States*, 354 F. Supp. 2d 406, 409 (S.D.N.Y. 2005).

The Movants bear the burden of establishing entitlement to relief under Rule 41(g). *See United States v. Seabrook*, No. 16 Cr. 467 (AKH), 2021 WL 965772, at *2 (S.D.N.Y. Mar. 15, 2021) ("Rule 41(g) places the burden of proof on [the movant]"); *US VC Partners GP LLC v. U.S. Dep't of Treasury*, No. 19 Civ. 6139 (GBD), 2020 WL 5578503, at *4 (S.D.N.Y. Sept. 17, 2020) ("Plaintiffs . . . carry the burden of demonstrating that they are entitled to relief pursuant to Rule 41(g).").

## **ARGUMENT**

The Movants raise a number of arguments and legal issues in their submissions. The Court need not address or decide any of them except for the sole question before the Court: whether the Movants have met their burden to show that the Government's retention of 11 electronic devices and certain email account data, all of which was obtained pursuant to duly-authorized legal process in the course of an ongoing grand jury investigation, is unreasonable. The Movants have not done so. As explained below, there is nothing about the circumstances presented that render the

Government's retention of this property unreasonable nor that could possibly justify the extraordinary relief sought.

I.    **The Government's Retention of Electronic Devices and Data Is Reasonable Because They Were Obtained Pursuant to Valid Legal Process and the Government's Investigation Is Ongoing**

The Government's retention of the electronic devices and data at issue is reasonable because they were obtained pursuant to valid legal process and the Government's grand jury investigation remains ongoing.

*First*, there is no dispute that the 11 electronic devices obtained from O'Keefe, Cochran, and Meads and the content information for the email accounts referenced by the Movants were all obtained pursuant to judicially-authorized search warrants.  (*See* Mot. Exs. B, C, & E; Dkt. No. 65-1 at 9-25, 29-32.)  The Movants' unsupported accusations and one-sided, incomplete, and inaccurate characterizations of the Government's investigation offer no legitimate basis to call into question the validity of these search warrants, which were issued after magistrate judges determined that there was probable cause to believe that each of the electronic devices and email accounts contained evidence of, fruits of, or were instrumentalities of a federal crime.  The issuance of valid warrants alone justifies denial of the motion with respect to those devices and email account data.  *See, e.g.*, *In re Search Warrants Executed on Apr. 28, 2021*, 21 Misc. 425 (JPO), 2021 WL 2188150, at *3 (S.D.N.Y. May 28, 2021) (holding that there is "nothing improper or unlawful" about the Government's retention of copies of the materials obtained "pursuant to search warrants, based on probable cause," given that the Government's "investigation is ongoing" and the Government retains a "legitimate interest" in retaining any such property); *United States v. Xiaojie Shun*,  No. 16 Cr. 75 (RJA) (MJR), 2019 WL 4396237, at *15 (W.D.N.Y. Apr. 10, 2019) (recommending denial of motion for return of property because "[t]he property was seized

6

pursuant to search warrants and there has been no showing that the warrants were invalid or that the searches were illegal"), *report and recommendation adopted by* 2019 WL 4394242 (W.D.N.Y. Sept. 13, 2019); *see also* 6 Wayne R. LaFave, *Search & Seizure* § 11.2(h) (6th ed.) (the "anomalous" Rule 41(g) "jurisdiction is not likely to be exercised where the search in issue was conducted pursuant to a warrant issued in the normal manner").[5]

*Second*, the subscriber and non-content email account information referenced by the Movants was obtained pursuant to a grand jury subpoena and orders issued by magistrate judges pursuant to 18 U.S.C. § 2703(d), after findings that the Government had established specific and articulable facts showing that there are reasonable grounds to believe that the non-content information was relevant and material to the Government's investigation.  (*See* Dkt. No. 65-1 at 5-8, 26-28.)  As with the search warrants, the Movants have provided no legitimate basis to question the validity of the grand jury subpoena for subscriber information or the Court-issued orders for non-content information.  In addition, with respect to the grand jury subpoena, the Government has previously corrected the Movants' baseless assertion that this matter is not, or at some point was not, a valid grand jury investigation.  (Gov't Ltr. 2, Dkt. No. 68.)

---

[5] In any event, Rule 41(g), by its terms, does not apply either to subpoenaed records or data obtained pursuant to the SCA. *See, e.g.*, *In re the Matter of the Application of the U.S. for a Search Warrant*, 665 F. Supp. 2d 1210, 1217 (D. Or. 2009) (agreeing that the substantive provisions of Rule 41, including motions for return of property under Rule 41(g), are not adopted by § 2703(a)); *In re Search of Yahoo, Inc.*, No. 07 Misc. 3194 (MB), 2007 WL 1539971, at *6 (D. Ariz. May 21, 2007) (concluding that because "Rule 41(g) and (h) discuss 'Motion[s] to Return Property' and 'Motion[s] to Suppress'" they "do not contain any procedures relevant to issuing a search warrant" and therefore "do not apply to the issuance of a warrant under § 2703(a)").  Although Project Veritas and O'Keefe seek to limit the import of these cases, the reasoning of both cases is supported by the plain text and structure of both Rule 41 and the SCA, and the Movants have provided no contrary authority to support their position.  (*See* Project Veritas Ltr. 2, Dkt. No. 66.)

*Third*, the Government's retention of the items and materials at issue is reasonable because its investigation remains ongoing and the return of the property sought would impair the Government's investigation.  The electronic devices at issue either have been determined by the Special Master to contain responsive items, are currently under review by the Special Master, or have not yet been reviewed by the Special Master due to technical impediments.  Similarly, the email account content has been reviewed by the Government and has been determined to contain material responsive to the search warrants.  *See, e.g.*, *In re Search Warrants Executed on Apr. 28, 2021*, 2021 WL 2188150, at *2 (denying pre-indictment motion to "return" to movants the "results from earlier search warrants of [movants'] iCloud and email accounts" because, among other reasons, "the review of the [earlier] warrant returns is now largely complete").  These items and materials are anticipated to have evidentiary value if a prosecution arises from the Government's ongoing grand jury investigation.  In light of the character of these items and materials and the status of the Government's investigation, retention of the items and materials is reasonable at least until the Government's investigation is completed or, in the event a prosecution arises from the investigation, until such time that the criminal case reaches its conclusion.  *See, e.g.*, *United States v. King*, No. 21 Cr. 255 (NSR), 2022 WL 875383, at *5 (S.D.N.Y. Mar. 24, 2022) (denying motion for return of property because, among other reasons, the movant "has not offered any factual basis upon which it could be determined that the Government no longer requires the possession of the [property]"); *United States v. $16,072.00 in U.S. Currency*, 374 F. Supp. 3d 205, 2019 (N.D.N.Y. 2019) (describing "generally-accepted rule that a district court cannot order the return of property on a Fed. R. Crim. P. 41(g) motion when the government has a continuing need for the property as evidence" (citing cases)); *Acosta v. United States*, No. 12 Misc. 793 (ARR), 2013 WL 2444172, at *3 (E.D.N.Y. June 5, 2013) (denying  motion for return of property because "the government

has made a reasonable representation that these items may serve as evidence" in a pending prosecution); *United States v. Williams*, 181 F. Supp. 2d 267, 301 (S.D.N.Y. 2001) (denying motion for return of property because "the Government does intend to use this evidence at trial"); *Kee v. United States*, No. 01 Civ. 1657 (DLC), 2001 WL 897175, at *1 (S.D.N.Y. Aug. 9, 2001) (denying motion for return of property because "[t]he Government represents that all the items requested . . . have evidentiary value"); *Podlog v. United States*, No. S2 92 Cr. 374 (JFK), 1996 WL 403029, at *1 (S.D.N.Y. July 18, 1996) ("Although a district court has general supervisory powers over federal law enforcement officials within the district pursuant to which it can order the return of property . . . it should generally decline to exercise these powers in a manner that could impede law enforcement officials in conducting their investigations.").[6]

*Fourth*, the reasonableness of the Government's retention of the 11 electronic devices that are subject to the Special Master's review is supported by this Court's establishment of the review process itself.  Since this Court's appointment of the Special Master, the Government has diligently complied with the process established by the Court and carried out by the Special Master, including directing the FBI to forensically image the devices, providing copies of the devices to the Special Master, and retaining only the devices that the Special Master has found to contain data responsive to the search warrants, are currently under review by the Special Master, or have not yet been able to be accessed due to technical impediments.  Returning the devices on which responsive data has been found by the Special Master or that are still pending the Special Master's review to the

---

[6] The Court should deny Project Veritas's request that the Court permit it to "file written objections" (Project Veritas Ltr. 1, Dkt. No. 67) to legal process issued on an *ex parte* basis by Magistrate Judges in the course of the ongoing grand jury investigation.  The request has no legal basis, as the orders to which Project Veritas refers were issued, served, and executed many months ago and Project Veritas is not a party to the proceedings in which they were issued (as would be required for Rule 59 of the Federal Rules of Criminal Procedure to apply).

subjects of an ongoing grand jury investigation would be inconsistent with the procedures

established by this Court, contrary to the Government's law enforcement prerogative, and against

the interests of justice.  *See, e.g.*, *United States v. Huggins*, No. 13 Cr. 155 (SHS) (SN), 2013 WL

1728269, at *6 (S.D.N.Y. Mar. 22, 2013) (recommending denial of Rule 41(g) motion because,

among other reasons, it would be "highly improper" and "potentially lead to the loss of evidence"

to return property to a movant who "might be involved in the alleged criminal improprieties"),

*report and recommendation adopted by* 2013 WL 1736466 (S.D.N.Y. Apr. 11, 2013).[7]

## II.     The Search Warrants Were Supported by Probable Cause, Sufficiently Particularized, and Not Overbroad

The Court should decline the Movants' latest invitation to reconsider its prior rulings that

it "shall not consider arguments related to the validity of the search warrants."  *In re Search*

*Warrant dated Nov. 5, 2021*, 2021 WL 5845146, at *1; *see also In re Search Warrant dated Nov. 5,*

*2021*, No. 21 Misc. 813 (AT), 2022 WL 500919, at *1 (S.D.N.Y. Feb. 18, 2022) ("as the Court

has already made clear, the issue of the validity of the search warrants is not before the Court").

These rulings were manifestly correct because duly authorized legal process is not subject to

challenge by the Movants in this pre-indictment phase of the investigation.  *See In re Search*

*Warrants Executed on Apr. 28, 2021*, 2021 WL 2188150, at *2 ("any pre-indictment suppression

motion would be premature at this juncture"); *Doane v. United States*, No. 08 Mag. 17 (HBP),

2009 WL 1619642, at *9 (S.D.N.Y. June 5, 2009) (petitioner's motion to suppress was not "ripe

for adjudication" because "[n]o criminal charges have been brought").  Indeed, as explained above,

---

[7] To the extent the devices are determined to be instrumentalities of a crime after the responsive items are released by the Special Master to the Government, Rule 41(g) would not apply.  *See* Fed. R. Crim. P. 41(g), Advisory Committee Note (describing Rule 41(g) as "provid[ing] a process" "for return of the property, *excluding contraband or instrumentalities of crime*" (emphasis added)).

the Government's retention of the materials at issue is plainly reasonable based on the facial validity of the legal process used to obtain those materials and the ongoing nature of the grand jury investigation, and the motion should be denied on that basis alone.  However, to the extent it may bear on the Court's disposition of the motion, the search warrants at issue were each supported by probable cause and were sufficiently particularized and appropriate in their breadth.

### A.  Probable Cause

The search warrants at issue were each issued by federal magistrate judges after a finding of probable cause, which is afforded significant deference.  "A reviewing court must accord substantial deference to the finding of an issuing judicial officer that probable cause exists. . . . The reviewing court's determination should be limited to whether the issuing judicial officer had a substantial basis for the finding of probable cause." *United States v. Wagner*, 989 F.2d 69, 72 (2d Cir. 1993) (reversing suppression order).

Moreover, the determination that probable cause exists is a relatively low threshold.  "A judge's probable-cause determination is not overly strict.  Presented with a warrant application, the judge must 'simply . . . make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Martin*, 426 F.3d 68, 74 (2d Cir. 2005) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).  "The quanta of proof necessary to establish probable cause is 'only the probability, and not a prima facie showing, of criminal activity.'" *Wagner*, 989 F.2d at 72 (quoting *Gates*, 462 U.S. at 235).  Moreover, "[p]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Martin*, 426 F.3d at 74 (quoting

11

*Gates*, 462 U.S. at 232).  Thus, "[i]n assessing probabilities, a judicial officer must look to 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'"  *Walczyk v. Rio*, 496 F.3d 139, 156 (2d Cir. 2007) (quoting *Gates*, 462 U.S. at 231).  "[T]he resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.'"  *United States v. Smith*, 9 F.3d 1007, 1012 (2d Cir. 1993) (quoting *United States v. Ventresca*, 380 U.S. 102, 109 (1965)).

As explained above, in light of the non-public information contained in the affidavits submitted in support of the search warrants at issue, those affidavits' maintenance under seal, and the limitations on the Government's ability to discuss the facts and evidence gathered in the course of an ongoing grand jury investigation in this forum, the Government respectfully requests that, to the extent the Court requires information about the basis for the magistrate judges' probable cause determinations, the Government be permitted to provide the affidavits to the Court on an *ex parte* basis.[8]  The Government is confident that, in the event the Court finds it necessary to review the affidavits, it will find that the magistrate judges had a substantial basis for their probable cause determinations.  *See, e.g.*, *In re 22 Blackwatch Trail Apt. No. 8*, No. 06 Misc. 6009 (MAT), 2006

---

[8] The Movants request that the Court conduct an "inquiry into the information submitted to, and withheld from, the magistrate judges who issued the warrants and orders." (Mot. 43).  To the extent the Movants are asking that this Court review the affidavits, the Government has no objection. But to the extent that the Movants are asking that they also be permitted to review the sealed affidavits, which set forth in detail evidence gathered during the grand jury investigation, that request should be denied, consistent with this Court's prior ruling (Dkt. No. 42), and there has been no change of circumstances that support their renewed request and they offer no legal authority justifying such extraordinary relief.  *See In re Search Warrant dated Nov. 5, 2021*, No. 21 Misc. 813 (AT) (SLC), 2021 WL 5830728, at *5-6 (S.D.N.Y. Dec. 7, 2021); *In re Search Warrant dated Nov. 5, 2021*, 2021 WL 5845146, at *1 n.1; *see also United States v. Amodeo*, 71 F.3d 1044, 1050-51 (2d Cir. 1995); *Kolfage*, 2020 WL 7342796, at *12 (denying motion to unseal affidavit because, among other reasons, the "information, if disclosed, could hamper the investigation").

WL 2443674, at *3 (W.D.N.Y. Aug. 22, 2006) (denying motion for return of property because, among other reasons, the "affidavit [submitted in support of the search warrant] sufficiently sets forth facts upon which a reviewing judicial officer could determine that probable cause existed to believe that evidence of criminal activity could be found at the petitioner's residence").  With respect to the Movants' oft-repeated assertion that their conduct (based on their own factual recitation, unsupported by any evidence) amounts to a "non-crime" (Mot. 29), that argument has been thoroughly briefed elsewhere (*see, e.g.*, Dkt. No. 29 at 1-4, 6-8).

Similarly, contrary to the Movants' argument that the Government failed to disclose material information to the magistrate judges (Mot. 31-35), the Government is confident that this Court would find that no material information has been omitted.  *See generally United States v. Ferguson*, 758 F.2d 843, 848 (2d Cir. 1985) (defendant must show that affidavit contained false statements or omissions that were material on the issue of probable cause, and even an affidavit containing some tainted allegations remains valid if there remains a residue of independent and lawful information sufficient to support probable cause).

## B.  Particularity and Breadth

"To be sufficiently particular under the Fourth Amendment, a warrant must satisfy three requirements."  *United States v. Ulbricht*, 858 F.3d 71, 99 (2d Cir. 2017), *abrogated on other grounds by Carpenter v. United States*, 138 S. Ct. 2206 (2018).  It must (i) "identify the specific offense for which the police have established probable cause," (ii) "describe the place to be searched," and (iii) "specify the items to be seized by their relation to designated crimes."  *Id*. "The Fourth Amendment does not require a perfect description of the data to be searched and seized."  *Id*. at 100.  Indeed, "[s]earch warrants covering digital data may contain 'some ambiguity. . . .'"  *Id*.  "[A] search warrant does not necessarily lack particularity simply because it

13

is broad." *Id.*   When a search warrant limits the scope of the search to evidence of particular federal crimes, and gives an "illustrative list of seizable items," the search warrant is sufficiently particular.  *United States v. Riley*, 906 F.2d 841, 844-45 (2d Cir. 1990); *see also United States v. Pugh*, No 15 Cr. 116, 2015 WL 9450598 (NGG), at *22 (E.D.N.Y. Dec. 21, 2015) ("In general, warrants that limit a search to evidence relating to a particular crime, and which provide a list of examples as a means of limiting the items to be seized, are upheld when confronted with a particularity challenge.").

"[B]readth and particularity are related but distinct concepts."  *Ulbricht*, 858 F.3d at 102. "[A]n otherwise unobjectionable description of the objects to be seized is defective if it is broader than can be justified by the probable cause upon which the warrant is based."  *United States v. Galpin*, 720 F.3d 436, 446 (2d Cir. 2013).  "Nevertheless, 'in many cases, the volume of records properly subject to seizure because of their evidentiary value may be vast."  *United States v. Purcell*, 967 F.3d 159, 179 (2d Cir. 2020).  The Second Circuit "has found, for example, that 'a broad warrant allowing the government to search [a defendant's] laptop for potentially extensive evidence of' charged crimes committed using that laptop 'does not offend the Fourth Amendment, as long as that warrant meets the three particularity criteria.'"  *Id.*

The Movants argue that the email search warrants at issue were so-called "general warrants," and therefore insufficiently particular or overbroad, largely based on the Movants' suggestion that temporal limitations placed upon two of the search warrants issued in an early stage of the Investigation were impermissibly broader than those on certain warrants issue later in the Investigation.  (Mot. 36; *compare* Dkt. Nos. 64-1 at 12 (issued Jan. 14, 2021) and 64-1 at 18 (issued Jan. 26, 2021), *with* Dkt. No. 64-1 at 23 (issued Mar. 5, 2021).)  The temporal limitations on these warrants were well-supported by the facts articulated in the affidavits submitted in support of those

warrants, based on the evidence that had been gathered at that point in the Investigation. In any event, the Movants cite no legal authority calling into question the length of the temporal limitations and there is no basis to conclude that they were unreasonable, especially in light of the fact that "the Second Circuit has never addressed when, if at all, time-frames are a constitutional requirement in business-record search warrants, and district courts in this circuit have not converged upon a clear rule." *United States v. Cohan*, 628 F. Supp. 2d 355, 367 (E.D.N.Y. 2009); *see also United States v. Levy*, No. S5 11 Cr. 62 (PAC), 2013 WL 664712, at *11 (S.D.N.Y. Feb. 25, 2013) ("For overbreadth and particularity purposes, no controlling authority requires a specific time frame"), *aff'd*, 803 F.3d 120 (2d Cir. 2015). The Movants also argue that authorization to search certain of the non-email information, such as contact and address information, was not date-limited and therefore similarly overbroad. (Mot. 37.) They are wrong. The warrant was structured in this manner, as is standard practice in this District, because items such as contacts and addresses—unlike emails—are not necessarily associated to certain temporal periods. The review of those narrow categories of data without a specific temporal limitation therefore raises no concerns about the warrant's particularity. *See, e.g.*, *United States v. Rosario*, No. 19 Cr. 807 (LAP), 2021 WL 5647879, at *5-6 (S.D.N.Y. Dec. 1, 2021) (denying motion to suppress because, among other reasons, warrant's categories of data to be seized without temporal limitations, such as the user's "contacts," did not render warrant insufficiently particular).

The Movants also complain that the email search warrants required the production by the service provider of "each and every email" during the temporal scope of the warrant. (Mot. 36.) This objection is unfounded, however, because "[i]t has long been perfectly appropriate to search the entirety of a premises or object as to which a warrant has been issued based on probable cause, for specific evidence enumerated in the warrant, which is then to be seized." *United States v.*

*Ulbricht*, No. 14 Cr. 68 (KBF), 2014 WL 5090039, at *14 (S.D.N.Y. Oct. 10, 2014), *aff'd*, 858 F.3d 71 (2d Cir. 2017).  "This principle applies equally to electronic accounts as it does to physical locations."  *United States v. Elkorany*, No. S1 20 Cr. 437 (NRB), 2021 WL 3668086, at *4 (S.D.N.Y. Aug. 17, 2021); *see also United States v. Ray*, 541 F. Supp. 3d 355, 399 (S.D.N.Y. 2021) ("Courts in this Circuit . . . have uniformly held that law enforcement need not rely upon an email host company or any other private party to sift through emails to determine what is relevant and that it may obtain a warrant to request all emails from an account." (collecting cases)).

The Movants similarly assert that the search warrants for O'Keefe's, Meads's, and Cochran's residences were overbroad insofar as they permitted the seizure of "all" electronic devices or cellphones.  (Mot. 37.)  Challenges of this sort are routinely rejected where, as here, the magistrate judge who issued the warrant finds probable cause to believe that evidence of the identified offenses were "likely to be found on electronic devices within the premises."  *Ray*, 541 F. Supp. 3d at 391; *see also, e.g.*, *United States v. Johnson*, No. 19 Cr. 140 (GWC), 2021 WL 2667168, at *4-5 (D. Vt. June 29, 2021) (denying motion to suppress warrant authorizing seizure of "all electronic devices" and holding that "the Government was under no constitutional requirement to identify a small number of electronic devices to search").

Furthermore, all of the search warrants at issue each included particularized language of the sort previously approved in this Circuit.  The enumerated categories of evidence for which law enforcement were authorized to search were modified by introductory language limiting the search to "evidence, fruits, and instrumentalities" of specific subject offenses listed in the warrants.  (*See* Mot. Ex. B at 5; Mot. Ex. C at 3; Mot. Ex. E at 4; Dkt. No. 65-1 at 12, 18, 23, 32.)  Thus, each category of evidence was expressly limited to the specific crimes identified in the warrants.  *See Ulbricht*, 858 F.3d at 101 ("the warrant plainly satisfies the basic elements of the particularity

16

requirement" because the warrant "lists the charged crimes, describes the place to be searched, and designates the information to be seized in connection with the specified offenses").  In addition, the categories themselves were specifically described and, in many instances, contained illustrative lists of items to be seized, which supplied sufficient particularity to the warrant.  *See Riley*, 906 F.2d at 844-45 (warrant which "supplied sufficient examples of the type of records that could be seized—bank records, business records, and safety deposit box records" have requisite particularity); *United States v. Lustyik*, 57 F. Supp. 3d 213, 227 (S.D.N.Y. 2014) (finding that the challenged warrant meets the particularity standard where it "broadly describe[d] the items to be seized as 'evidence, fruits, or instrumentalities' of specified federal crimes, [and] also set[ ] forth an illustrative list of items to be seized").[9]

### III.    The Government's Execution of the Search Warrants Was Reasonable

The Movants also challenge the reasonableness of the execution of the search warrants due to the number of electronic devices recovered during the searches of O'Keefe's, Cochran's, and Meads's residences and the fact that the FBI did not conduct an on-site review of each of those devices before taking them into custody.  (Mot. 37-38.)  These complaints are unfounded and provide no support for their motion.

*First*, the seizure of electronic devices from O'Keefe's, Cochran's, and Meads's residences for later review was proper.  Rule 41 of the Federal Rules of Criminal Procedure provides that,

---

[9] Even if there were some infirmity in the search warrants (which there is not), Rule 41(g) "is not intended to deny the United States the use of evidence permitted by the fourth amendment and federal statutes, even if the evidence might have been unlawfully seized."  Fed. Crim. P. 41(g), Advisory Committee Note; *see also In re Search Warrant for Premises of Intertex Apparel Ltd.*, No. 05 Mag. 1744 (DFE), 2006 WL 250522, at *4 (S.D.N.Y. Feb. 1, 2006) ("even if a court were to find that there had been an illegal search of documents (whether in paper form or computerized form)," "[i]t would merely order the Government 'to return copies' of the documents, while permitting it to retain a copy.").

absent any limitation in the warrant itself, the Government may seize "electronic storage media or . . . electronically stored information" for "a later review of the media or information consistent with the warrant."  Fed. R. Crim. P. 41(e)(2)(B).  "Indeed, due to the unique challenges that electronic searches pose, it is frequently the case with computers that the normal sequence of 'search' and then selective 'seizure' is turned on its head, as computer hardware is seized from a suspect's premises before its content is known and then searched at a later time."  *Ray*, 541 F. Supp. 3d at 393.  Rule 41 also expressly authorizes the Government to retain a copy of electronic media seized pursuant to a warrant.  *See* Fed. R. Crim. P. 41(f)(1)(B) ("The officer may retain a copy of the electronically stored information that was seized or copied.").  Consistent with Rule 41, the search warrants authorized law enforcement agents to seize electronic devices that might contain evidence falling in the categories enumerated in the warrants.  (Mot. Ex. B at 5-7; Mot. Ex. C at 3-5; Mot. Ex. E at 4-6.)

*Second*, law enforcement agents could not possibly have known merely from looking at a particular device whether or not it contained evidence responsive to the search warrants. Accordingly, the search warrants authorized law enforcement agents to seize any device within the residences that may contain evidence responsive to the warrant, and review it off-site.  Due to the challenges inherent in identifying whether a particular device contains relevant evidence at the time of the search and the difficulties of efficiently reviewing a device on-site, law enforcement agents routinely seize all electronic devices within a subject premises for imaging and review.  *See Purcell*, 967 F.3d at 181 n.9 (characterizing as "familiar" warrants that permit law enforcement agents to seize "all computers, hard drives and other storage devices" where probable cause is demonstrated that "various electronic devices to be found at a suspect's residence" contain evidence of crime, "which thereafter are examined to identify any contraband images or other

relevant evidence that they might contain"). Indeed, precluding law enforcement agents from proceeding in that manner "would be perverse" and "would either preclude the agents from seizing the media at all or, more likely, require them to remain at the premises being searched while they methodically reviewed each of the items of electronic media, effecting an even greater intrusion on the occupant's privacy." *Ray*, 541 F. Supp. 3d at 393. Accordingly, the law enforcement agents' implementation of routine procedures in this matter is no basis for concern of any type and provides no support for the motion. *See, e.g.*, *United States v. Almaleh*, No. S1 17 Cr. 25 (ER), 2022 WL 602069, at *19 (S.D.N.Y. Feb. 28, 2022) (denying motion to suppress and explaining that, "[t]o the extent that the defendants argue that the execution of the warrant was unreasonable because every electronic device was seized, . . . courts have routinely rejected this argument"); *United States v. Chow*, No. 01 Cr. 291 (FB), 2001 WL 1347236, at *2, 4 (E.D.N.Y. Nov. 2, 2001) (denying motion to suppress where warrant authorized search and seizure of, among other things, "all . . . telephones and telephonic devices" at three locations); *United States v. Lloyd*, No. 98 Cr. 529, 1998 WL 846822, at *3-4 (E.D.N.Y. Oct. 5, 1998) (denying motion to suppress where defendant challenged "warrant's authorization to seize 'all computer equipment, including hard drives, modems, floppy diskettes, and all peripheral devices'"). Moreover, it bears repeating that the Government has returned the devices that have been determined by the FBI not to contain any data within the time period of the search warrants or by the Special Master not to contain any data responsive to the search warrants. Thus, to the extent the alleged violation is an overbroad seizure of devices, it has been remedied.

*Finally*, the Movants are incorrect that the agents who executed the warrants "knowingly disregarded the Magistrate Judge's directives regarding the protection of privileged information." (Mot. 40). The three warrants referenced by the Movants directed that the review of items be

19

conducted "pursuant to established procedures designed to collect evidence in a manner reasonably designed to protect any attorney-client or other applicable privilege (to the extent not waived). When appropriate, the procedures shall include use of a designated 'filter team,' separate and apart from the investigative team . . . ." (Mot. Ex. B at 7; Mot. Ex. C at 5; Mot. Ex. E at 6.)  The warrants therefore dictate no specific procedure that must be used, much less prohibit executing agents from taking certain limited screenshots of communications in order to preserve evidence before the devices automatically locked.  Moreover, whether certain of the screenshots that were taken are in fact privileged is a matter under review by the Special Master and, as noted in the following section, the Court should not permit the Movants to circumvent that process by raising them in this context.[10]

## IV.   The Movants' Arguments Regarding Privilege Issues Are Pending Before the Special Master

The Movants raise various arguments related to potential privileges derived from the First Amendment that they assert may apply to certain materials obtained during the course of the Government's investigation (Mot. 20-29), which are essentially a rehash of arguments already raised and responded to in the briefing submitted earlier in this Part I matter.  (*E.g.*, Dkt. No. 1 at 9-12; Dkt. No. 29 at 6-12.)  With respect to the devices that are subject to the Special Master's review, the Movants' attempt to put these arguments before the Court while the same arguments are pending before the Special Master appears to be an improper end-run around the Special

---

[10] The Movants also claim that the Government "compounded its Fourth Amendment violations by sealing the Microsoft Warrants" and that such sealing was improperly obtained through "mere recitals of the text" of the relevant statute. (Mot. 41-42.)  Not so.  Each of those non-disclosure orders was duly authorized by a magistrate judge, and in each instance the sealed, *ex parte* application for the order—to which the Movants do not and should not have access at this stage of the Investigation—properly described the circumstances justifying non-disclosure.

Master.  As explained above, these very arguments were fully briefed as of April 20, 2022, and are in the process of being decided by the Special Master.  The Movants should not be permitted to short-circuit the process that this Court put in place, at their request, and which will adequately safeguard any potentially privileged materials that were contained on the devices.[11]

To the extent that the Movants are attempting to raise arguments with respect to execution of the warrants for email account data, there is no legal basis for such challenges at this stage of an ongoing grand jury investigation.  Last year, Judge Oetken denied a similar challenge where the circumstances were materially the same: in the course of a multi-year, covert investigation, the Government obtained electronic data pursuant to judicially-authorized search warrants issued under 18 U.S.C. § 2703, the Government had reviewed that electronic data prior to the overt execution of search warrants for electronic devices, and a Special Master was appointed to oversee the review of the contents of the electronic devices (but not the electronic data obtained previously).  Specifically, Judge Oetken ruled:

> Giuliani and Toensing also seek pre-indictment discovery of the Government's privilege and responsiveness designations in connection with the 2019 warrants [obtained covertly, pursuant to 18 U.S.C. § 2703]. They cite no legal authority for this request, and the Court is aware of none. If there is a criminal proceeding, any defendants will be entitled to discovery under Rule 16. There is no basis for compelling the Government to produce this information now, during an ongoing grand jury investigation.
>
> Finally, the Court sees no legal basis for Toensing's request for detailed information about the filter team review process, at least at the pre-charge phase of this matter.

---

[11] In the event the Court finds any of these issues material to the resolution of the motion, the Court should defer consideration until after the Special Master has issued a ruling on the same.

*In re Search Warrants Executed on Apr. 28, 2021*, 2021 WL 2188150, at *2.  The circumstances

confronted by Judge Oetken are indistinguishable from those presented here.  The Movants offer

no authority contrary to Judge Oetken's ruling, and the Government is aware of none.  To the

extent the Movants may potentially be entitled at some point to the disclosures that they seek, any

such entitlement would only be triggered, if at all, by the filing of an indictment charging them in

connection with the investigation, and not before.[12]  In the event of a criminal proceeding in which

they are defendants, as Judge Oetken noted, they would have the opportunity to litigate any

privilege or suppression issues, but they cannot do so during the pre-indictment phase of an

ongoing grand jury investigation.

## V.   The PPA and DOJ Regulations and Guidelines Provide No Support For The Requested Relief

The Movants also attempt to invoke the Privacy Protection Act (the "PPA"), 42 U.S.C.

§ 2000aa *et seq*., and certain Department of Justice regulations and guidelines, including 28 C.F.R.

§ 50.10 and provisions of the Justice Manual.  (Mot. 16-20, 32-34, 41-42, 47.)  None of these

provisions provide any support for a motion pursuant to Rule 41(g) or for any other relief in this

forum.  The PPA sets forth a private right of action for damages where the Government unlawfully

searches for or seizes documents or work product materials intended for public dissemination in

or affecting interstate or foreign commerce.  *See* 42 U.S.C. §§ 2000aa(a) and (b), 2000aa-6.

Indeed, the PPA expressly provides that "an issue relating to the compliance, or the failure to

comply, with guidelines issued pursuant to [the PPA] may not be litigated, and a court may not

entertain such an issue as the basis for suppression or exclusion of evidence."   42 U.S.C.

---

[12] Or, potentially, by the filing of a civil claim, should one exist, that survives a motion to dismiss
and proceeds to discovery.

§ 2000aa-12; *see also Doe v. DiGenova*, 642 F. Supp. 624, 631 (D.D.C. 1986) ("the [PPA] specifically provides that a failure to comply with the guidelines may not be litigated"), *aff'd in part and rev'd in part on other grounds*, 851 F.2d 1457 (D.C. Cir. 1988).  Similarly, it is well-settled that 28 C.F.R. § 50.10 "is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person."  28 C.F.R. § 50.10(j); *see also N.Y. Times Co. v. Gonzales*, 382 F. Supp. 2d 457, 484 (S.D.N.Y. 2005) (28 C.F.R. § 50.10 "confer[s] no substantive rights or protections such as may be privately enforced"), *vacated and remanded on other grounds*, 459 F.3d 160 (2d Cir. 2006).  Similarly, the Justice Manual "is not intended to, does not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter, civil or criminal."  JM § 1-1.100; *see also United States v. Piervinanzi*, 23 F.3d 670, 682 (2d Cir. 1994) (JM "guidelines . . . provide no substantive rights to criminal defendants").  Accordingly, neither the PPA nor Department of Justice guidelines and regulations provide any support for the motion.

## CONCLUSION

For the reasons set forth above, the motion should be denied.

Dated: New York, New York
        May 6, 2022

                              Respectfully submitted,

                              DAMIAN WILLIAMS
                              United States Attorney

               By:     _/s/_____
                              Jacqueline Kelly
                              Robert B. Sobelman
                              Mitzi Steiner
                              Assistant United States Attorneys
                              Tel.: (212) 637-2456/2616/2284
                                       23