# REPORTERS COMMITTEE

**FOR FREEDOM OF THE PRESS**

1156 15th St. NW, Suite 1020
Washington, D.C. 20005
(202) 795-9300 • www.rcfp.org
Bruce D. Brown, Executive Director
bbrown@rcfp.org • (202) 795-9301

**STEERING COMMITTEE CHAIRMAN**
STEPHEN J. ADLER
**STEERING COMMITTEE MEMBERS**
WOLF BLITZER
*CNN*
DAVID BOARDMAN
*Temple University*
THEODORE J. BOUTROUS, JR.
*Gibson, Dunn & Crutcher LLP*
MASSIMO CALABRESI
*Time Magazine*
LYNETTE CLEMETSON
*University of Michigan*
MANNY GARCIA
*Austin American-Statesman*
EMILIO GARCIA-RUIZ
*San Francisco Chronicle*
JOSH GERSTEIN
*POLITICO*
ALEX GIBNEY
*Jigsaw Productions*
SUSAN GOLDBERG
*National Geographic*
GAIL GOVE
*NBCUniversal*
JAMES GRIMALDI
*The Wall Street Journal*
LAURA HANDMAN
*Davis Wright Tremaine*
DIEGO IBARGÜEN
*Hearst*
JEREMY JOJOLA
*9NEWS Colorado*
KAREN KAISER
*Associated Press*
KIMBRIELL KELLY
*The Los Angeles Times*
DAVID LAUTER
*The Los Angeles Times*
MARGARET LOW
*WBUR*
COLLEEN MCCAIN NELSON
*The McClatchy Company*
MAGGIE MULVIHILL
*Boston University*
JAMES NEFF
*The Philadelphia Inquirer*
NORMAN PEARLSTINE
*New York, New York*
THOMAS C. RUBIN
*Stanford Law School*
BRUCE W. SANFORD
*BakerHostetler, ret.*
CHARLIE SAVAGE
*The New York Times*
JENNIFER SONDAG
*Bloomberg News*
NABIHA SYED
*The Markup*
ADAM SYMSON
*The E.W. Scripps Company*
PIERRE THOMAS
*ABC News*
MATT THOMPSON
*The New York Times*
VICKIE WALTON-JAMES
*NPR*
SUSAN ZIRINSKY
*CBS News*
**HONORARY LEADERSHIP COUNCIL**
J. SCOTT APPLEWHITE, *Associated Press*
CHIP BOK, *Creators Syndicate*
DAHLIA LITHWICK, *Slate*
TONY MAURO, *American Lawyer Media, ret*
JANE MAYER, *The New Yorker*
ANDREA MITCHELL, *NBC News*
CAROL ROSENBERG, *The New York Times*
PAUL STEIGER, *ProPublica*
SAUNDRA TORRY, *Freelance*
JUDY WOODRUFF, *PBS/The NewsHour*
*Affiliations appear only for purposes of identification.*

VIA ECF

July 1, 2022

The Honorable Analisa Torres
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, NY 10007

Re: *In re Search Warrant dated November 5, 2021*, 21 Misc. 813 (AT)

Dear Judge Torres,

Pursuant to the Court's Order of June 8, 2022, ECF No. 82, the Reporters Committee for Freedom of the Press ("Reporters Committee") respectfully submits this reply in support of its Objections to Magistrate Judge Cave's Opinion and Order, ECF No. 49 (the "Objections"), denying the Reporters Committee's Motion to Unseal, ECF No. 34-1.

**I.     The Government offers no argument in defense of continued sealing of the Search Warrant Materials in their entirety.**

As the Reporters Committee made clear in its Objections, Magistrate Judge Cave's Opinion and Order (the "Order") insufficiently explains why "the Search Warrant Materials must remain sealed in their entirety." Objections 14, ECF No. 49. To justify wholesale sealing of the Search Warrant Materials, the Order relies on generic law enforcement and privacy interests asserted by the Government, but does not engage meaningfully with the many ways those interests are diminished—or simply inapplicable—here. *See id.* at 9–13. In particular, the Order fails to explain why, given the volume "of information about the Government's investigation that has been revealed publicly," the Search Warrant Materials cannot be immediately unsealed in redacted form. *Id.* at 14. Simply put, "even to the extent the Government has demonstrated compelling reasons for some continued sealing tied to its ongoing investigation, the Order errs in permitting wholesale sealing rather than requiring redaction." *Id.* at 3.

Strikingly, the Government effectively makes no effort to defend continued sealing of the Search Warrant Materials in their entirety. In fact, it addresses redaction only in a footnote. Gov't Resp. 5 n.4, ECF No. 83. There, it repeats the Order's conclusory assertion that redacting "the legal theories of the Investigation," or "details about the information the Government has obtained and from which sources," would render the Search Warrant Materials "unintelligible." *In re Search Warrant Dated Nov. 5, 2021*, 2021 WL 5830728, at *8 (S.D.N.Y. Dec. 7, 2021).

The Government does not grapple—either in its footnote concerning redaction or anywhere else in its Response—with the wealth of information about its investigation that has emerged in court filings. It does not contest the authenticity of the warrants, orders, and other materials that Project Veritas has filed as exhibits on the public docket. *See, e.g.*, Motion to Appoint Special

Master 32, ECF No. 1 (redacted copy of search warrant); ECF No. 64-1 (redacted copies of SCA orders). Nor does it deny that its own submissions to the Court contain further revelations. *See, e.g.*, Objections 10, 13, ECF No. 49 (describing Government disclosures); Motion to Unseal 5–6, ECF No. 43-1 (same). Among other things, the filings publicly docketed in this matter have disclosed the course of conduct giving rise to the Government's investigation, the targets of the investigation, and the contemplated charges that define the scope of that investigation. The Government has had every chance to explain why, given these public disclosures, the Search Warrant Materials must remain wholly sealed to serve a compelling interest. It has not done so. *See United States v. Huntley*, 943 F. Supp. 2d 383, 387 (E.D.N.Y. 2013) (holding sealing not justified when information in records "ha[d] been widely reported by the press and disclosed by the government in court filings").

In addition to the disclosures in public court filings, the Government also attempts to cast as irrelevant the multiple, detailed accounts of its investigation that have been published in major news outlets. Gov't Resp. 4, ECF No. 83. This attempt likewise fails. Widespread public knowledge of the details of the Government's investigation logically affects whether, and to what extent, compelling law enforcement or privacy interests require any part of the Search Warrant Materials to remain sealed. *See In re L.A. Times Commc'ns LLC*, 28 F.4th 292, 298 (D.C. Cir. 2022) (recognizing that public reports about government's execution of search warrant, including target's acknowledgment of same, "attenuate" privacy interests in secrecy of warrant materials); *Washington Post v. Robinson*, 935 F.2d 282, 291–92 (D.C. Cir. 1991) (holding sealing not warranted when public was already aware, through reporting, of information contained in records). Put differently, it is not clear what legitimate law enforcement or privacy interests could possibly necessitate the sealing of information already known through, or easily inferred from, public reporting. *See CBS, Inc. v. U.S. Dist. Ct. for Cent. Dist. of California*, 765 F.2d 823, 825 (9th Cir. 1985) (explaining that law enforcement interests in continued sealing are diminished when "most of the information the government seeks to keep confidential concerns matters that might easily be surmised from what is already in the public record"). It is the Government's burden to establish that such interests exist; it has not done so.

The Government incorrectly suggests that even if much—or all—of the information in the Search Warrant Materials is publicly known, the Search Warrant Materials should nevertheless remain entirely sealed to avoid providing official government acknowledgment of facts reported by the news media. Gov't Resp. 4, ECF No. 83. As an initial matter, much of the reporting on the Government's investigation appears to be based in part on disclosures made by the Government itself to members of the news media. *See* Adam Goldman and Michael S. Schmidt, *How Ashley Biden's Diary Made Its Way to Project Veritas*, N.Y. Times (December 16, 2021), https://nyti.ms/3rZSetJ (stating that the *Times*'s reporting was based on "[e]xtensive interviews with people involved in or briefed on the investigation" as well as "a review of court filings, police records, and other material . . . .").

Yet even setting that aside, the Government's purported desire to avoid officially acknowledging well-known facts about its investigation does not constitute a compelling interest in favor of sealing judicial records. The Government's reliance on inapplicable Freedom of Information Act ("FOIA") caselaw makes this clear. ECF No. 83 at 4 (citing *Wilson v. CIA*, 586 F.3d 171, 186-87 (2d Cir. 2009) and *Afshar v. Dep't of State*, 702 F.2d 1125, 1133–34 (D.C. Cir. 1983)). In the FOIA context, courts have concluded that national-security and foreign-policy

concerns may justify a federal agency's refusal to disclose classified information even when that information has become widely known—provided that the agency has not previously revealed the same information to the public. *See Wilson*, 586 F.3d at 186-87 (2d Cir. 2009) (holding former CIA employee's unauthorized disclosure of classified information did not waive agency's ability to withhold information under FOIA); *Afshar*, 702 F.2d at 1133–34 (holding classified information not subject to disclosure under FOIA despite being subject of widespread media discussion). That rule—like FOIA in general—has no application to the public's presumptive right of access to judicial records, which derives from both the common law and the First Amendment. And, in any event, that rule is far removed from the case at hand, which does not remotely implicate classified information, national security, or foreign policy.

In a further attempt to diminish the significance of public reporting on this matter, the Government cites *United States v. Smith*, 985 F. Supp. 2d 506, 531–32 (S.D.N.Y. 2013). Gov't Resp. 4, ECF No. 83. *Smith* is readily distinguishable. There, this Court held that the government's disclosure of a cooperating witness's identity did not prevent the entry of a protective order under Federal Rule of Criminal Procedure 16 when other cooperating witnesses remained unidentified. *Smith*, 985 F. Supp. 2d at 531–32. The Court noted in dicta that even if news reports had—hypothetically—identified the remaining cooperating witnesses, there would still exist "good cause" for the entry of a protective order, so long as the government had not confirmed those reports. *Id. Smith*'s dictum provides no guidance here. The "good cause" standard for entry of a protective order sets a lower bar than the standard for sealing judicial documents. And widespread, credible reporting of a fact, even without official government confirmation, has been held to diminish government interests in sealing below the "compelling" threshold necessary to overcome the public's presumptive rights of access, including in the cooperating-witness context. For example, in *United States v. Zazi*, No. 09-CR-663 (RJD), 2010 WL 2710605, at *3 (E.D.N.Y. June 30, 2010), the Eastern District of New York concluded that credible media reports of two defendants' cooperation with federal prosecutors diminished any law-enforcement interest in sealing records related to the defendants' cooperation. There, as here, the government argued that its interests in sealing remained compelling—despite the media's reporting—because the government had not officially confirmed the fact of the defendants' cooperation. *Id.* at *4. The court rejected that argument, holding that the government "ha[d] not met its burden of setting forth persuasive evidence of serious risk to a compelling interest." *Id.* (quotation marks omitted). The Court should do the same here.[1]

The Government also does not substantively respond to the Reporters Committee's argument that the Order improperly weighs the privacy interests of third parties. Objections 11–12, ECF No. 49. Instead, the Government simply repeats the Order's conclusions. Gov't Resp. 3, ECF No. 83. Those conclusions are incorrect, for the reasons the Reporters Committee has already stated.

Perhaps regretting its failure to supplement the record, the Government contends that the Search Warrant Materials themselves contain evidence of compelling interests necessitating ongoing sealing, and that "a cursory *in camera* review of the Search Warrant Materials will

---

[1] The Government has not argued that the Search Warrant Materials identify cooperating witnesses; nor does the Government explain why—if the Search Warrant Materials do identify cooperating witnesses—redaction could not address any concern about disclosing their identities.

confirm that Judge Cave had an ample factual and legal basis to resolve the RCFP's motion without additional" information from the Government. *Id.* at 2. This contention is puzzling. Whatever information the Search Warrant Materials contain, they cannot possibly establish that compelling interests necessitate continued, wholesale sealing in light of information that did not become public until *after* the search warrant was issued and executed. The Government could have tried to bridge this temporal gap by submitting new affidavits or other supplemental evidence explaining why—despite the extensive public disclosures to date, and in light of the current status of its investigation—continued sealing is necessary, *see e.g.*, *United States v. All Funds on Deposit at Wells Fargo Bank*, 643 F. Supp. 2d 577, 585 (S.D.N.Y. 2009), but it did not do so.

## II.    The Order does not provide for future unsealing of the Search Warrant Materials.

The Government asserts that the Reporters Committee's "concerns regarding indefinite sealing absent adequate justification are unfounded." Gov't Resp. 5, ECF No. 83. Not so. As explained in the Reporters Committee's Objections, the Order makes clear that the compelling interests purportedly necessitating the sealing of the Search Warrant Materials are closely tied to the pendency of the Government's investigation. Yet the Order makes no provision for unsealing the Search Warrant Materials once the Government's investigation ends. Therefore, under the terms of the Order, the Search Warrant Materials will remain entirely sealed— regardless of the status of the Government's investigation—unless something causes the Court to revisit their disclosure.

It is not clear when, or if, that will happen. The Order does not require the Government to move to unseal the Search Warrant Materials when its investigation ends; nor does the Order require the Government to keep the Court apprised of the status of its investigation. For its part, the public has no reliable way of knowing whether the Government's investigation is ongoing— particularly given that the Government sometimes files charges under seal. Consequently, the public may be unable to determine on its own when the interests that necessitate continued sealing of the Search Warrant Materials—according to the Government—no longer apply. Because the Order is open-ended, there is considerable risk that the Search Warrant Materials will remain entirely sealed long after the purported justifications for their sealing have dissipated. *See* Objections 14–15, ECF No. 49.

## III.    The public's interest in the contents of the Search Warrant Materials—including in understanding whether the Search Warrant Materials discuss the Privacy Protection Act—is not irrelevant.

In a footnote, the Government asserts that the public's interest in knowing whether the Search Warrant Materials discuss the Privacy Protection Act ("PPA") "has no bearing on the sealing analysis." Gov't Resp. 3 n.3, ECF No. 83. Conspicuously, the Government makes no argument as to why, if the Search Warrant Materials discuss the PPA, such discussion must be sealed.[2] Regardless, the Government's assertion is wrong.

---

[2] The Government has confirmed that it believes Project Veritas and James O'Keefe fall within the "suspect exception" of the PPA. *See* ECF No. 29 at 14 n.10.

The common law presumption of public access to judicial documents is grounded in the public's strong, ever-present interest in "monitoring the federal courts." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006) (quotation marks omitted). Where, as here, the content of judicial records is independently "of legitimate interest to the public," that presumption in favor access is even stronger; "the Court's determination of the weight of the presumption may not ignore this broader context," *Hardy v. Kaszycki & Sons*, No. 83-CV-6346 (LAP), 2017 WL 6805707, at *3 (S.D.N.Y. Nov. 21, 2017) (citing *Lugosch*, 435 F.3d at 123 n.5). The same is true of proceedings in which, as here, "a judicial decision accede[d] to the request[] of a coordinate branch," *United States v. Aref*, 533 F.3d 72, 83 (2d Cir. 2008); "in such circumstances, the public's right to know what the executive branch is about coalesces with the concomitant right of the citizenry to appraise the judicial branch," *Smith v. United States Dist. Court for S. Distr. of Ill.*, 956 F.2d 647, 650 (7th Cir. 1992) (quoting *FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987)).

The public's interest in knowing whether the Search Warrant Materials discuss the PPA implicates all of the above considerations. The public has an exceptionally strong interest in seeing that both the Justice Department and the judiciary carefully considered all of the legal requirements for, and ramifications of, issuing the requested warrant, including whether and how the Government addressed application of the PPA.[3]

## IV.     The Government's arguments regarding the First Amendment are meritless.

The Government paraphrases, but does not expand on, Judge Cave's conclusion that the First Amendment right of access does not apply to the Search Warrant Materials. Gov't Resp. 5–6, ECF No. 83. The Reporters Committee has explained that Judge Cave need not have reached the First Amendment question and that her analysis of the question was incorrect.[4]  Objections

---

[3] As it did in its initial response to the Reporters Committee's Objections, ECF No. 53 at 1–2, the Government states that it "respectfully disagrees" with Magistrate Judge Cave's conclusion that the Search Warrant Materials are judicial documents subject to a strong presumption of public access, Gov't Resp. 6 n.5, ECF No. 83. But the Government did not timely raise, and has therefore waived, any objection to that portion of the Order. *See* Fed. R. Crim. Proc. 59(a)–(b) (requiring, for both dispositive and nondispositive matters, parties to serve and file any objections within 14 days and stating that "[f]ailure to object in accordance with this rule waives a party's right to review"); *see also* Reply in Support of Objections 2, ECF No. 54. Aside from its untimeliness, the Government's "disagree[ment]" is not supported by argument or citation to legal authority.

[4] As it has previously stated, the Reporters Committee did not seek relief under the First Amendment because (1) it is very clear in the Second Circuit that the common law presumption of access applies to the Search Warrant Materials in its strongest form, and (2) the strong common law presumption of access entitles the Reporters Committee to all the unsealing it seeks here. Reply in Support of Motion to Unseal 10, ECF No. 42-1; *see also* Objections 16, ECF No. 49. What the Government baselessly calls a "strategic ploy," Gov't Resp. 5, ECF No. 83, was an efficient, commonsense approach grounded in the law of public access in the Second Circuit, *see Application of Newsday, Inc.*, 895 F.2d 74, 78 (2d Cir. 1990) (in determining whether right of access exists, courts "need not, and should not, reach the First Amendment issue if judgment can be rendered on some other basis").

16–20, ECF No. 49.  The Government does not respond to any of the Reporters Committee's legal arguments; instead it claims, without citation to authority, that the Reporters Committee "forfeited its opportunity to respond to the Government's [First Amendment] argument[.]" Gov't Resp. 5, ECF No. 83.  But the Reporters Committee's Objections do not respond to the Government's First Amendment argument—they respond to the Order's First Amendment conclusion, which Judge Cave effectively reached *sua sponte*.  The Reporters Committee does not now seek relief under the First Amendment any more than it sought relief under the First Amendment initially; it objects to the Order's First Amendment holding as both unnecessary and wrong.  Objections 20, ECF No. 49.

Respectfully submitted,

*/s/ Katie Townsend*

Katie Townsend
REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, DC 20005
Phone: 202.795.9300
Facsimile: 202.795.9310
ktownsend@rcfp.org

*Counsel of Record*

cc:
Counsel of Record (via ECF)