# The Dickerson Law Group

**Brian E. Dickerson**
Partner
6846 Trail Blvd
Naples, FL 34108
Direct: 202.570.0248

Bdickerson@dickerson-law.com

April 1, 2022

**VIA EMAIL: barbara.jones@bracewell.com**
*Original will not follow by mail.*

The Honorable Barbara S. Jones (Ret.)
Bracewell, LLP
1251 Avenue of the Americas
49th Floor
New York, New York 10020

> Re: **In re Search Warrant dated November 3, 2021**
> **S.D. N.Y. Case No. 21-MC-825 (AT)**
> **First Amendment and Journalistic Privileges**

Dear Judge Jones:

In accordance with Your Honor's March 14, 2022 Special Master Order, on March 18, 2022 Petitioner, Spencer Meads ("Meads") provided Your Honor with his *ex parte* objections to the materials from Devices 1B57 and 1B58 that the Government's filter team proposes to release to the investigative team. As Your Honor is aware, Meads' *ex parte* objections set forth specific factual grounds explaining why the subject materials are (a) not responsive to any of the categories set forth in the November 3, 2021 search warrants, and/or (b) otherwise protected from disclosure to the Government's investigative team pursuant to the federal common law reporter's privilege, the First Amendment, the Privacy Protection Act, and 28 C.F.R. § 50.10/Justice Manual 9-13.400.[1]

As explained in Meads' *ex parte* objections, several of the subject materials have absolutely nothing to do with Ashley Biden, the investigation regarding Ms. Biden's diary by Project Veritas, or any of the categories set forth in the Government's search warrants dated November 3, 2021. Materials that are not responsive to the search warrants in any manner, shape, or form should not be released to the investigative team regardless of the existence of any privilege. That being said, materials that are subject to the federal common law reporter's privilege, the First Amendment, the Privacy Protection Act, and 28 C.F.R. § 50.10/Justice Manual 9-13.400 also should not be disclosed to the Government's investigative team because they reflect newsgathering activities that were performed by Meads in his capacity as an investigative journalist.

---

[1] Consistent with Your Honor's March 21, 2022 Special Master Order, the instant correspondence (a) is not submitted ex parte; and (b) does not disclose or make any reference to the specific content of any seized material. *See* March 21, 2022 Special Master Order at ¶ 2.

**The Dickerson Law Group**

April 1, 2022
Page 2 of 4

    Meads hereby adopts by reference as if fully set forth herein the positions taken by Petitioners, James O'Keefe and Project Veritas in their contemporaneously-filed Brief on First Amendment and Journalistic Privileges (the "Brief"), all of which are directly applicable to Meads as an individual journalist who formerly was employed at Project Veritas. It makes no difference whatsoever that Meads is no longer employed by Project Veritas. All of the newsgathering activities relating to specified materials from Devices 1B57 and 1B58 that the filter team proposes to release to the investigative team were performed while Meads was employed as an investigative journalist for Project Veritas. Consequently, all of the positions set forth in the Brief filed by O'Keefe and Project Veritas apply to the subject materials over which Meads asserts objections based upon the federal common law reporter's privilege, the First Amendment, the Privacy Protection Act, and 28 C.F.R. § 50.10/Justice Manual 9-13.400.

    In *Bartnicki v. Vopper*, 532 U.S. 514, 525 (2001), the Supreme Court held that a radio host was not liable for publishing information that was provided by a third party who obtained that information unlawfully, provided that the publisher played no part in the unlawful acquisition and the material related to a matter of public concern. Under *Bartnicki*, unless the reporter or publisher played a part in the unlawful acquisition of information, they are protected by the First Amendment and may not be held criminally liable or otherwise punished. *Id*. at 525. As noted in O'Keefe's and Project Veritas's Brief, this broad principle has been upheld by lower courts. *See* Brief at p. 8. So long as publishers play no part in acquiring stolen material, publishers may not be held criminally liable even where they openly solicit receipt of such materials. *See*, *e.g.*, *Democratic National Cmte. v. Russian Federation*, 392 F. Supp. 3d 410, 434-35 (S.D. N.Y. 2021); *Allen v. Beirich*, No. 19-2419, 2021 WL 2911736 at *4-5 (4th Cir. July 12, 2021); *Jean v. Massachusetts State Police*, 492 F. 3d 24, 31 (1st Cir. 2007). Publishers are legally permitted to engage in "active collaboration" and "solicit[] stolen information" because those are considered "common journalistic practices". *Jean*, 492 F. 3d at 31; *see also Russian Federation*, 392 f. Supp. 3d at 435. In weighing potential criminal liability, the only relevant consideration for courts is whether publishers played a role in acquiring the stolen material. As the Southern District of New York held, "play[ing] a part" means that the publisher must "participate in the theft". *Russian Federation*, 392 F. Supp. 3d at 435.

    Thus, pursuant to the Supreme Court's holding in *Bartnicki*, along with its lower court progeny, Project Veritas was protected by the First Amendment in accepting and considering whether to report on the abandoned Ashley Biden diary. These First Amendment protections specifically extend to individual journalists – including Meads – who were involved in newsgathering activities associated with the Ashley Biden diary. Importantly, the First Amendment specifically protects the gathering of newsworthy information for purposes of potential publication. In *Branzburg v. Hayes*, 408 U.S. 665, 681-82 (1972), the Supreme Court recognized First Amendment protection for newsgathering activities, including the right to gather news "from any source by means within the law." This protection encompasses precisely the activities engaged in by Meads, as reflected by specific materials over which Meads asserted objections based upon the federal common law reporter's privilege, the First Amendment, the Privacy Protection Act, and 28 C.F.R. § 50.10/Justice Manual 9-13.400.

April 1, 2022
Page 3 of 4

     In *Branzburg*, the Supreme Court specifically recognized that the strength of the privilege and scrutiny involved are especially strong where compounding factors exist, such as government bad faith or content or viewpoint discrimination.  *See Branzburg*, 408 U.S. at 710 (Powell, J., concurring) (observing that where governmental suppression of the press, disguised as governmental inquiries, are "not being conducted in good faith, [the journalist] is not without remedy"); *see also Reed v. Town of Gilbert, Arizona*, 576 U.S. 155, 163 (2015) (observing that strict scrutiny is applied where content or viewpoint discrimination is apparent).  Suffice to say, these factors clearly are at play with respect to the Government's diary investigation, which obviously would not have been undertaken if the diary did not involve one of the President's adult children.

     The Supreme Court has recognized that the Government bears the burden of demonstrating its need to infringe upon First Amendment rights.  *See Eldrod v. Burns*, 427 U.S. 347, 362 (1976).  Furthermore, where the subjects of search warrants present credible First Amendment concerns, the requirements of the Fourth Amendment are required to be applied with "scrupulous exactitude".  *Zurcher v. Stanford Daily*, 436 U.S. 547, 564 (1978) (quoting *Stanford v. Texas*, 379 U.S. 476, 485 (1965)).  [S]eizure reasonable as to one type of material in one setting may be unreasonable in a different setting or with respect to another kind of material."  *Id*. (quoting *Roaden v. Kentucky*, 413 U.S. 496, 501 (1973)).  Notably, the preconditions for issuance of search warrants – i.e., "probable cause, specificity with respect to the place to be searched and the things to be seized, and overall reasonableness" – along with attention to underlying First Amendment concerns, are necessary to protect newsgathering activities.  *Id*. at 565-66.

     For these reasons, Meads hereby adopts and joins in the relief requested in O'Keefe's and Project Veritas's Brief, including the protections articulated in Section III of the Brief (i.e., Formulating and Applying a Speech-Protective Rule of Privilege).  Meads respectfully submits that these procedures outlined in the Brief should be adopted by Your Honor in order to ensure that the applicable substantive and procedural constitutional factors are appropriately protected.  In short, given that *Bartnicki* protects journalists who receive and publish information where they do not participate in the alleged theft of the information, searches and seizures failing to establish probable cause of actual involvement in any theft are overly broad.  Even if the search purportedly was based upon a finding of probable cause, review of the seized materials must initially be limited to that issue before permitting the Government to more broadly expand its review.

     For brevity, the specific positions articulated in the Brief filed by O'Keefe and Project Veritas regarding the Privacy Protection Act, and 28 C.F.R. § 50.10/Justice Manual 9-13.400 are not reiterated herein; however, those positions are specifically adopted by reference, along with the more complete positions set forth in the Brief regarding First Amendment and journalistic protections.  Based on these positions, Meads respectfully requests that Your Honor approve the privileges asserted by Meads by precluding release of the subject materials to the Government's investigative team.

**The Dickerson Law Group**

April 1, 2022
Page 4 of 4

                Respectfully,

                **THE DICKERSON LAW GROUP, PA**

                */s/ Brian E. Dickerson*

                BRIAN E. DICKERSON

cc: Spencer Meads (via email)
   Eric Franz (via email)