UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re Search Warrant dated November 5, 2021,

<div style="border: 2px solid black">
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  04/16/2024
</div>

21 Misc. 813 (AT)

**<u>ORDER</u>**

ANALISA TORRES, District Judge:

On November 6, 2021, the Government executed a search warrant at the residence of

Petitioner, James O'Keefe, the then-president of Project Veritas, an "undercover investigative

journalism" organization.  Order at 4, ECF No. 164.  The Reporters Committee for Freedom of

the Press ("RCFP") moves to "unseal the search warrant application, supporting affidavit, return,

and any other judicial documents filed in connection with the November 5, 2021 search warrant"

(collectively, the "Search Warrant Materials").  RCFP Mot. at 1, ECF No. 34-1.  The Court

referred RCFP's motion to the Honorable Sarah L. Cave.

By opinion and order (the "O&O"), Judge Cave denied RCFP's motion, holding that,

although the Search Warrant Materials were judicial documents, the law enforcement and

privacy interests advanced by the Government outweigh the presumption of access under both

the common law and the First Amendment.  O&O, ECF No. 47.  RCFP timely objected to Judge

Cave's order.  RCFP Obj., ECF No. 49.  For the reasons stated below, RCFP's objections are

OVERRULED IN PART and SUSTAINED IN PART.[1]

---

[1] On November 4, 2021, the Government executed search warrants at the residences of Spencer Meads and Eric Cochran, who were petitioners in the related matters of 21 Misc. 819 and 21 Misc. 825.  Order at 1, 4.  RCFP's motion was filed on the docket involving O'Keefe only, but the Court's conclusions would apply to the warrants for Meads's and Cochran's residences as well.

## BACKGROUND[2]

On November 5, 2021, Judge Cave issued a search warrant authorizing the seizure of electronic devices from O'Keefe's residence.  ECF No. 127-5.  Judge Cave approved the warrant based on detailed affidavits submitted by the Government.[3]  The affidavits established probable cause that O'Keefe's devices contained evidence of federal crimes—specifically, (1) conspiracy to transport stolen property across state lines and possess stolen goods, (2) interstate transportation of stolen property, (3) possession of stolen goods, (4) aiding and abetting, (5) accessory after the fact, and (6) misprision of felony, in violation of 18 U.S.C. §§ 2, 3, 4, 371, 2314, and 2315.  ECF No. 127-5 at 2.  The warrant authorized the Government to seize from the devices seven categories of evidence pertaining to the time period from August 1, 2020 to the date of seizure.  *Id.* at 2–3.  On November 6, 2021, the FBI executed the warrant for O'Keefe's home and seized two mobile phones.  ECF No. 127 at 9.

On November 15, 2021, RCFP moved to unseal the Search Warrant Materials.  *See* RCFP Mot.  The Court referred the motion to Judge Cave.  The Government argued that search warrant applications are categorically excepted from disclosure at the pre-indictment stage of a grand jury investigation.  O&O at 6.  Judge Cave rejected this argument, instead holding that the Search Warrant Materials are judicial documents and that a strong presumption of access attaches to the Search Warrant Materials because they "are used to determine [individuals'] substantive legal rights."  *Id.* at 5–9 (citation omitted).  However, she denied RCFP's request to unseal the Search Warrant Materials because the countervailing law enforcement and third-party interests presented by the Government outweighed the strong presumption of access.  *Id.* at 16–

---

[2] The Court presumes familiarity with the facts and procedural history of this matter as detailed in its December 21, 2023 order.  *See* Order at 2–6.

[3] The affidavits were provided on an *ex parte* basis to the Court.  *See* ECF No. 42.

18.  Judge Cave also ruled that the First Amendment did not provide a separate right of access to the Search Warrant Materials.  *Id.* at 18–19.

On December 21, 2021, RCFP filed objections to the O&O, arguing that Judge Cave erred by (1) requiring wholesale sealing, as opposed to disclosure with redactions, (2) not setting a date for the Government to move to unseal the documents, and (3) ruling on the First Amendment question.  RCFP Obj. at 2–4.  With the Court's leave, the Government responded to RCFP's objections on June 24, 2022.  Gov. Opp., ECF No. 83; *see* ECF No. 80.

## DISCUSSION

I.    Standard of Review

The Court must consider timely objections filed to a magistrate judge's order.  When a magistrate judge determines non-dispositive matters, the Court shall "modify or set aside any part of the order that is contrary to law or clearly erroneous."  Fed. R. Crim. P. 59(a); *see* Fed. R. Civ. P. 72(a).  When a magistrate judge determines a dispositive matter, the Court "must consider de novo any objection to the magistrate judge's recommendation."  Fed. R. Crim. P. 59(b)(3); *see* Fed. R. Civ. P. 72(b)(3).

Although the Second Circuit has not decided whether a motion to unseal by a third-party intervenor is dispositive or non-dispositive, a motion to unseal by a party to the action is non-dispositive.  *See, e.g.*, *Alvarado v. City of New York*, No. 04 Civ. 2558, 2009 WL 510813, at *1 (E.D.N.Y. Feb. 27, 2009); *United States v. Pirk*, 282 F. Supp. 3d 585, 590 (W.D.N.Y. 2017).  So is a motion to intervene on a permissive basis.  *See Chen-Oster v. Goldman, Sachs & Co.*, No. 10 Civ. 6950, 2016 WL 11645644, at *2–3 (S.D.N.Y. June 6, 2016).  However, this is RCFP's "only merits claim," in which case the "dispositive-non-dispositive dichotomy is not [especially] helpful."  *Dobson v. Milton Hershey Sch.*, 434 F. Supp. 3d 224, 231 (M.D. Pa. 2020) (emphasis

omitted).  And, the Circuit permits "media intervenors to appeal from apparently interlocutory orders" on the ground that "orders denying access are final as to the intervenors and that the intervention motion could have been treated as a separate civil case in which the ruling would have been final."  *Lugosch v. Pyramid Co. v. Onondaga*, 435 F.3d 110, 117 (2d Cir. 2006) (collecting cases).  In sum, the issue is not settled, and "[v]arious district courts have dealt with this issue differently."  *Dobson*, 434 F. Supp. 3d at 231 (collecting cases).

When the law is unsettled as to which standard to apply, the Circuit has advised district judges to "review magistrate judge orders . . . both de novo and under a deferential standard." *Kiobel v. Millson*, 592 F.3d 78, 105 (2d Cir. 2010) (Leval, J., concurring).  Therefore, the Court shall apply a de novo standard of review and, if necessary, articulate what its findings would be under a deferential standard.

## II.   Common Law Right of Access

"The common law right of public access to judicial documents is firmly rooted in our nation's history." *Lugosch*, 435 F.3d at 119.  This presumption of access "is based on the need for federal courts . . . to have a measure of accountability and for the public to have confidence in the administration of justice." *Id.* (quoting *United States v. Amodeo (Amodeo II)*, 71 F.3d 1044, 1048 (2d Cir. 1995)).  Documents are considered "judicial documents" if they are "relevant to the performance of the judicial function and useful in the judicial process." *Brown v. Maxwell*, 929 F.3d 41, 49 (2d Cir. 2019) (citation omitted).

"Once the court has determined that the documents are judicial documents," it must "determine the weight of that presumption." *Lugosch*, 435 F.3d at 119.  "[W]here documents directly affect an adjudication . . . or are used to determine litigants' substantive rights, the presumption of access is at its zenith." *Bernstein v. Bernstein Litowitz Berger & Grossmann*

4

*LLP*, 814 F.3d 132, 142 (2d Cir. 2016) (citations and quotation marks omitted).

"Notwithstanding the presumption of access" under the common law, "the documents may be kept under seal if 'countervailing factors' . . . so demand." *Lugosch*, 435 F.3d at 124. Such factors include "'the danger of impairing law enforcement or judicial efficiency' and 'the privacy interests of those resisting disclosure.'" *Id.* (quoting *Amodeo II*, 71 F.3d at 1050). The sealing of judicial documents "may be justified only by specific, on-the-record findings that sealing is necessary to preserve higher values and only if the sealing order is narrowly tailored to achieve that aim." *Id.* If the Court decides that "compelling reasons" require it to deny public or press access to judicial documents, "the limitation should not be broader than necessary." *United States v. All Funds on Deposit at Wells Fargo Bank*, 643 F. Supp. 2d 577, 585 (S.D.N.Y. 2009) (collecting cases requiring disclosure with redactions).

   A.  Immediate Unsealing

RCFP argues that Judge Cave should have unsealed the Search Warrant Materials with redactions pursuant to the common law right of access. RCFP first claims that the Government invoked "generic law enforcement and privacy interests," providing Judge Cave with an insufficient factual basis to order broad sealing. RCFP Obj. at 9. The Court disagrees. Judge Cave examined the Search Warrant Materials *in camera* and, therefore, had a sufficient factual basis for her conclusions. O&O at 12–13.

And, contrary to RCFP's contention that the O&O relied on generic interests, Judge Cave made the "specific findings" required to justify continued sealing of the Search Warrant Materials. *United States v. Amodeo (Amodeo I)*, 44 F.3d 141, 147 (2d Cir. 1995). Judge Cave found that the Search Warrant Materials are connected to "an ongoing federal grand jury

proceeding, before anyone has been charged with a crime."[4]  O&O at 11.  Judge Cave also

determined that the Search Warrant Materials would disclose "the evidence obtained by the

United States prior to the searches" and "considerable detail about individuals who may have

already provided information to the Government—voluntarily or involuntarily—such that

unsealing of the [Search Warrant] Materials could subject them to witness tampering,

harassment, or retaliation."  *Id.* at 12 (cleaned up); *see also id.* at 13 ("[T]he [Search Warrant]

Materials include references to a number of individuals employed by or associated with Project

Veritas.  Their conduct in relation to the alleged criminal activity is described in considerable

detail, although not all of that conduct may be criminal.").

      RCFP contends that unsealing a redacted version of the Search Warrant Materials would

not undermine the Government's law enforcement interests because there exists a "wealth of

information about the Government's investigation already in the public domain."  RCFP Obj. at

9–11; *see* ECF No. 91.  RCFP suggests that facts already disclosed in O'Keefe's public

statements, *New York Times* articles, and the Government's filings could be unsealed, while non-

public facts could be redacted.  RCFP Obj. at 9–11.

      As to O'Keefe's statements and the *Times* articles, neither provides "official[]

confirm[ation]" of the facts the Government gathered through its grand jury investigation, the

sources of those alleged facts, and the evidence obtained by the Government to prove such facts.

*United States v. Smith*, 985 F. Supp. 2d 506, 531–32 (S.D.N.Y. 2013).  Therefore, even if

O'Keefe or the *Times* may have disclosed information that is also in the Search Warrant

Materials, the Government would still have a valid law enforcement interest in keeping such

---

[4] Although Judge Cave rejected the Government's broad contention that all search warrant applications were exempt
from disclosure, she correctly held that the status of the investigation was properly taken into account when
assessing the weight of the Government's interest.  O&O at 7.

information under seal.

With respect to the Government's filings, the Government has been "circumspect in its public statements to the Court" regarding its investigation.  Order at 2 n.2 (citation omitted); *see* Gov. Opp. at 4–5.  Although it has identified and charged Aimee Harris and Robert Kurlander as the two persons who worked with Project Veritas to steal the items under investigation, it has not publicly revealed the "sources or methods used in the Government's ongoing grand jury investigation" or the other "persons and/or entities" that it approached as part of that investigation.  ECF No. 95 at 2.  Moreover, the Search Warrant Materials "contain a far lengthier and more detailed discussion" of the events at issue and the "evidence gathered in the Government's ongoing grand jury investigation" in comparison to the "brief, limited set of factual allegations" contained in the information charging Harris and Kurlander and the Government's filings before this Court.  *Id.*; *see* Gov. Opp. at 4–5.  Therefore, the Government's careful public statements do not alter the conclusion that disclosure of the Search Warrant Materials would undermine the ongoing investigation.  *See In re Search Warrants Executed on April 28, 2021*, No. 21 Misc. 425, 2021 WL 2188150, at *3 (S.D.N.Y. May 28, 2021) ("[T]he presumption of access is plainly outweighed by the need to protect a grand jury investigation that is ongoing."); *In re Sealed Search Warrants Issued June 4 & 5, 2008*, No. 08 Misc. 208, 2008 WL 5667021, at *4 (N.D.N.Y. July 14, 2008) ("[T]he interest in the integrity and security of [the criminal] investigation outweighs the interest in immediate access to the documents.").

In reaching her decision, Judge Cave did consider "whether redactions would be sufficient to protect the countervailing interests" and concluded that the Search Warrant Materials "contain not only the legal theories of the [i]nvestigation, but also details about the information the Government has obtained and from which sources."  O&O at 18.  As a result,

she found that unsealing redacted versions of the Search Warrant Materials would pose too great a risk to the ongoing investigation[5] and the third-party privacy interests. *Id.* The Court has reviewed the Search Warrant Materials *in camera* and agrees with Judge Cave. *See In re Sealed Search Warrants Issued June 4 & 5, 2008*, 2008 WL 5667021, at *5 (holding that where the warrant applications and affidavits reveal legal theories and sources of the Government's facts, "unsealing either the applications or affidavits, even in redacted form, cannot be accomplished at this stage without serious risk to the investigation").

Accordingly, RCFP's objection regarding immediate unsealing is OVERRULED.

B. Unsealing at the Close of the Government's Investigation

RCFP next contends that Judge Cave should have required the Government to move to unseal the documents at the close of its investigation. Given Judge Cave's finding that the Search Warrant Materials are entitled to a weighty presumption of public access,[6] the Court must be mindful to employ "the least restrictive means" to constrain public access. *All Funds*, 643 F. Supp. 2d at 585.

Courts have held that law enforcement interests in protecting the integrity of an ongoing investigation weaken when the Government decides to file charges or close an investigation without bringing charges. *See In re Search Warrant Dated October 13, 2023*, No. 23 Misc. 389, 2023 WL 6938292, at *4–5 (S.D.N.Y. Oct. 20, 2023) (granting motion to unseal a search warrant affidavit after the target of the investigation had been charged in a public criminal complaint); *In*

---

[5] Over two years have passed since the execution of the search warrant at O'Keefe's house, and the Government has not yet brought charges or closed its investigation. The passage of time may, in certain circumstances, weaken the law enforcement interests at issue even before an investigation is closed. But, this case does not present such a circumstance. The Court appointed a special master to review the evidence seized pursuant to the search warrant, *see* ECF No. 48, and the Government did not view this evidence until the special master completed her review and her recommendations were adopted by the Court. *See* Order.

[6] The Government suggests that it disagrees with Judge Cave's finding, but did not formally object to the O&O on this issue. Gov. Opp. at 6 n.5.

*re Sealed Search Warrants Issued June 4 & 5, 2008*, 2008 WL 5667021, at *4 (holding that immediate access was not required when "the investigation will result in the filing of charges or the determination not to do so" because "future disclosure of the documents is likely"); *In re Search Warrant*, No. 16 Misc. 464, 2016 WL 7339113, at *4 (S.D.N.Y. Dec. 19, 2016).  Judge Cave correctly recognized that if the investigation "is closed without any criminal charges being filed, the law enforcement interests and possibly some of the third parties' privacy interests would have diminished to warrant revisiting the continued confidentiality of the [Search Warrant] Materials."  O&O at 17.  And, if the Government does file charges, it will disclose relevant facts and its legal theories such that wholesale sealing of the Search Warrant Materials will no longer be necessary.[7]  *See In re Sealed Search Warrant*, Nos. 04 Misc. 370 & 388, 2006 WL 3690639, at *1, *5 (N.D.N.Y. Dec. 11, 2006) (requiring redacted disclosure of search warrant affidavits after indictment and before trial).

    To ensure that the restriction on public access dissipates when the law enforcement interests at stake have weakened, the Court concludes that the unsealing of the Search Warrant Materials is warranted at the close of the Government's investigation—that is, when the Government brings charges against Petitioner or decides not to bring charges.[8]  Accordingly, RCFP's objection as to this issue is SUSTAINED.[9]

III.    First Amendment Right of Access

    In addition to the common law right of access, the First Amendment provides the media and public a qualified right to access certain judicial documents.  *Lugosch*, 435 F.3d at 120.  To

---

[7] If charges are filed, certain redactions to the Search Warrant Materials may still be appropriate, but the Court does not reach that question at this time.

[8] RCFP also requests that the Court require the Government to file status updates to the Court about the status of its investigation.  The Court shall not micromanage the Government's investigation, and this request is DENIED.

[9] The Court would reach the same conclusion under a de novo or a clear-error review.

determine which judicial documents the First Amendment right attaches to, the Second Circuit has articulated two approaches. *Id.* First, courts use the "experience and logic" approach, considering "whether the documents 'have historically been open to the press and the general public' (experience) and whether 'public access plays a significant positive role in the function of the particular process in question' (logic)." *United States v. Cohen*, 366 F. Supp. 3d 612, 627 (S.D.N.Y. 2019) (quoting *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 92 (2d Cir. 2004)). Second, courts consider "the extent to which the judicial documents are derived from or are a necessary corollary of the capacity to attend relevant proceedings to which the First Amendment right of access attaches." *Id.* (cleaned up). If the First Amendment right of access exists under either approach, continued sealing is warranted "only with specific, on-the-record findings that sealing is necessary to preserve higher values and only if the sealing order is narrowly tailored to achieve that aim." *Lugosch*, 435 F.3d at 124.

RCFP argues that Judge Cave should not have ruled on the First Amendment issue because it did not press this argument. The Court disagrees. In its initial letter motion, RCFP stated that "[t]he press and public have a presumptive right to inspect the Search Warrant Materials under both the First Amendment and common law." RCFP Mot. at 1. Although RCFP stated that the Search Warrant Materials "should be immediately unsealed pursuant to common law," it argued that the First Amendment "provides an additional, independent basis for unsealing the Search Warrant Materials." *Id.* at 1 & n.1. The Second Circuit has cautioned that courts "need not, and should not reach the First Amendment issue" if the common law right of access provides access to the requested documents. *In re Newsday, Inc.*, 895 F.2d 74, 78 (2d Cir. 1990). Therefore, it was appropriate for Judge Cave, having determined that the common law right of access does not provide for unsealing, to proceed to the question of the First Amendment

10

right, which "is stronger." *United States v. Erie Cnty.*, 763 F.3d 235, 241 (2d Cir. 2014).

RCFP then contends that Judge Cave was incorrect in determining that it lacks a First Amendment right of access to the Search Warrant Materials. The Second Circuit "has not addressed whether a constitutional right of access attaches to search warrant materials." *United States v. Mullins*, No. 22 Cr. 120, 2023 WL 3159418, at *4 (S.D.N.Y. Apr. 26, 2023). But, courts in this Circuit have declined to recognize a First Amendment right to search warrant materials at this pre-indictment stage of the investigation. *See In re Search Warrant*, 2016 WL 7339113, at *4; *All Funds*, 643 F. Supp. 2d at 583; *In re San Francisco Chronicle*, No. 07 Misc. 256, 2007 WL 2782753, at *3 (E.D.N.Y. Sept. 24, 2007); *see also In re Newsday*, 895 F.2d at 79 (unsealing search warrant materials only after a plea bargain was reached in the criminal case). Therefore, the Court cannot conclude that Judge Cave erred in finding that the First Amendment right of access does not attach to the Search Warrant Materials at this juncture. O&O at 19. And, even if the First Amendment right were to exist, continued sealing remains justified because disclosure of the details in the Search Warrant Materials—including sources, methods, and potential witnesses—would harm the Government's ongoing grand jury investigation. *See supra* Section II.A; *In re Search Warrants Executed on April 28, 2021*, 2021 WL 2188150, at *3 (holding that the presumption of access is "plainly outweighed by the need to protect a grand jury investigation that is ongoing").

Accordingly, RCFP's objection as to the First Amendment right of access is OVERRULED.

## CONCLUSION

For the foregoing reasons, the Court OVERRULES IN PART and SUSTAINS IN PART RCFP's objections. The Court adopts the O&O except as modified above, and directs the

11

Government to move to unseal the Search Warrant Materials at the close of its investigation.

The Clerk of Court is directed to close the case, as well as the parallel cases, 21 Misc. 819 and 21

Misc. 825.

SO ORDERED.

Dated: April 16, 2024
       New York, New York

_____
ANALISA TORRES
United States District Judge