USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/17/2025

**BARR & KLEIN** PLLC

November 12, 2025

The Honorable Analisa Torres
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:   *In re Search Warrants dated November 5, 2021*, 21 mc 813 (AT)

Dear Judge Torres:

## I.   INTRODUCTION

This firm represents Petitioner James O'Keefe in the above-referenced matter. We write to respectfully request that this Court reconsider its February 6, 2025 Order and direct the Government to unredact all Search Warrant Materials in this case. *See* Dkt. 176. Transparency is the lifeblood of our democracy, especially where government search and seizure powers have been used against the press. In November 2021, the FBI used this power to execute search warrants at the home of Mr. O'Keefe, the founder of Project Veritas, and at the homes of two former colleagues. *See* 21 Misc. 819 (Cochran); 21 Misc. 825 (Meads). This was purportedly part of an investigation into the alleged theft of a diary belonging to President Biden's daughter. The intrusive search and seizure of a journalist's materials was an extraordinary measure that deeply implicated First Amendment freedoms and newsroom confidentiality. Now, this investigation has concluded without any charges against Mr. O'Keefe or other Project Veritas personnel.

On February 5, 2025, the Government informed this Court that the grand jury probe is closed and that it had "no additional criminal charges forthcoming," further stating it had no objection to unsealing the warrant materials with certain redactions. Case No. 21 Misc. 813, Dkt. 173 at p. 1. The Court granted that request, and the Search Warrant Materials were unsealed, but in a heavily redacted form that obscures almost all meaningful substance. With the case now closed and Mr. O'Keefe (as well as the other affected journalists) expressly waiving any personal privacy interest in these records, there remains no legitimate justification for continued secrecy. Full unredaction is necessary to vindicate the public's right of access, to safeguard Mr. O'Keefe's First and Fourth Amendment rights, and to ensure accountability for potential government misconduct in this unprecedented investigation.

## II.   ARGUMENT

### a.   The Public's Right of Access Now Outweighs Any Countervailing Interest

Judicial documents such as search warrant applications and affidavits carry a strong presumption of public access. *United States v. Mullins*, 2023 WL 3159418 at *3 (S.D.N.Y. April 26, 2023). Continued sealing or redaction of these materials can only be justified by a compelling interest, supported by specific, on-the-record findings demonstrating that redaction is necessary to

preserve a higher value, and even then any redactions must be narrowly tailored to serve that interest. *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120, 124 (2d Cir. 2006). The Government has not met this demanding standard. Its February 2025 letter supporting partial unsealing relied on only generic references to "third-party privacy" and unspecified "law enforcement interests," without offering any concrete detail. Such vague, blanket assertions are insufficient to overcome the presumption of openness, especially now that circumstances have fundamentally changed.

There is no ongoing investigation for the Government's redactions to protect, and Petitioner himself welcomes full disclosure. Any residual privacy concerns for third parties or investigative techniques the Government alleges must be articulated with specificity, not by sweeping redactions of virtually the entire documents. If, for example, the Government believes a particular name or method must remain secret to prevent a serious harm (such as endangering an informant or compromising a genuine ongoing tactic), it should identify each such item and explain why its disclosure would cause a clearly defined, serious injury to that interest. Petitioner submits that upon such review, it will be apparent that most, if not all, of the current redactions are untenable. But even if limited redactions are ultimately deemed necessary, they must be no broader than absolutely required to serve a compelling interest.

Transparency is the default; secrecy must be the rare exception, justified by evidence, not speculation. In short, with the grand jury terminated and no prosecutions forthcoming, the balance has now shifted overwhelmingly in favor of public disclosure. Continued extensive redaction cannot be squared with the public's right to know what transpired in this sensitive investigation. At a minimum, Petitioner urges the Court to conduct an *in camera* inspection of the warrant materials and require the Government to justify each redaction with a specific, compelling reason, so that any secrecy is limited only to information that genuinely warrants protection by law. *See, e.g., Murray v. City of New York*, 2023 WL 2734819 at *1 (S.D.N.Y. March 30, 2023).

### b. Full Unredaction Is Critical to First Amendment Values and to Address Possible Government Misconduct

This case raises core First Amendment concerns. The Government's raid on Mr. O'Keefe, a journalist and publisher, threatens press freedoms and risks chilling newsgathering. The Supreme Court has made clear that the First Amendment protects the publication of truthful information on matters of public concern, even when the source obtained that information unlawfully, so long as the publisher did not participate in the illegality. *Bartnicki v. Vopper*, 532 U.S. 514, 534–35 (2001) ("[P]rivacy concerns give way when balanced against the interest in publishing matters of public importance," and a stranger's illegal conduct "does not suffice to remove the First Amendment shield from speech about a matter of public concern."). By seizing Mr. O'Keefe's newsroom materials under threat of criminal sanction, the Government effectively treated constitutionally protected journalistic activities as if they were crimes. Once the fact of the search and investigation became public, there is no justification for keeping the underlying supporting material under wraps, unless the Government wishes to shield its own actions from public scrutiny.

The only way to determine whether investigators respected or infringed Mr. O'Keefe's First Amendment rights is to unredact the documents and scrutinize the basis for the warrants. The public has a right to know, and Mr. O'Keefe has a need to know, whether the affidavits and related

material reveal any overreach, such as treating routine newsgathering contacts or receipt of documents as a criminal conspiracy. If Government agents failed to inform the magistrate judge of Mr. O'Keefe's status as a working journalist, or if they sought these warrants without adhering to Department of Justice policies that safeguard members of the news media, those would be serious matters warranting judicial and public attention. Department regulations at 28 C.F.R. § 50.10 explicitly recognize the extreme sensitivity of searching journalistic materials: federal prosecutors must obtain express authorization from the Attorney General before seeking a warrant for a member of the news media, and even then such warrants are to be used only as a last resort as they are "extraordinary measures, not standard investigatory practices." 28 C.F.R. § 50.10(a)(3). For similar reasons, Congress enacted the Privacy Protection Act (PPA), 42 U.S.C. § 2000aa, which generally forbids government officials from searching or seizing a journalist's work product or documentary materials in connection with investigating a crime, except in very narrow circumstances. The FBI's unprecedented intrusion into Mr. O'Keefe's newsgathering operations appears to contravene these protections.

Unredacting the warrant materials in full will allow Mr. O'Keefe and the public to ascertain whether the Department of Justice complied with its own regulations and the PPA's mandates or whether it disregarded them in pursuit of this investigation. This is not only an academic point; it goes to the heart of government accountability. Mr. O'Keefe must be permitted to evaluate the lawfulness of the search and seizure of his property, including whether the warrant applications established probable cause and sufficiently particularized the items to be seized as the Fourth Amendment requires. Only by reviewing the affidavits and supporting material can anyone determine if those constitutional standards were met, or if the search warrants were overbroad and unjustified. In addition, Mr. O'Keefe is exploring potential legal remedies for the violations of his rights including possible claims under the PPA or First Amendment. He cannot pursue such remedies in the dark. Fundamental fairness dictates that he see the same affidavits and supporting material that authorized the raid on his home, so that he may address any false, misleading, or unfounded allegations therein. In sum, the broad redactions currently in place serve only to hide the rationale for a highly questionable search that targeted a journalist and his colleagues. The Constitution demands more openness under these circumstances, not less.

Finally, we note that continued secrecy here undermines public confidence in the administration of justice. The matter at hand involves government agents executing search warrants against journalists in possession of politically sensitive materials. This raises obvious public interest concerns. Our system of justice functions best under public oversight. When an investigation of this nature concludes with no charges, the public is entitled to understand *why* the searches were conducted and whether they were justified. Particularly in light of the First Amendment protection offered by *Bartnicki* in this area, uncovering the *why* behind raiding journalists' homes is of utmost importance. Redacting virtually all the affidavits and supporting material deprives the public of any ability to scrutinize the Government's actions. It also leaves Mr. O'Keefe's reputation unfairly clouded by innuendo, while depriving him of the opportunity to fully clear his name with the facts. As Justice Brandeis observed, "sunlight is said to be the best of disinfectants." *Other People's Money and How the Bankers Use It* 62 (National Home Library Foundation ed. 1933). Full transparency will either confirm that the Government had a proper, lawful basis for its actions or reveal that it did not. Either result is far better than leaving the populace in the dark. In our constitutional system, the cure for potential abuse of power is public accountability, not continued concealment.

III.     CONCLUSION

For the foregoing reasons, Petitioner James O'Keefe respectfully requests that the Court grant this application and enter an order directing the Government to publicly file unredacted versions of all Search Warrant Materials and related judicial filings in Case Nos. 21-mc-813, 21-mc-819 and 21-mc-825, including all warrant applications, supporting affidavits, court orders, and other materials associated with the November 2021 searches of Mr. O'Keefe, Spencer Meads, and Eric Cochran. Relatedly, O'Keefe requests that this Court unredact all applications, affidavits, and other judicial documents filed by the Government in connection with the Government's compulsory demands, including secret warrants and 18 U.S.C. § 2703(d) orders, to obtain materials from various service providers, including but not limited to, Microsoft, Apple, Google, AT&T, Verizon, Amazon, and Uber, with respect to accounts held by or on behalf of Project Veritas, O'Keefe, Meads, and Cochran. In the alternative, Petitioner requests that the Court conduct an *in camera* inspection of the materials and compel the Government to demonstrate, with specificity, a compelling justification for each proposed redaction, unredacting all portions not strictly necessary to protect a higher interest. Mr. O'Keefe further requests such other and further relief as the Court deems just and proper.

Given that the Government's investigation has concluded without charges and that nearly four years have passed since the warrants were executed, time is now of the essence. Mr. O'Keefe must be permitted to review the unredacted warrant materials in order to evaluate and, if appropriate, pursue remedies for potential First and Fourth Amendment violations arising from this newsroom raid. Prompt resolution of this request will ensure that any constitutional challenge proceeds on a complete and accurate record, consistent with the public's interest in transparency and accountability.

The stakes in this matter extend far beyond one individual. The Government's intrusion into protected newsgathering and editorial activities strikes at the heart of the First Amendment. Allowing broad secrecy to persist would set a dangerous precedent, chilling journalists who investigate matters of public concern. By contrast, fully unredacting these records would reaffirm our fundamental commitment to a free and independent press. It would demonstrate that even in sensitive investigations, the judicial process remains open and subject to public scrutiny as it must in a healthy democracy. Only through such transparency can the public maintain confidence that law enforcement will not wield its vast powers as a weapon against the press, and that constitutional rights will be honored rather than eroded behind closed doors.

Respectfully submitted,

*/s/ Benjamin Barr*

Under Local Civil Rule 6.3 of the Southern District of New York, "a notice of motion for reconsideration must be served within 14 days after the entry of the court's order being challenged." It has been 9 months since the challenged order, ECF No. 176.  Accordingly, the motion is DENIED as untimely.  The Clerk of Court is respectfully directed to terminate the motion at ECF No. 179.

SO ORDERED.

Dated: November 17, 2025
       New York, New York

ANALISA TORRES
United States District Judge